UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                                                         :
LEE SIEGEL, individually and on behalf of
others similarly situated,                               :

              Plaintiffs,                      :

              -against-                        :

BLOOMBERG L.P.,                                          :

              Defendant.                        :

                                                         :

-------------------------------------------------------- x

Case No. 13-CV-1351 (DLC)


DEFENDANT BLOOMBERG L.P.'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY
<u>A CLASS AND APPROVE CLASS AND COLLECTIVE ACTION NOTICE</u>

<u>**TABLE OF CONTENTS**</u>

<u>Page</u>

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS .....................................................................................1

    1.    Bloomberg's Business ..............................................................1

    2.    Service Desk Representatives ..................................................2

    3.    The Named Plaintiff.................................................................5

    4.    On Average, Siegel Worked Fewer Than 40 Hours Per Week During His Entire Time As A Rep, And He Never Worked More Than 40 Hours In Any Given Week In New York. ....................................................6

THE PARTIES' PLEADINGS AND PLAINTIFF'S CERTIFICATION MOTION....................6

ARGUMENT .........................................................................................................7

I.    Plaintiff's Burden ...................................................................................7

II.    Class Certification Under NYLL Should Be Denied Because Siegel Has Not Satisfied Any Of The Prerequisites Enumerated In Rule 23(A)........................8

    A.    The Proposed Class Does Not Meet Rule 23(a)(1)'s Numerosity Requirement....................................................................8

    B.    Siegel Cannot Satisfy The Commonality Requirement Of Rule 23(A)(2) As Set Forth In *Wal-Mart v. Dukes*. ...............................11

        1.    Alleged "Off-the-Clock" Work...............................12
        2.    FLSA Exemption Status ........................................13

    C.    Siegel's Claims Are Not Typical Of The Claims Or Defenses Of The Purported Class. .........................................................15

    D.    Siegel Is An Inadequate Class Representative........................16

III.    Siegel Fails To Meet The Heightened Predominance Requirement Of Rule 23(b)(3). ......................................................................................19

    A.    The Individualized Damages Calculations Required In This Case Predominate Over Common Questions. ..............................20

    B.    The Individualized Exemption Determinations Would Predominate Over Common Questions................................................21

      C.      Class Action Is Not Superior To Other Available Methods Of Adjudication.................................................................................................22

IV.    The Purported Class Members Do Not Qualify For Certification Under The FLSA Because They Are Not Similarly Situated. .......................................................23

CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) ....................................................................17

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    105 F.R.D. 506 (S.D. Ohio 1985) ........................................................9

*Bayridge Volvo America, Inc. v. Volvo Cars of N. America, Inc.*,
    2004 WL 1824379 (S.D.N.Y. Aug. 16, 2004) ..............................9, 10

*Birdwell v. Gadsden*,
    970 F.2d 802 (11th Cir. 1992) ............................................................13

*Bishop v. New York City Department of Housing Preservation & Development*,
    141 F.R.D. 229 (S.D.N.Y. 1992) .........................................................17

*CL-Alexanders Laing & Cruickshank v. Goldfeld*,
    127 F.R.D. 454 (S.D.N.Y. 1989) ...............................................8, 9, 10

*Clarke v. JPMorgan Chase Bank, N.A.*,
    No. 08 Civ. 2400, 2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) ......13

*Colson v. Avnet, Inc.*,
    687 F. Supp. 2d 914 (D. Ariz. 2010) ..................................................23

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ...................................................7, 13, 19, 20

*Darvin v. International Harvester Co.*,
    610 F. Supp. 255 (S.D.N.Y. 1985) ...............................................16, 18

*Davis v. Lenox Hill Hospital*,
    No. 03 Civ. 3746, 2004 WL 1926086 (S.D.N.Y. Aug. 31, 2004) ......17

*Evancho v. Sanofi-Aventis U.S., Inc.*,
    No. 07-2266, 2007 WL 4546100 (D.N.J. Dec. 19, 2007) ..................24

*Flores v. Anjost Corp.*,
    284 F.R.D. 112 (S.D.N.Y. 2012) .........................................................15

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................9

*Gardner v. Western Beef Properties, Inc.*,
    2011 WL 6140518 (E.D.N.Y. Sept. 26, 2011) ....................................13

*Ginsburg v. Comcast Cable Corp.*,
   No. C11-1959RAJ, 2013 BL 103630, 2013 ............................................... 19-20

*Guillen v. Marshalls of MA, Inc.*,
   No. 09 Civ. 9575, 2012 WL 2588771 (S.D.N.Y. July 2, 2012) ...............................23, 24

*Hampshire v. Port Arthur Independent Sch. District*,
   No. 1:06-CV-235, 2006 U.S. Dist. LEXIS 88874 (E.D. Tex. Dec. 7, 2006)....................25

*Han v. Sterling Natl. Mortg. Co.*,
   No. 09-CV-5589, 2011 BL 235774 (E.D.N.Y. Sept. 14, 2011) .......................................16

*In re IPO Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006).......................................................................................7

*Levias v. Pac. Maritime Association*,
   760 F. Supp. 2d 1036 (W.D. Wash. 2011).......................................................................12

*Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*,
   149 F.R.D. 65 (D.N.J. 1993)...................................................................................9

*Marisol A. ex rel. Forbes  v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)....................................................................................15

*McGarry v. Becher*,
   2010 WL 1257446 (S.D. Ind. Mar. 24, 2010)....................................................................8

*Meyers v. ACE Hardware*,
   95 F.R.D. 145 (N.D. Ohio 1982) ...................................................................17, 18, 21

*Myers v. Hertz Corp.* ("*Myers II*"),
   624 F.3d 537 (2d Cir. 2010) .......................................................................18, 19, 21, 24

*Mike v. Safeco Insurance Co. of America*,
   274 F. Supp. 2d 216 (D. Conn. 2003)...............................................................................24

*Moscarelli v. Stamm*,
   288 F. Supp. 453 (E.D.N.Y. 1968) ...................................................................................8, 10

*Novella v. Westchester County*,
   443 F. Supp. 2d 540 (S.D.N.Y. 2006)...............................................................................9

*Odom v. Hazen Transp., Inc.*,
   275 F.R.D. 400 (W.D.N.Y. 2011) ...............................................................................9

*Oetinger v. First Residential Mortgage Network*,
  2009 WL 2162963 (W.D. Ky. July 16, 2009) .......................................................13

*RBS Citizens, N.A. v. Ross*,
  133 S. Ct. 1722 (2013) ..........................................................................................13

*Redick v. E Mortgage Mgmt. LLC*,
  No. 11-1260, 2013 BL 71440 (D. Del. Mar. 15, 2013 .............................................16

*Reed v.  Cnty. of Orange*,
  266 F.R.D. 446 (C.D. Cal. 2010) ............................................................................24

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) .....................................................................................9

*Romero v. H.B. Automotive Group, Inc.*,
  2012 WL 1514810 (S.D.N.Y. May 1, 2012) ...............................................11, 13, 23, 24

*Ross v. RBS Citizens, N.A.*,
  667 F.3d 900 (7th Cir. 2012) .................................................................................13

*Severin v. Project Ohr, Inc.*,
  No. 10 Civ. 9696 (DLC), 2012 WL 237410 (S.D.N.Y. 2012) ....................................21

*Shayler v. Midtown Investig'ns, Ltd.*,
  2013 WL 772818 (S.D.N.Y. Feb. 27, 2013) ............................................................8, 10

*Slanina v. William Penn Parking Corp.*,
  106 F.R.D. 419 (W.D. Pa. 1984) ..............................................................................9

*Smith v. Family Video Movie Club, Inc.*,
  No. 11-1773, 2013 ............................................................................................19-20

*Sullivan v. OracleCorp.*,
  51 Cal. 4th 1191 (Cal. 2011) ..................................................................................16

*Tracy v. NVR, Inc.*,
  No. 04-CV-6541L, 2013 ...............................................................................12,1 9, 21

*Vengurlekar v. Silverline Technologies, Ltd.*,
  220 F.R.D. 222 (S.D.N.Y. 2003) ............................................................................16

*Wal-Mart v. Dukes*,
  131 S. Ct. 2541 (2011)..........................................................................7, 11, 12, 15

*Zivali v. AT&T Mobility, LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011)...........................................................................12


<u>Statutes, Rules, and Regulations</u>                                                          <u>Page(s)</u>

12 NYCRR  § 142-2.2 ............................................................................................16

29 C.F.R. § 541.200(a).........................................................................................21

29 C.F.R. § 541.202(a).........................................................................................14

29 C.F.R. § 541.604(a).........................................................................................13

29 C.F.R. § 541.700 ............................................................................................14

29 U.S.C. § 213...................................................................................................13

29 U.S.C. § 216(b) ..............................................................................................23

Fed. R. Civ. P. 23...................................................................................... *passim*

Bloomberg L.P. ("Bloomberg" or "the Company") respectfully submits this memorandum of law in opposition to plaintiff Lee Siegel's Motion to Certify A Class And Approve Class And Collective Action Notice (the "Motion").

## INTRODUCTION

Siegel, a disgruntled former employee who was fired for poor performance, seeks to represent a class of only 33 Bloomberg employees who served as "Service Desk Representatives" over the past six years, whom he claims were incorrectly classified as exempt from overtime rules. But Siegel's claims are atypical of the putative class, and he admits to key differences between his work experience and those of his co-workers. Unlike the purported class members, who worked in New York, Siegel worked almost exclusively in New Jersey. In fact, he never even worked more than thirty hours a week in New York. Siegel is simply ineligible for overtime compensation under New York law – the only claim at issue in his Rule 23 motion.

Siegel also fails to substantiate his assertion that common questions will predominate over individualized issues concerning both liability and damages. Particularly given Siegel's claim that putative class members incurred overtime by working from home after hours, the fact-specific, individualized inquiry that will be required to determine whether each purported class member claims to have worked over 40 hours in any given week, whether any such time is compensable, and whether the specific duties of each purported class member exempts her from the overtime rules, preclude Rule 23 certification and FLSA collective action.

## STATEMENT OF FACTS

1.  <u>Bloomberg's Business</u>

Bloomberg is a leading global provider of news, data and analytics. (Decl. of Michael Seminerio, June 6, 2013 ("Seminerio") ¶ 2.) Its core business is a data, analytics, and news platform delivered to subscribers in through its proprietary BLOOMBERG

PROFESSIONAL® service (the "BPS"), which is now the leading choice of more than 310,000 financial professionals in 174 countries.  (*Id.*)

Bloomberg's Information Systems department serves the internal technology needs of the Company's employees and is responsible for maintaining the global distribution, implementation, and support of the hardware and software needs of the Company.  (*Id.* ¶ 3.)

2.    Service Desk Representatives

Bloomberg created the Service Desk Representative ("Service Desk Rep" or "Rep") position in March 2010, as part of a larger reorganization of the Information Systems department.  (*Id.* ¶ 4.)  At that time, Bloomberg also moved the Service Desk and Systems Administration groups from Princeton, New Jersey to New York, New York.  (*Id.* ¶ 5.)  The consolidation of employees in one office facilitated collaboration among team members, which allowed the department to improve its service, efficiency, and quality of work.  (*Id.*)

Only 33 individuals have held the Service Desk Rep position since it was created in 2010.  (*Id.* ¶ 6.)  Currently, Bloomberg employs 18 Service Desk Reps in the United States, all of whom are based in New York City, and who are divided into two teams.  (*Id.* ¶¶ 6, 7.)  Each team comprises 8 to 10 Reps and a Team Leader, who is responsible for the overall management and supervision of the team.  (*Id.* ¶ 7.)  Prior to April 2013, Bloomberg classified all of its Service Desk Reps as exempt, and none of them was paid overtime.  (*Id.* ¶ 20.)  On April 29, 2013, Bloomberg reclassified certain of its employees, including Service Desk Reps, as non-exempt.  (*Id.*)

Service Desk Reps provide the front line of technical support for the Company. The Reps field employee inquiries about technical support needs, which include questions related to computers (hardware and software), mobile technology, and telephone issues.  (*Id.* ¶ 8; Declaration of Sergio Agopian, June 6, 2013 ("Agopian") ¶ 3.)  Employees submit their inquiries

to the Reps as "tickets" through an internal system.  (Seminerio ¶ 8; Agopian ¶ 3.)  When a Service Desk Rep receives a ticket, she must decide whether it presents a problem she can solve, and how to solve that problem, or whether it must be escalated.  (Seminerio ¶ 8, 10; Agopian ¶ 4.)   When escalating a ticket, the Service Desk Rep must ascertain, based on her own experience, technological expertise, and discretion, which other group should handle it.  (Seminerio ¶ 10; Agopian ¶ 4.)  Some Reps develop a greater level of expertise about particular applications, so they advise other Reps on how to address certain issues.  (Agopian ¶ 4.)  All Reps, however, are expected to exercise independent judgment and discretion to determine how best to resolve each ticket.  (Seminerio ¶ 10; Agopian ¶ 3, 4.)

The Service Desk Rep position is not an entry-level "help desk" role; prior technological experience is required.  (Seminerio ¶ 9; Agopian ¶ 6.)   A newly-hired Rep typically undergoes two to three weeks of on-the-job training, after which he or she is expected to be fully engaged in the group's workflow.  (Seminerio ¶ 9; Agopian ¶ 6.)

Service Desk Reps typically work one of three schedules: 7 a.m. to 4 p.m.; 8 a.m. to 5 p.m.; or 9 a.m. to 6 p.m., each with a one-hour lunch break.  (Seminerio ¶ 14; Agopian ¶ 9.)  Each Rep is expected to be logged onto the phone system and the ticket system, ready to field tickets, when his or her shift begins.  (Seminerio ¶ 14; Agopian ¶ 9.)  There is no expectation that Reps log in before the start of their shift, and there is no pre-shift activity in which Reps must engage to be ready for the start of any shift.  (Seminerio ¶ 14; Agopian ¶ 9.)  In fact, many Bloomberg employees start working well after arriving at the office, because they take advantage of the Company-provided free breakfast that is available to all employees.  (Seminerio ¶ 16; Agopian ¶ 10.)  Additionally, on any given day, some Reps may log in a few minutes late or log out a few minutes early, and they generally are not penalized for doing so.  (Seminerio ¶ 14.)

Throughout the day, individual Reps take breaks for any number of reasons, including to visit Bloomberg's "pantry" for free drinks and snacks, smoke, or simply socialize. (Seminerio ¶ 17; Agopian ¶ 12.)   Team Leaders are lenient with breaks; there is no policy for how many breaks an employee may take or for how long.  (Seminerio ¶ 17; Agopian ¶ 12.) Team Leaders merely expect Reps to take and resolve as many tickets as they can – working at their own pace – over the course of their shift.  (Seminerio ¶ 17)

Team Leaders encourage Reps to leave their desk for their one-hour lunch breaks and do not expect anyone to work during their lunch hour, although Reps sometimes voluntarily bring lunch to their desks and continue to work.  (Seminerio ¶ 18; Agopian ¶ 11.)  While taking a lunch break, Reps must either log off from the system or go "on hold" so they do not receive tickets.  (Agopian ¶ 11.)

Service Desk Reps are not required or encouraged to log in from home before or after their shifts.  (Seminerio ¶ 19; Agopian ¶ 14.)  They may, on a voluntary basis, log in from home to finish or correct work in progress, such as notes, but that happens infrequently. (Seminerio ¶ 19; Agopian ¶ 14.)  Reps are not expected to check Bloomberg email at home (or anytime outside of their shift), and Bloomberg does not provide them with mobile devices to access Company email.  (Agopian ¶ 14.)

Service Desk Reps generally work on special projects outside of their technical support role to help Bloomberg enhance its products and service.  (Seminerio ¶¶ 11, 12; Agopian ¶ 7.)  For example, depending on their skills and initiative, certain Reps are asked to assist with enhancing or updating administrative processes that improve the functionality of the group, such as revising the categorization system for tickets to streamline their resolution. (Seminerio ¶ 11; Agopian ¶ 7.)  Some Reps, on their own initiative, identify problems or areas of improvement for

the programmers or developers to address.  (Seminerio ¶ 11.)  The extent to which individual

Service Desk Reps engage in special projects varies greatly.  (*See* Seminerio ¶ 11; Agopian ¶ 7.)

3.   The Named Plaintiff

Siegel began working at Bloomberg in January 1998, in the Company's Princeton

office, as a network engineer.  (Siegel Decl. ¶ 2.)  He served in various roles, including Service

Desk Representative.  (Decl. of Deirdre N. Hykal, June 6, 2013 ("Hykal") Ex. B.)

Siegel became a Service Desk Rep in September 2010.  (Hykal Ex. B.)  Although

he had officially had been transferred to New York as part of the Information Systems

reorganization, he continued to work almost exclusively from New Jersey during his entire

tenure as a Service Desk Rep.  (Hykal Ex. B; Seminerio ¶¶ 22, 24.)  From the time Siegel

became a Service Desk Rep through November 2010, when he began an extended medical leave

of absence, he worked in New York only 11 days total, and not at all after that.  (Hykal Ex. A;

Seminerio ¶¶ 24, 25.)

Working off-site in New Jersey, however, hampered Siegel's ability to benefit

from the constant group interaction and collaboration fostered by the structure of the department

in the New York office and ultimately exacerbated his performance problems as a Service Desk

Rep.  (Seminerio ¶ 27.)  After returning to work in New Jersey in 2011 following his medical

leave, Siegel never again worked from Bloomberg's New York offices.  (*Id.* ¶ 24.)

Siegel's performance as a Service Desk Rep fell well below his manager's

expectations.  (*Id.* ¶¶ 27, 28.)  One of his specific performance failures was that he escalated

client inquiries too quickly, including on issues that Reps were expected to resolve independently

given their level of technical expertise.  (*Id.*)  Siegel received numerous warnings about his

continued performance deficiencies, but he failed to improve.  (*Id.* ¶ 30)  On June 27, 2012,

Bloomberg terminated Siegel's employment for poor performance.  (*Id.*)

4.     On Average, Siegel Worked Fewer Than 40 Hours Per Week During His Entire Time As A Rep, And He Never Worked More Than 40 Hours In Any Given Week In New York.

Bloomberg's "badge" data, which tracks when employees enter and exit Bloomberg's offices, show that Siegel was in the office an average of 36.9 hours per week during his employment as a Service Desk Rep.  (Hykal ¶ 2 and Ex. A.)  Siegel admits that he did not work at home, although he claims that other Reps did.  (Siegel Decl. ¶ 16.)

During the entire time when Siegel was employed as a Service Desk Rep, he worked only 11 days in New York total.  (Hykal Ex. A; Seminerio ¶¶ 24, 25.)  He never worked more than 3 days, or spent more than 27 hours (including lunch breaks), in the New York office in any given week.  (Hykal Ex. A; Seminerio ¶ 24.)

## THE PARTIES' PLEADINGS AND PLAINTIFF'S CERTIFICATION MOTION

On February 28, 2013, Siegel commenced this action under the Fair Labor Standards Act ("FLSA") and the New York Labor Law (the "NYLL"), seeking unpaid overtime.  On April 10, 2013, Siegel amended his complaint (the "Complaint").  He purports to act for a class of "Service Desk Representatives."  (Compl. ¶¶ 11-12.)  In Bloomberg's Answer of April 29, 2013, it raised various affirmative defenses, including that Service Desk Representatives are exempt from state and federal overtime requirements.  (Ans. of Bloomberg L.P. at 8.)

On May 20, 2013, Siegel filed the Motion, seeking Rule 23 class certification with respect to the NYLL claim, notwithstanding the fact that he is ineligible for overtime under the NYLL.  The Motion also seeks conditional certification of a collective action under the FLSA.  Siegel opted to bring the Motion without the aid of any discovery; he has not served

written discovery requests or deposed any class members, and Bloomberg has not yet had the opportunity to depose him.[1]

In support of the Motion, Siegel filed his own declaration, but none from any other purported class members.  He summarily claims in his declaration that the other Service Desk Reps whom he purports to represent "did the same or similar work I did as a Service Desk Representative" for Bloomberg, but that he "believe[s] that most Service Desk Representatives worked more overtime hours than I did."  (Siegel Decl. ¶¶ 7, 21.)  Siegel has offered no evidence to support either of those assertions.

## ARGUMENT

### I.    Plaintiff's Burden

"The class action is an 'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (citation omitted).  Plaintiffs seeking class certification pursuant to Federal Rule of Civil Procedure 23 bear the burden of demonstrating that each of the Rule's requirements has been met.  *See id.*  "The question is not whether the . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *In re IPO Sec. Litig.*, 471 F.3d 24, 34 (2d Cir. 2006) (citation omitted).  "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable."  *Id*. at 33.

Before certifying a class, the court is obligated to undertake a "rigorous analysis" of all of the evidence to ensure that the moving party has met its burden.  *Comcast*, 133 S. Ct. at 1432.  The Supreme Court has repeatedly stated that a court should "probe behind the pleadings before coming to rest on the certification question."  *Id.*  Frequently, this analysis "involves

---

[1]   Exhibit A to Siegel's Motion included a Notice Of Lawsuit With The Opportunity To Join and Consent To Sue (To Have Federal Claims Heard In This Case).  Bloomberg reserves all rights to object to the form and content of these proposed documents, as well as the proposed method of delivery or communication.

considerations . . . enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 (2011) (internal quotations omitted).  As described below, Siegel has failed to meet his burden under Rule 23.

**II.     Class Certification Under NYLL Should Be Denied Because Siegel Has Not Satisfied Any Of The Prerequisites Enumerated In Rule 23(A).**

     A.     <u>The Proposed Class Does Not Meet Rule 23(a)(1)'s Numerosity Requirement.</u>

Siegel recognizes that "a rebuttable presumption of numerosity arises when the proposed class is larger than forty." *Shayler v. Midtown Investig'ns, Ltd.*, No. 12 Civ. 4685, 2013 WL 772818, at *4 (S.D.N.Y. Feb. 27, 2013); *see also* Pl.'s Br. at 6.  On the other hand, "[a]lthough no particular number define[s] the point at which a class action is deemed conclusively inappropriate, a small class militates against certification." *CL-Alexanders Laing & Cruickshank v. Goldfeld*, 127 F.R.D. 454, 455 (S.D.N.Y. 1989) (denying certification of 25-member class) (citation omitted).  Additionally, "[j]oinder has been held preferable where the number of prospective members lies between 30 and 40." *Moscarelli v. Stamm*, 288 F. Supp. 453, 463 (E.D.N.Y. 1968).

To manufacture a class sufficient to meet the presumption threshold, Siegel declares, with no evidentiary support (and despite the fact that he almost never worked in the same physical location as the other Reps), that approximately forty to sixty Reps were working at any one time.  (Siegel Decl. ¶ 7.)   In fact, there have been only 33 Service Desk Reps total since the creation of the position in 2010, and only 18 people currently hold the position.  (Seminerio ¶ 6.)  Siegel thus has not met, nor could he meet, the 40-member numerosity presumption.  *See Shayler*, 2013 WL 772818, at *6 ("the speculative math that counsel performed – extrapolating numerosity – is plainly insufficient to meet the rigorous analysis that *Wal-Mart* requires"); *McGarry v. Becher*, No. 4:08-CV-0146, 2010 WL 1257446, at *3 (S.D. Ind. Mar. 24, 2010)

(denying class certification on numerosity grounds because plaintiff's argument "is rooted in speculation and conclusory allegations").

With so few class members, "plaintiff must show special circumstances warranting class certification." *CL-Alexanders,* 127 F.R.D. at 457. Here, Siegel shows no such special circumstances. Although Siegel cites *Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993), for the proposition that fewer than 40 purported class members does not preclude certification, he does not actually discuss the factors articulated in *Robidoux* that courts must consider when deciding whether to certify such a small class, namely: "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Id.* at 936. [2]

Applying the *Robidoux* factors here, it is clear that no special circumstances warrant certification of a 33-member class. First, judicial economy does not favor certification because Siegel fails "to demonstrate that class certification would avoid 'a multiplicity of actions.'" *Bayridge Volvo Am., Inc. v. Volvo Cars of N. Am., Inc.*, No. 01 Civ. 1890, 2004 WL 1824379, at *3 (S.D.N.Y. Aug. 16, 2004) (denying certification of 27-member class where "no other litigation concerning the controversy [had] already commenced by or against members of the class").

---

[2]  The cases Plaintiff cites as having certified classes of fewer than 40 members all found special factors supporting certification that are not present here, or even argued by Siegel. (Pl.'s Br. at 6 n.1.) *See Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011) (financial considerations); *Novella v. Westchester County*, 443 F. Supp. 2d 540, 547 (S.D.N.Y. 2006) (geographic dispersion and financial considerations); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (financial considerations); *Slanina v. William Penn Parking Corp.*, 106 F.R.D. 419, 423-24 (W.D. Pa. 1984) (prospective injunctive relief and fear of retaliation). The lone exception, *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 105 F.R.D. 506, 508 (S.D. Ohio 1985), involved a class of 275 members, with merely a subclass of 23.

Second, putative class members are not geographically dispersed, and they are all readily identifiable.  *See Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 74 (D.N.J. 1993) (denying certification of 38- and 123-member classes because prospective class members were readily identifiable, easily subject to service, and confined to New Jersey); *CL-Alexanders*, 127 F.R.D. at 457 ("There has been no showing here that the class members are so dispersed in England that coordination . . .  is impossible."); *Bayridge Volvo*, 2004 WL 1824379, at *5 ("Knowledge of names and existence of members has been called the 'most important' factor, precisely because it renders joinder practicable."); *see also* Seminerio ¶ 35.

Third, Siegel makes no allegation that individual employees are unable, whether due to financial or language barriers or fear of retaliation, to join this lawsuit voluntarily.  *See Moscarelli*, 288 F. Supp. at 463 ("With such a relatively small number [of 25 persons], intervention is feasible and will offer each member an opportunity to prosecute his own claim without being subject to the risk that the representative parties might not fairly and adequately protect his interest."); *Shayler*, 2013 WL 772818, at *7 ("The financial resources of class members and ability to file individual suits is assisted by the provisions allowing for payment of fees in the event of successful litigation of NYLL claims. Of course, the claims of each class member to his or her own unpaid overtime cannot be resolved on the merits by another.").

Finally, while Siegel seeks injunctive relief regarding Bloomberg's future pay practice, he could only have standing to seek money damages, since he no longer works at Bloomberg.  (Siegel Decl. ¶ 3.)  As to other Reps, since the position was recently reclassified as non-exempt, an injunction would have no effect on potential future class members.  (Seminerio ¶

20.)  Given that none of the *Robidoux* factors supports class certification, Siegel's motion should

be denied for failure to meet the numerosity requirement of Rule 23(a)(1).[3]

      B.      <u>Siegel Cannot Satisfy The Commonality Requirement Of Rule 23(A)(2) As Set
Forth In *Wal-Mart v. Dukes*.</u>

          Under Rule 23(a)(2)'s commonality requirement, Siegel must show that "there are

questions of law or fact common to the class."  Recently, the Supreme Court instructed that this

requirement "does not mean merely that [potential class members] have all suffered a violation

of the same provision of law."  *Wal-Mart*, 131 S.Ct. at 2551.  "[W]hat matters to class

certification . . . is not the raising of common 'questions' – even in droves – but, rather the

capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the

litigation.  Dissimilarities within the proposed class are what have the potential to impede the

generation of common answers."  *Id*.  (internal citation omitted; alteration in original).  Siegel

fails to satisfy this requirement because, while he purports to identify multiple "questions of law

or fact common to the class," he does not show how those questions will produce common

answers.  (Pl.'s Br. at 7.)  This deficiency is fatal to Siegel's class certification motion.  *Romero

v. H.B. Automotive Group, Inc.*, No. 11 Civ. 386, 2012 WL 1514810, at *18 (S.D.N.Y. May 1,

2012) ("[a]fter *Dukes* . . . the fact that Plaintiff came up with a list of common questions is no

longer sufficient" to satisfy his Rule 23 burden).

          In particular, Siegel cannot satisfy the commonality requirement because two

separate inquiries vital to resolution of Siegel's claims will require individualized

---

[3]    In the event the Court conditionally certifies an FLSA opt-in class, that would be further grounds to deny Rule 23 certification, because the Court could wait to see how many individuals are interested in joining the class.  *See Shayler*, 2013 WL 772818, at *7 ("Since all but a few of the plaintiffs known about have already received specific notice of the FLSA opt-in class and have not chosen to join, it is not at all clear that there is any judicial economy to be gained from litigating this matter as a Rule 23 class (which Wal–Mart reminds us should be the exception and not the rule) . . . .").

determinations:  (1) whether and how much each employee worked "off the clock" and (2) whether and how each employee is exempt under the FLSA and NYLL.

      1.     <u>Alleged "Off-the-Clock" Work</u>

The crux of Siegel's claim is that he and the putative class members worked "'off the clock,' before and after their regular shifts, during meal periods, and at home" and were not compensated for such work.  (Pl.'s Br. at 1.)

Yet Siegel has not presented any evidence of a policy requiring Service Desk Reps to work pre-shift or post-shift, and therefore cannot offer a "common answer" as to what exactly each purported class member was doing during such alleged pre- and post-shift periods of "work."  *See Wal-Mart*, 131 S.Ct. at 2551.  In fact, as explained by the Service Desk Reps' direct supervisors, there is no policy requiring work before or after scheduled hours, or from home.  (Seminerio ¶¶ 14, 15, 19; Agopian ¶¶ 9, 14.)  The Reps have varying practices and autonomy to visit Bloomberg's well-stocked pantries for free breakfast and snacks, socialize before, during, and after scheduled shift times, and surf the internet on breaks and before or after logging in (Seminerio ¶¶ 16, 17; Agopian ¶¶ 10, 12), none of which is compensable.  *See, e.g.*, *Levias v. Pac. Mar. Ass'n*, 760 F. Supp. 2d 1036, 1056 (W.D. Wash. 2011) (pre-shift time spent to "read the paper, get something to eat, drink coffee, and/or talk with co-workers in the lunchroom" not compensable under FLSA).

Nor can Siegel offer any "common answer" as to what work the Service Desk Reps allegedly were doing at home and why, how much work they performed, and when or whether such alleged time is actually compensable.  The ad hoc nature of any time spent working from home precludes a finding of commonality.  *See, e.g.*, *Tracy v. NVR, Inc.*, No. 04-CV-6541L, 2013 BL 114475, at *4 (W.D.N.Y. Apr. 29, 2013) (denying class certification and decertifying FLSA collective action concerning off-the-clock work where "there were no

timekeeping requirements" for the employees, "such that any and all evidence concerning how SMRs days were spent, and the amount of time devoted to outside sales activities, must of necessity derive from testimony by individual SMRs themselves"); *Zivali v. AT&T Mob., LLC*, 784 F. Supp. 2d 456, 464-65, 468 (S.D.N.Y. 2011) (decertifying FLSA collective action where "off-duty email use varied in frequency" and some "managers never expected [employees] to review company emails off-hours," and where defendant could demonstrate "that certain off-duty work was de minimis"); *Birdwell v. Gadsden*, 970 F.2d 802, 810 (11th Cir. 1992) ("an employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA").

Although Siegel, like the plaintiffs in the *Romero v. H.B. Automotive Group*, offers "proposed common contentions," including "whether putative class members worked overtime, and whether Defendants failed to pay overtime and minimum wage in violation of the NYLL," such contentions are insufficient to establish commonality because, while they are "important considerations," they were not the "common one[s]" under Rule 23.  2012 WL 1514810, at *18.  *See also Gardner v. Western Beef Props., Inc.*, No. 07-CV-2345, 2011 WL 6140518, at *31 (E.D.N.Y. Sept. 26, 2011).[4]

2.      FLSA Exemption Status

_____

[4]      As discussed in more detail in Section III, Siegel also ignores *Comcast*, which reaffirmed that a court may certify a class only after it has completed a "rigorous analysis" as to both the Rule 23(a) and 23(b) requirements. 133 S. Ct. at 1432-33 (citing *Wal-Mart*, 131 S. Ct. at 2551-52).  Indeed, the Supreme Court has already applied *Comcast* in a wage-and-hour case where commonality was the central issue.  In *Ross v. RBS Citizens, N.A.*, 667 F.3d 900 (7th Cir. 2012), the Seventh Circuit affirmed class certification based on an "unofficial policy," brushing aside defendant's concerns that individualized issues of how employees were denied overtime or the duties they performed destroyed commonality.  *Id.* at 908-09.  The Supreme Court granted defendant's petition for certiorari, vacated the judgment, and remanded the case for further consideration in light of *Comcast*.  *RBS Citizens, N.A. v. Ross*, 133 S. Ct. 1722 (2013).

The issue of whether Service Desk Reps are subject to an FLSA exemption also precludes a finding of commonality.[5]  The FLSA exempts from its overtime requirements certain broadly-defined classes of employees, *see* 29 U.S.C. § 213, which federal courts have applied to state Labor Law claims.  "Thus, if Plaintiff is subject to the FLSA's exemptions, [he] is also exempt from the NYLL's protections."  *Romero*, 2012 WL 1514810, at *17 (citation omitted).

Although the merits of Bloomberg's exemption defense are "not appropriate to reach during the conditional certification stage . . . the possible *existence* of exemptions may be relevant to an analysis of whether employees are similarly situated to each other, whether plaintiffs have satisfied the commonality requirement of [Rule] 23, or whether a plaintiff is likely to be an adequate class representative."  *Id*. at *6.  (citation omitted).  The Service Desk Rep position implicates the administrative exemption.  *See* 29 C.F.R. § 541.202(a) (the administrative exemption requires that "an employee's primary duty [to] include the exercise of discretion and independent judgment with respect to matters of significance . . . [which] involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.").

Determining whether an exemption applies to each class member requires highly fact-intensive analyses that preclude a finding of commonality.  For example, in *Romero*, Judge McMahon declined to certify a Rule 23 class where the exemption analyses would require individualized proof, precluding "class wide resolution" of the "central question in [the] case."  2012 WL 1514810, at *32.  Similarly, in *Myers v. Hertz*, the court found that plaintiffs could not

---

[5]   Although Bloomberg reclassified the Service Desk Rep position as non-exempt in April 2013 (*see* Seminerio ¶ 20), reclassification "cannot establish an employer's liability for the period prior to the reclassification," *Clarke v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400, 2010 WL 1379778, at *22 (S.D.N.Y. Mar. 26, 2010); *see* 29 C.F.R. § 541.604(a) (employers may pay overtime without losing the exemption);*Oetinger v. First Resid. Mortg. Network*, No. 3:06-cv-381, 2009 WL 2162963, at *3 (W.D. Ky. July 16, 2009) (defendant's classification is not determinative FLSA classification").

satisfy Rule 23's commonality and typicality requirements in light of "the individualized nature of the exemption analysis."  *Myers v. Hertz*, No. 02-Civ-4325, 2007 WL 2126264, at *5 (E.D.N.Y July 24, 2007) ("*Myers I*"), *aff'd* 624 F.3d 538.  *See also Gardner v. W. Beef Props., Inc.,* No 07-CV-2345, 2011 WL 6140518, at *3 (E.D.N.Y. Sept. 26, 2011) (denying class certification where the resolution of the exemption issue will require an individualized analysis of class member's responsibilities), *report and recommendation adopted sub nom. White v. W. Beef Props., Inc.*, No. 07-CV-2345, 2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011).

In short, given the inherently fact-specific inquiry that will be required to determine whether each Service Desk Rep worked compensable overtime, and whether each Service Desk Rep is exempt, neither of these questions can be resolved "in one stroke," and commonality is not satisfied.  *Wal-Mart*, 131 S. Ct. at 2551.

C.   <u>Siegel's Claims Are Not Typical Of The Claims Or Defenses Of The Purported Class.</u>

Rule 23(a) also requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citation omitted).  Because the typicality and commonality requirements under Rule 23(a) often merge, the factors that defeat commonality here also belie the typicality requirement.  *See*, *e.g.*, *Flores v. Anjost Corp.*, 284 F.R.D. 112, 124-125 (S.D.N.Y. 2012).  In addition, Siegel is atypical in several respects.  Most critically, he never worked more than 40 hours in New York in any given week like the class members he purports to represent.  (Seminerio ¶ 24, 34.)

Although Siegel argues that "the factual background of the named plaintiffs' claim need not be identical to that of the putative class members," (Pl.'s Br. at 8), it is undisputed that the class members' claims must arise from "the same course of events," *see id.*; *Marisol*, 126 F.3d at 376. Here, as described in detail below, the fact that Siegel worked almost exclusively in New Jersey means that he has no NYLL claim, let alone one that arises from the "same course of events" as any New York Service Desk Rep. *See*, *e.g.*, *Marisol,* 126 F.3d at 376.

In addition, Siegel concedes that he never worked from home, while his colleagues supposedly "often checked and responded to emails after their shift ended." (Siegel Decl. ¶ 16.) He also asserts that he "generally worked about 2-4 hours of extra work each week," beyond his scheduled shifts but that other Reps "worked more overtime hours than [he] did." (*Id.* ¶ 21). These material differences render Siegel unable to meet the typicality requirement of Rule 23(a)(3).

D.   Siegel Is An Inadequate Class Representative.

The final prerequisite for class certification under Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class. To satisfy this requirement, the "the proposed class representative [must] have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Han v. Sterling Natl. Mortg. Co.*, No. 09-CV-5589, 2011 BL 235774, *7 (E.D.N.Y. Sept. 14, 2011) (citation omitted). In assessing the adequacy of class representatives, courts may also consider their credibility. *See e.g. Darvin v. Int'l Harvester Co.*, 610 F. Supp. 255, 257 (S.D.N.Y. 1985). Siegel is an inadequate class representative for several reasons.

First, Siegel purports to represent a class of Bloomberg employees who allege that they are owed overtime compensation under New York's Labor Law. Siegel himself, however, is not entitled to overtime compensation under New York's Labor Law because he worked

almost exclusively in New Jersey.  New York requires that non-exempt employees be

compensated for all hours worked in excess of 40 hours in a workweek.  12 NYCRR § 142-2.2.

Courts have repeatedly held that a state's wage laws are only applicable to employees working

within that state.  *See Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222 (S.D.N.Y. 2003);

*Redick v. E Mortgage Mgmt. LLC,* No. 11-1260, 2013 BL 71440 (D. Del. Mar. 15, 2013);

*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (Cal. 2011).  While Siegel spent a handful of days

working in New York, he never completed a workweek in excess of 40 hours in the state.  In

fact, he never spent more than 27 hours in Bloomberg's New York office in any given week as a

Service Desk Rep, counting every minute he spent on the premises, including non-compensable

time.  (Hykal Ex. A.)  Having never worked overtime in New York, Siegel is therefore ineligible

to pursue a claim under the NYLL.

   Siegel's inability to state a claim under NYLL makes him "subject to unique

defenses which threaten to become the focus of the litigation."  *See Baffa v. Donaldson*, 222 F.3d

52, 59 (2d Cir. 2000).  He, therefore, is an inadequate class representative.  *See id.; Davis v.

Lenox Hill Hospital,* No. 03 Civ. 3746, 2004 WL 1926086, at *6 (S.D.N.Y. Aug. 31, 2004)

(finding a class representative inadequate because he "does not possess the same interests and

has not suffered the same injuries as other members of the purported class").

   Second, the significant factual differences in Siegel's claims prevent him from

fairly protecting the interests of the class members.  *See Bishop v. New York City Dep't of

Housing Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992).  Siegel did not work similar hours

to the other class members (*See* Siegel Decl. ¶ 21), nor did he work in the same location

(Seminerio ¶ 35.)  Siegel also admits that he did not work from home, an allegation that is

critical to the theory advanced by the class.  (Siegel Decl. ¶ 16.)  These factual differences, which go to the heart of the allegations in this case, cannot be overlooked.

Third, Siegel's history of poor performance sets him apart from the other class members and runs the risk of "detract[ing] from the interests of the class."  *Meyers v. ACE Hardware, Inc.*, 95 F.R.D. 145, 152 (N.D. Ohio 1982) (disqualifying class representative because his "questionable work records" created a likelihood that litigation of the case would "be entangled with issues concerning [his] poor employment records" and "work to [the class members'] disadvantage at trial").  Siegel's managers expressed concern about his poor job performance and work ethic long before his ultimate termination.  (Seminario Decl. ¶¶ 27-29.)  After several years of unsuccessful efforts to help Siegel improve, the company ultimately terminated his employment.  (*Id.* ¶ 30.)  Such a history of poor performance runs the risk of distracting from the class members' claims.  *See Meyers,* 95 F.R.D. at 152.

Finally, Siegel's credibility is called into question by his declarations regarding his work hours, which are belied by Bloomberg's badge data.  As described above, Siegel claims that he "generally worked 2-4 hours of extra work each week."  (Siegel Decl. ¶ 21).  But Bloomberg's badge data show that he spent an average of just 36.9 hours per week in the office. (Hykal Ex. A.)  Indeed, because such badge data reflect only when an employee enters and exits the building, Siegel worked even fewer compensable hours than that.  (*Id.* ¶ 2.)  Such inconsistencies in Siegel's claims "could create serious problems with respect to [his] credibility and could become the focus of cross examination and unique defenses at trial."  *Darvin*, 610 F. Supp. at 257.  A witness who lacks credibility with regard to the single most important fact in this case – overtime hours worked – is not an adequate class representative.

**III.   Siegel Fails To Meet The Heightened Predominance Requirement Of Rule 23(b)(3).**

Siegel's motion requires him to satisfy not only Rule 23(a), but also at least one of the prongs of Rule 23(b).  Here, Siegel relies on Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The predominance requirement is intended to ensure that "the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or brining about other undesirable results.'"  *Myers v. Hertz Corp.* ("*Meyers II*"), 624 F.3d 537, 547 (2d Cir. 2010) (citation omitted) (affirming district court's denial of class certification in wage and overtime case).  "Therefore, the requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Id.* (citations omitted).  As the Supreme Court recently noted in *Comcast v. Behrend*, a case conspicuously omitted from Siegel's brief, "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  *Comcast*, 133 S. Ct. at 1432.

Like in *Myers*, the two primary questions of law or fact here are whether Siegel and the purported class members (1) were denied overtime, and (2) were entitled to overtime. And "[w]hile the first [question] is a simple factual matter and is not in dispute, the second is a complex, disputed issue, and its resolution turns on exemption, which in turn will require the district court to decide a number of subsidiary questions involving whether plaintiffs fall within the Labor Department's criteria" for exempt employees.  *Myers II*, 624 F.3d at 548.

A.    The Individualized Damages Calculations Required In This Case Predominate
       Over Common Questions.

Siegel has not satisfied the predominance requirement of Rule 23(b)(3), because

"[q]uestions of individual damage calculations will inevitably overwhelm questions common to

the class." *Comcast*, 133 S. Ct. at 1433.  In recent weeks, in the wake of the *Comcast* decision, a

number of courts have denied class certification of wage and hour cases under Rule 23(b)(3)

because of plaintiffs' failure to offer a common methodology for the calculation of damages.

*See*, *e.g., Tracy*, 2013 BL 114475, at * 6 ("any determinations to be made concerning damages . .

. are too highly individualized to form the basis for a class action"); *Ginsburg v. Comcast Cable

Commc'ns Mgmt., LLC.*, No. C11-1959RAJ, 2013 BL 103630, at * 9-10 (W.D. Wash. Apr. 17,

2013) ("Even at the class certification stage, a plaintiff must demonstrate a damages

methodology that has some potential to reasonably assess damages."); *Smith v. Family Video

Movie Club, Inc.*, No. 11-CV-1773, 2013 BL 99577, at *11-12 (N.D. Ill. Apr. 15, 2013)

("[D]amages must be susceptible to measurement across the entire class, and individual damage

calculations cannot overwhelm questions common to the class.").

Here, Siegel offers no common measure of damages for the purported class

members, instead arguing, in reliance on pre-*Comcast* case law, that "the existence of individual

questions as to damages is generally unimportant."  (Pl.'s Br. at 15.)  Indeed, he could not

possibly offer a common measure of damages, because the only way to determine how many

hours each class member actually worked from home, pre-shift, post-shift, and during meal

breaks, as well the extent to which such alleged work is compensable, would be to analyze, on a

case-by-case basis, the nature of the work alleged performed by each purported class member

"off the clock" or at home, when such work occurred, and why.  *See Ginsburg*, 2013 BL 103630,

at * 8-9.  "Without presenting [such a]  methodology," Siegel "cannot show Rule 23(b)(3)

predominance." *See Comcast*, 133 S. Ct. at 1432. *See also Severin v. Project Ohr, Inc.*, No. 10 Civ. 9696 (DLC), 2012 WL 2357410, at *9-10 (S.D.N.Y. June 20, 2012) (plaintiffs failed to satisfy predominance requirement in a wage and hour case under NYLL because they did not show that the specifics of each purported class member's schedule were "susceptible to class-wide resolution").

Apparently conceding that he cannot meet his burden under Rule 23(b)(3) with respect to damages, Siegel suggests that the court bifurcate the class and certify it only with respect to liability. (Pl.'s Br. at 16.) Such bifurcation would be improper for at least two reasons. First, the cases on which Siegel relies were decided pre-*Comcast* and do not reflect the Supreme Court's explicit direction that a class should not be certified where the plaintiff fails to present a common methodology for calculating damages. *See Comcast*, 133 S. Ct. at 1432. Second, Siegel says that bifurcation would only be possible if "common questions predominate over individual questions as to liability." (Pl.'s Br. at 16.) They do not. As discussed above, the question of whether Siegel and the purported class members were entitled to overtime – which is at the core of the liability issue – will require an individualized analysis of both the job functions of each purported class member and the nature of the time they spent allegedly spent working "off-the-clock" to understand whether they are entitled to be compensated for that time. Given how closely related those issues are to the question of damages, it would be less efficient to bifurcate the case than to allow would-be plaintiffs to join individually.

B.   The Individualized Exemption Determinations Would Predominate Over Common Questions.

As discussed above in Section II.B, determining whether a purported class of plaintiffs is exempt under the relevant Department of Labor standards "is a mixed question of law and fact . . . involving a number of subsidiary questions." *Myers II*, 634 F.3d at 548. Here,

Service Desk Reps qualify for the administrative exemption based on the individual duties they perform and the level of discretion and judgment and discretion they are permitted to exercise. *See, e.g.,* 29 C.F.R. § 541.200(a)(3) (listing an employee's "exercise of discretion and independent judgment with respect to matters of significance" as a factor indicative of eligibility for administrative exemption).

Given the highly fact-specific and individualized nature of these questions, Siegel cannot meet his burden under the predominance requirement of Rule 23(b)(3). *See*, *e.g.*, *Myers II*, 624 F. 3d at 551 (denying class certification because plaintiffs failed to "show that more 'substantial' aspects of this litigation will be susceptible to generalized proof for all class members than any individualized issues"); *Tracy*, 2013 BL 114475, at *6 (wage and hours claims under the NYLL were "too highly individualized to form the basis for a class action").

C.       Class Action Is Not Superior To Other Available Methods Of Adjudication.

Besides failing to meet his burden under the Rule 23(b)(3) predominance requirement, Siegel cannot show that class adjudication would be superior to another method of adjudication in this case. *See* Fed. R. Civ. P. 23(b)(3). In making a superiority argument, Siegel engages in an analysis of why the FLSA and NYLL claims should be adjudicated together. Yet that is not the issue here. Rather, Siegel must establish why one class action for all purported plaintiffs is superior to joinder or individual lawsuits by each of the purported plaintiffs. *See* Fed. R. Civ. P. 23(b)(3). In making that determination, courts must consider:

> (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.

*Id.*

Here the factors enumerated in Rule 23(b)(3) clearly weigh against class certification.  First, in light of Siegel's atypicality and inadequacy as a class representative and the lack of commonality among purported class members, as described above, the purported class members surely have an interest in controlling separate litigations.  Second, there is no other pending litigation that could affect the management or outcome of this case.  Third, there is no particular desirability in concentrating the claims in this Court, because the parties, including purported class members, already have ties to New York City.  And fourth, the individualized nature of proof for both the liability and damages issues would be difficult to manage in a class action.  Siegel thus cannot establish that class adjudication is superior to other methods of adjudication, such as joinder or individual lawsuits.

## IV.   The Purported Class Members Do Not Qualify For Certification Under The FLSA Because They Are Not Similarly Situated.

In contrast to opt-out class actions under Rule 23, the FLSA only authorizes opt-in collective actions.  29 U.S.C. § 216(b).  "Courts in the Second Circuit employ a two-stage process to determine whether FLSA certification is proper.  In the first stage, the Court makes a preliminary determination about whether the named plaintiffs and potential opt-in plaintiffs are indeed sufficiently similarly situated  to authorize the sending of notice and allow the case to proceed as a collective action through discovery.  If the court finds that the named plaintiffs and potential opt-ins are so situated with respect to their job duties/requirements, compensation, and employer policies, the court conditionally certifies the collective action." *Romero*, 2012 WL 1514810, at *8 (citations omitted).  In the second stage, which occurs after discovery, "district courts must undergo a more stringent factual analysis to determine whether the collective action members are in fact similarly situated.  The court may decertify the action if the record reveals

that the employees are not similarly situated; the claims of those who have opted in are then dismissed without prejudice to the filing of individual suits." *Id.* (citations omitted).

"While it is certainly true that FLSA conditional class certification requires a far more modest showing than traditional Fed. R. Civ. P. 23 class certification, an FLSA plaintiff must nonetheless allege some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular practice." *Guillen v. Marshalls of MA, Inc.*, No. 09 Civ. 9575, 2012 WL 2588771, at *1 (S.D.N.Y. July 2, 2012) (internal quotation marks omitted). Therefore, "courts in this Circuit have routinely held that the mere fact of a common FLSA-exempt designation, job description, or uniform training is insufficient to find [potential class members] similarly situated for FLSA purposes." *Id.*; *see also Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010) (the "mere classification of a group of employees as exempt does not automatically dictate, as a matter of law, whether collective action notification is appropriate"). Thus, "[w]hile Plaintiff's burden of proof is low, it is not non-existent – certification is not automatic." *Romero*, 2012 WL 1514810, at *10.   As the Second Circuit has made clear, this "modest factual showing cannot be satisfied simply by unsupported assertions." *Myers II*, 624 F.3d at 555 (internal quotation marks omitted).

Courts have recognized that in situations where an individualized inquiry is required for the exemption analyses, even preliminary FLSA certification is inappropriate. *See, e.g., Guillen*, 2012 WL 2588771, at *1 (denying FLSA certification where plaintiff failed to establish that potential class members had similar job duties and therefore were subject to same exemption analysis); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (denying FLSA certification because determining whether potential class members satisfied the administrative exemption would involve an "extremely individual and fact-intensive" inquiry

about the time potential class members spent performing executive, administrative, or professional work).  *See also Evancho v. Sanofi-Aventis U.S., Inc.*, No. 07-2266, 2007 WL 4546100, at *3 (D.N.J. Dec. 19, 2007).

　　　　Additionally, FLSA collective action is not appropriate where the record does not reflect "a policy of requiring Plaintiffs to take work home and not compensating for it."  *Reed v. Cnty. of Orange*, 266 F.R.D. 446, 455 (C.D. Cal. 2010).  With no such policy, work-at-home "claims are simply too diverse to warrant collective treatment, especially when these activities involve time not regularly worked by any member of the class."  *Id.*  Siegel has offered no more than his self-serving declaration to assert that there was a common policy requiring off-the-clock work.  But as demonstrated above, Siegel's claims, location of employment, work schedule, and history of accommodations are completely atypical of the putative class of Service Desk Reps he seeks to represent.  On this thin and questionable record, FLSA collective action certification is inappropriate.  *See Hampshire v. Port Arthur Indep. Sch. Dist.*, No. 1:06-CV-235, 2006 U.S. Dist. LEXIS 88874, *11-13 (E.D. Tex. Dec. 7, 2006) (denying FLSA certification where plaintiffs' conclusory declarations were "vague[]" and because "nearly identical statements in the affidavits that the affiants have personal knowledge of other potential plaintiffs who are similarly situated are insufficient for the court to find that such plaintiffs exist").

## CONCLUSION

　　　　For the reasons set forth above, Bloomberg requests that the Court deny the Motion in it is entirety.

Dated:  June 6, 2013
New York, New York

WILLKIE FARR & GALLAGHER LLP

By: _____/s/ Thomas H. Golden_____
    (A Member of the Firm)

    Thomas H. Golden
    Deirdre N. Hykal
    Colleen M. O'Brien
    Jill K. Grant
    787 Seventh Avenue
    New York, New York 10019
    (212) 728-8000
    tgolden@willkie.com
    dhykal@willkie.com
    cobrien@willkie.com

    *Attorneys for Defendant Bloomberg L.P.*