UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                      :
LEE SIEGEL, PHILIP HARRIS, and JORGE  :
OLIVEROS,                             :
                                      :        13cv1351 (DLC)
                    Plaintiffs,       :
                                      :        OPINION & ORDER
         -v-                          :
                                      :
BLOOMBERG L.P.,                       :
                                      :
                    Defendant.        :
                                      :
--------------------------------------X

Appearances:

For Plaintiffs:

Dan Getman
Lesley Tse
GETMAN & SWEENEY, PLLC
9 Paradies Lane
New Paltz, NY 12561

For Defendant:

Thomas H. Golden
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019

DENISE COTE, District Judge:

    Plaintiffs Lee Siegel ("Siegel"), Philip Harris ("Harris"),

and Jorge Oliveros ("Oliveros") were formerly employed by

defendant Bloomberg L.P. ("Bloomberg") as Service Desk

Representatives ("SDRs").  SDRs are information technology ("IT")

support staff members who provide technical support to

Bloomberg's employees.  Claiming that they were unlawfully denied

overtime pay at the rate of time-and-a-half for hours worked in

excess of forty in a week, plaintiffs bring this action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206 et seq., and the New York Labor Law ("NYLL"), Art. 19 § 650 et seq.[1]

Plaintiffs moved for summary judgment on several issues pertaining to their claims. For the reasons that follow, plaintiffs' motion for summary judgment is granted in part. SDRs are not exempted from the wage and hour provisions of the FLSA, but the calculation of any unpaid compensation must await trial.

BACKGROUND

The following facts are drawn from the parties' submissions and, as is required at the summary judgment stage, are viewed in the light most favorable to Bloomberg, the nonmovant. See Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014). Bloomberg provides financial news and tools to clients around the world. Its core business is a data, analytics, and news platform delivered to subscribers through its proprietary Bloomberg Terminal.

---

[1] As both sides note, the NYLL explicitly incorporates certain provisions of the FLSA, and thus similar analyses govern both the federal law and state law claims here. See, e.g., Zheng v. Liberty Apparel Co., 355 F.3d 61, 78 (2d Cir. 2003). Bloomberg argues in its opposition to the instant motion that Siegel is not entitled to recover under the NYLL because he worked almost exclusively in a Bloomberg office in New Jersey. In their reply brief, plaintiffs counter that Siegel states a valid claim under the NYLL because Bloomberg treated him as having worked in New York. This dispute need not be resolved at this time, and, accordingly, for simplicity this Opinion proceeds by discussing the FLSA only.

SDRs provide technical support to other Bloomberg employees, such as its sales representatives.  SDRs field inquiries from employees about their technical support needs, including questions related to computers (hardware and software), mobile technology, and telephone issues.  Employee inquiries that have been submitted to the SDRs are referred to as "tickets."  When an SDR receives a ticket, he must decide whether it presents a problem he can solve, and if so, how to solve it, or whether it presents a problem that must be "escalated" to a department other than the Service Desk.  As they work on tickets, SDRs are expected to enter notes regarding the latest status of the resolution of the inquiry, which is known as "updating."

Although responding to employee inquiries is an SDR's primary responsibility, it is not his only one.  Oliveros, for example, worked on a six-month-long special project to package and to test connectivity software.  And Harris played a leadership role in a number of special projects, on which he estimated he spent "30 percent" of his working time.

SDRs are hired as fulltime employees and are generally assigned to daily shifts totaling forty hours of work per week. SDRs will, however, sometimes work more or fewer than forty hours in a given week.  When an SDR's shift begins, he is expected to be logged in to Bloomberg's telephone and ticket systems, ready to field requests.  It takes about a minute for an SDR to log in to those systems.

Bloomberg uses a badge system, whereby employees "badge in" when they enter Bloomberg office buildings and "badge out" when they leave.  The system maintains electronic data.  Throughout the day, SDRs take breaks for any number of reasons, including to visit Bloomberg's "pantry" where they can get breakfast, drinks, and snacks, to smoke, to make personal telephone calls, or simply to socialize.  Unless SDRs leave the building, these breaks are not reflected in the badge data.

SDRs are not explicitly required or encouraged to work from home before or after their shifts.  Bloomberg does not expect SDRs to check Bloomberg email anytime outside of their shifts, and Bloomberg does not provide SDRs with mobile devices to remotely access Bloomberg email or systems.

During the relevant time period, Bloomberg paid SDRs an annual salary, as well as a potential annual bonus.  Bonuses were based on company performance, department performance, and individual metrics.  Those bonuses were not tied directly to hours worked, and neither the badge data nor the system login data was part of the individual metrics used in determining bonuses.

Also during the relevant time period, Bloomberg apparently classified the SDR position as exempt from the FLSA's overtime requirements, as Bloomberg did not pay SDRs overtime.  In April 2013, after plaintiffs had left Bloomberg, pursuant to an agreement with the U.S. Department of Labor ("DOL"), Bloomberg

began paying SDRs overtime.  Bloomberg offered to reclassify the
SDR position as nonexempt from the FLSA in connection with the
DOL agreement because, based on discussions with the DOL,
Bloomberg anticipated that the DOL would consider the SDR
position to be nonexempt.

Siegel worked as an SDR at Bloomberg from September 2010
until June 2012.  Harris was employed by Bloomberg as an SDR from
January 2011 until September 2012.  According to the materials
submitted by plaintiffs, Oliveros began working at Bloomberg in
1997 and moved to a "Help Desk" position in 2004.  He would have
held that position in September 2007, which is the starting point
for his damages claims.  By March 2010, the Help Desk was renamed
the Service Desk, and Oliveros took on the title of SDR, which he
held until he left Bloomberg in January 2013.  The materials
submitted by Bloomberg, which go back to January 2010, indicate
that directly before taking on the SDR title in March 2010,
Oliveros's title was IT Analyst-Junior.  The parties do not
appear to dispute that Oliveros's job duties remained the same
between September 2007, when he was employed at the Help Desk
(presumably as an IT Analyst-Junior), and March 2010, when his
title switched to SDR.

To show that there were weeks during which they worked in
excess of forty hours, entitling them to unpaid overtime wages,
plaintiffs adduce evidence of the time they spent working, both
in and out of the office.  To calculate in-office time,

plaintiffs rely on Bloomberg's badge data.  The out-of-office
time is based on plaintiffs' testimony: Harris and Oliveros claim
to have worked from home eight hours per week and three hours per
week, respectively.  Siegel does not claim to have worked from
home.

DISCUSSION

Plaintiffs move for summary judgment on three separate
issues: (1) whether they were covered by, and not exempt from,
the FLSA; (2) how many overtime hours they worked; and (3) what
rate of pay should apply to any overtime hours they worked.

Summary judgment may not be granted unless all of the
submissions taken together "show[] that there is no genuine
dispute as to any material fact" and that plaintiffs, the
movants, "[are] entitled to judgment as a matter of law."  See
Fed. R. Civ. P. 56(a).  Plaintiffs bear the burden of
demonstrating the absence of a material factual question, and, in
making this determination, all facts are viewed in the light most
favorable to Bloomberg and all reasonable inferences are drawn in
Bloomberg's favor.  See Eastman Kodak Co. v. Image Technical
Servs., 504 U.S. 451, 456 (1992); Holcomb v. Iona Coll., 521 F.3d
130, 132 (2d Cir. 2008).

A.   Were Plaintiffs Covered and Not Exempt?

The FLSA generally provides that employees be paid time-and-
a-half for hours worked in excess of forty in a week.  See 29
U.S.C. § 207(a)(1).  Specific classes of employees, however, are

6

exempted from this general provision.  Id. § 213(a).  "Because
the FLSA is a remedial act, its exemptions . . . are to be
narrowly construed. . . .  Accordingly, an employer bears the
burden of proving that its employees fall within an exempted
category of the [FLSA]."  Ramos v. Baldor Specialty Foods, Inc.,
687 F.3d 554, 558 (2d Cir. 2012) (citation omitted).

"The exemption question under the FLSA is a mixed question
of law and fact.  The question of how the employees spent their
working time is a question of fact.  The question of whether
their particular activities excluded them from the overtime
benefits of the FLSA is a question of law."  Pippins v. KPMG,
LLP, 759 F.3d 235, 239 (2d Cir. 2014) (citation omitted).  Here,
there is no genuine dispute about how plaintiffs spent their
working time.  The dispute is over whether plaintiffs' activities
excluded them from the overtime benefits of the FLSA.

The exemption raised by Bloomberg in this case applies to
employees "employed in a bona fide . . . administrative . . .
capacity."  29 U.S.C. § 213(a)(1).[2]  According to the regulations
defining this so-called "administrative exemption," it applies to

>    any employee: (1) Compensated on a salary or fee basis
>    at a rate of not less than $455 per week . . . ;
>    (2) Whose primary duty is the performance of office or
>    non-manual work directly related to the management or
>    general business operations of the employer or the
>    employer's customers; and (3) Whose primary duty
>    includes the exercise of discretion and independent
>    judgment with respect to matters of significance.

---

[2] Bloomberg, which bears the burden of showing that an FLSA
exemption applies, relies exclusively on the administrative
exemption.

7

29 C.F.R. § 541.200(a).

Bloomberg bears the burden of showing that all three elements are satisfied.  Ramos, 687 F.3d at 558.  It is undisputed that the first element is satisfied here.  And because, as discussed below, Bloomberg cannot show that the third element is satisfied, the second element need not be discussed.

The third element requires a determination of the employee's "primary duty."  Notwithstanding any special projects that plaintiffs may have undertaken, the record reveals that their primary duty consisted of troubleshooting and fixing problems with other Bloomberg employees' information technology.  Thus, the question is whether troubleshooting and fixing other employees' technology problems "includes the exercise of discretion and independent judgment with respect to matters of significance."  Assuming that this duty includes the exercise of discretion and independent judgment, it does not do so with respect to matters of significance.

"The term 'matters of significance' refers to the level of importance or consequence of the work performed."  29 C.F.R. § 541.202(a).

> Factors to consider when determining whether an
> employee exercises discretion and independent judgment
> with respect to matters of significance include, but
> are not limited to: whether the employee has authority
> to formulate, affect, interpret, or implement
> management policies or operating practices; whether the
> employee carries out major assignments in conducting
> the operations of the business; whether the employee
> performs work that affects business operations to a

8

> substantial degree, even if the employee's assignments
> are related to operation of a particular segment of the
> business; whether the employee has authority to commit
> the employer in matters that have significant financial
> impact; whether the employee has authority to waive or
> deviate from established policies and procedures
> without prior approval; whether the employee has
> authority to negotiate and bind the company on
> significant matters; whether the employee provides
> consultation or expert advice to management; whether
> the employee is involved in planning long- or short-
> term business objectives; whether the employee
> investigates and resolves matters of significance on
> behalf of management; and whether the employee
> represents the company in handling complaints,
> arbitrating disputes or resolving grievances.

Id. § 541.202(b).  "An employee does not exercise discretion and

independent judgment with respect to matters of significance

merely because the employer will experience financial losses if

the employee fails to perform the job properly."  Id.

§ 541.202(f).

Here, neither the level of importance nor consequence of the

work plaintiffs performed rises to the level of a "matter of

significance."  Plaintiffs did not have authority to formulate,

affect, interpret, or implement management policies or operating

practices.  Plaintiffs did not carry out major assignments in

conducting the operations of the business.  Plaintiffs did not

perform work that affected business operations to a substantial

degree.  Plaintiffs did not have authority to commit Bloomberg in

matters that had significant financial impact.  Plaintiffs did

not have authority to waive or deviate from established policies

and procedures without prior approval.  Plaintiffs did not have

authority to negotiate and bind Bloomberg on significant matters.

Plaintiffs did not provide consultation or expert advice to management.  Plaintiffs were not involved in planning long- or short-term business objectives.  Plaintiffs did not investigate or resolve matters of significance on behalf of management.  And plaintiffs did not represent Bloomberg in handling complaints, arbitrating disputes, or resolving grievances.

There is no binding authority on the applicability of the administrative exemption to IT employees.  What the Second Circuit has recently said about the administrative exemption in general, however, confirms its nonapplicability here:

> [I]n th[e] context [of the administrative exemption], the deployment of discretion and judgment is manifested by the authority to formulate, affect, interpret, or implement the employer's management policies or its operating practices, by involvement in planning the employer's long-term or short-term business objectives, or by the carrying out of major assignments or committing major financial resources in the conduct of the employer's business.

Pippins, 759 F.3d at 240-41 (citation omitted).  The record lacks evidence either of plaintiffs' involvement in planning Bloomberg's long-term or short-term business objectives, or of plaintiffs' carrying out major assignments or committing major financial resources in the conduct of Bloomberg's business.

There is scant nonbinding authority on the applicability of the administrative exemption to IT employees.  The principal case on which plaintiffs rely is Martin v. Indiana Michigan Power Co., 381 F.3d 574 (6th Cir. 2004).  There, the Sixth Circuit held that an IT support specialist whose primary duties included

10

troubleshooting and fixing computer problems did not fall within
the administrative exemption, inter alia because the specialist's
work was not "of substantial importance to the management or
operation of the business of his employer."  Id. at 583 (citation
omitted).  Among other things, the specialist did not design or
develop his employer's computer network or determine how to
configure the software available on that network.  Id.

Bloomberg attempts to distinguish Martin by pointing out
that, there, the plaintiff did not decide or recommend when
equipment needed to be serviced and replaced; by contrast, says
Bloomberg, plaintiffs here exercised that sort of discretion and
judgment.  This distinction serves to highlight what has already
been assumed: plaintiffs here exercised discretion and judgment.
But it does not speak to the fact that this discretion and
judgment was not exercised with respect to matters of
significance.

Bloomberg states that the DOL recognizes "computer network"
as the type of "management or general business operation" that
can satisfy the "matters of significance" test under the
administrative exemption.  In support of this statement,
Bloomberg cites 29 C.F.R. § 541.201.  That regulation relates to
the second element of the administrative exemption, offering
examples of the type of the work that is directly related to
management or general business operations.  The regulation does
indeed list "computer network" as one such type of work.  Even

11

assuming that Bloomberg has raised a genuine dispute as to a material fact on the second element, Bloomberg cannot rely on this regulation in support of the proposition that "computer network" work constitutes a "matter[] of significance."  The requirement that the exercise of discretion and judgment relate to "matters of significance" is part of the administrative exemption's third element, to which § 541.201 does not pertain.

Finally, Bloomberg argues that because its core business is providing hardware and software to its clients, the work performed by SDRs relates to a matter of significance in a way that is distinct from the work performed by IT technicians at other companies.  Bloomberg points out that if SDRs do not adequately perform their job, Bloomberg could lose a potential client.

This argument overstates the connection between what the SDRs do and what the Bloomberg sales force does.  As the record makes clear, plaintiffs worked on troubleshooting and fixing the computer systems of other Bloomberg employees.  There is no indication that plaintiffs designed or developed the hardware and software that form the basis of the Bloomberg Terminal product. A failure to properly troubleshoot a problem with the software installed on a salesperson's computer could lead that salesperson to lose a deal with a potential client, whether the salesperson's company sells stock-information terminals or baseball cards.

Because nothing in the record, when viewed in the light most

favorable to Bloomberg, raises a triable issue as to whether plaintiffs exercised discretion and judgment with respect to matters of significance -- an issue on which Bloomberg bears the burden -- plaintiffs are entitled to the summary determination that they do not fall under the administrative exemption to the FLSA.[3]

B.   How Many Overtime Hours Did Plaintiffs Work?

Plaintiffs next ask the Court to find as a matter of law that they worked overtime hours in the amount that they allege. "To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."  Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011).  A plaintiff must "produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Id. (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)).  "[I]t is possible for a plaintiff to meet this burden through estimates based on his own recollection."  Id. at 362.

The burden then shifts to the employer to come forward with evidence of the precise amount of work performed

---

[3] Because, as explained above, the administrative exemption does not apply on its own terms, it is unnecessary to analyze two additional arguments that plaintiffs offer against application of the exemption: (1) following plaintiffs' departure, Bloomberg began paying SDRs overtime, which could indicate Bloomberg's recognition of a lack of exemption; and (2) certain DOL Opinion Letters interpreting the regulations that define the administrative exemption would seem to militate against application of the exemption here.

13

> or with evidence to negative the reasonableness of the
> inference to be drawn from the employee's evidence.  If
> the employer fails to produce such evidence, the court
> may then award damages to the employee, even though the
> result be only approximate.

Id. (quoting Anderson, 328 U.S. at 687-88).

Here, plaintiffs present evidence of hours worked both in the office and, for Harris and Oliveros, out of the office.  With respect to onsite work, "[t]he workweek ordinarily includes 'all the time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place.'"  29 C.F.R. § 785.7 (quoting Anderson, 328 U.S. at 690-91).[4]  "In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work.  Their early or late clock punching may be disregarded."  Id. § 785.48(a).  "Bona fide meal periods are not worktime.  Bona fide meal periods do not include coffee breaks or time for snacks.  These are rest periods.  The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal

---

[4] "The ultimate decisions on interpretations of the [FLSA] are made by the courts. . . .  The regulations in this part seek to inform the public of [the] positions [the DOL will take in enforcing the FLSA]."  29 C.F.R. § 785.2 (citing Skidmore v. Swift, 323 U.S. 134, 138 (1944)).  That being said, "[t]he long-standing regulations in Part 785 reflect the D[OL]'s expertise on interpretive questions that are essential to the administration of the [FLSA]."  Chao v. Gotham Registry, Inc., 514 F.3d 280, 288 (2d Cir. 2008).

period." Id. § 785.19(a).

There is a genuine dispute as to the amount of in-office and out-of-office hours worked, and thus plaintiffs are not entitled to summary acceptance of their figures.  These are matters of factual dispute that require a trial.

C.   What Rate of Pay Applies to Overtime Hours?

Finally, plaintiffs ask for a summary determination that any overtime backpay they are due be calculated at a rate of time-and-a-half their regular hourly rate, rather than at a rate of one-half their regular hourly rate, as would be called for by the fluctuating workweek ("FWW") method.  The history and analysis of the FWW method -- set forth by the Honorable Katherine Failla in Klein v. Torrey Point Grp., 979 F. Supp. 2d 417, 435-39 (S.D.N.Y. 2013) -- is incorporated here.

As Judge Failla noted, the Second Circuit has never commented on the FWW method.  Id. at 437.  The FWW method first arose in the Supreme Court case of Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 579-81 (1942).  Subsequently, the DOL promulgated regulations that sought to codify the FWW method.  29 C.F.R. § 778.114.  For the reasons given by Judge Failla, the FWW method as spelled out in the DOL regulations cannot apply to a case like this one, where an employee was misclassified by his employer as exempt from the FLSA's overtime requirements and never received overtime payments.  979 F. Supp. 2d at 437.  But, as also explained by Judge Failla, the FWW method as originally

15

spelled out in Missel may still apply in this context.  Id. at 438.

The relevant standard is as follows:  If an employee was misclassified as exempt from overtime payments and accepted a position with the understanding that his salary was compensation for forty hours of work and no more -- e.g., that the employee would work no more than forty hours per week, or agreed to work additional hours for no pay at all -- then the traditional time-and-a-half method of calculating overtime would be appropriate. Id. at 439.  In the alternative, if an employee reached a clear understanding that his compensation was payment for all hours worked per week, no matter their number, then the method prescribed in Missel would govern.  Id.

Circuits are split -- and the Second Circuit has not weighed in -- on whether the employer bears the burden of proving the "clear understanding" needed to invoke Missel's FWW method, or whether the employee bears the burden of proving the lack of such a "clear understanding."  See O'Brien v. Town of Agawam, 350 F.3d 279, 288 n.17 (1st Cir. 2003) (collecting cases).  That question need not be answered here, however, because, even if the employer bears the burden of proving a "clear understanding," plaintiffs have not satisfied the summary judgment standard of showing no genuine dispute as to a material fact.

Viewed in the light most favorable to Bloomberg, the record indicates a genuine dispute as to "what the parties mutually

16

understood regarding [p]laintiffs' employment." <u>Klein</u>, 979 F. Supp. 2d at 439. Plaintiffs submit that they understood that their salary was supposed to cover forty hours of work a week, and that Bloomberg did not pay anything for any extra work they performed. But, as Bloomberg notes, plaintiffs' deposition testimony reveals a murkier picture. Harris, for example, testified that when he discussed the lack of overtime pay with his team leaders, he was told that he "would get a salary," and he "interpreted it to mean that whatever hours you work is that's the salary you get, the forty hours." Similarly, Siegel testified that his weekly forty-hour assignment was his "stated work week but it was worked as needed." "Only an eventual factual determination regarding what the parties mutually understood regarding [p]laintiffs' employment can provide the basis for a conclusion regarding how overtime damages should be calculated." <u>Id.</u> Accordingly, plaintiffs' motion for summary judgment on this issue cannot be granted.

CONCLUSION

Plaintiffs' motion for summary judgment is granted in part. Plaintiffs are entitled to a summary determination that they were covered by and not exempt from the overtime provisions of the FLSA.  Plaintiffs are not entitled to summary acceptance of their calculation of working hours.  Nor are they entitled to summary judgment on the issue of what pay rate should apply to overtime hours.

SO ORDERED:

Dated:     New York, New York
           January 16, 2015

_____
DENISE COTE
United States District Judge

18