**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LEE SIEGEL, individually and on behalf of others similarly situated,** | |
| **Plaintiffs,** | Case No. 13 CV 1351 (DCF) |
| **v.** | |
| **BLOOMBERG L.P.,** | |
| **Defendant.** | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**

**APPROVAL OF COUNSEL'S FEES AND COSTS**

Respectfully Submitted

*by*

*/s/Dan Getman*
Dan Getman
Lesley Tse
Artemio Guerra
Getman Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
(845) 255-9370

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

HISTORY OF SETTLEMENT NEGOTIATIONS .............................................. 5

ARGUMENT ...................................................................................................... 7

I.   The Fee Shifting Provision of the FLSA Ensures That Employees With
     Small Damage Claims Are Able to Enforce Claims Against Their
     Employer ................................................................................................. 7

II.  Plaintiffs' Counsel Obtained an Extraordinary Result for Plaintiffs ...... 8

III. Counsel's Work In The Case. ................................................................. 10

IV.  Plaintiffs' Counsel's Fees Calculated Using the Lodestar Method Are
     Presumptively Reasonable. ................................................................... 13

V.   Plaintiffs Seek Fees of $397,417.05 on a Lodestar Fee of $441,574.50. ......... 17

     A.  Getman & Sweeney's Regular Hourly Rates Are Reasonable. ................ 17

     B.  Getman Sweeney's Rates Are In Line With This District. ...................... 20

     C.  Plaintiffs' Time Was Reasonable and Efficient. .................................... 22

     D.  The Denial of Rule 23 Class Certification Based on Numerosity and the
         Denial of Summary Judgment on the FWW Does Not Warrant a
         Reduction of the Requested Fees ......................................................... 25

     E.  Bloomberg's Litigation Strategy Made This Case Inordinately
         Expensive to Litigate ......................................................................... 28

VI.  Bloomberg Could Have Avoided Paying Plaintiffs' Counsel's Fees By
     Paying Plaintiffs in Accordance With the Law Or Admitting Its
     Violation Earlier. ................................................................................... 31

VII. Class Counsel is Entitled to Reimbursement of Reasonable Litigation
     Costs ...................................................................................................... 32

CONCLUSION ................................................................................................. 32

i

**TABLE OF AUTHORITIES**

**Cases**

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490 (1945). ...................................................... 9

*Allende v. Unitech Design, Inc.*, 783 F.Supp.2d 509 (S.D.N.Y. 2011) ....................... 21

*Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240 (1975) ...................................... 7

*Am. Civ. Liberties Union of Florida, Inc. v. Dixie County Fla.,* 1:07 Civ. 18-MP-GRJ, 2012 WL 1004372 (N.D.Fla. March 23, 2012) ............................................. 22

*Ansari v. New York Univ.*, 179 F.R.D. 112 (S.D.N.Y. 1998) ...................................... 26

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182 (2d Cir. 2008) ................................................................................................................ 13

*Asare v. Change Group of New York, Inc.*, 12 Civ. 3371 CM, 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ................................................................................... 20, 21

*Ayers v. SGS Control Servs., Inc.*, 03 Civ 9078 (RMB), 2008 WL 4185813 (S.D.N.Y. Sept. 9, 2008) *aff'd in part and remanded*, 353 F. App'x 466 (2d Cir. 2009) ........... 14

*Barbour v. City of White Plains*, 788 F. Supp. 2d 216 (S.D.N.Y. 2011) .................... 20

*Barile v. Allied Interstate, Inc.*, No. 12 CIV. 916 LAP DF, 2013 WL 795649 (S.D.N.Y. Jan. 30, 2013) ......................................................................................... 13

*Branson v. Harrah's Tunica Corp.*, 2:08 Civ. 02804-BBD, 2011 WL 3678428 (W.D.Tenn. April 19, 2011) .................................................................................... 22

*Brooklyn Savings Bank v. O'Neil*, 324 US 697(1945). ................................................. 9

*Brown v. Mustang Sally's Spirits & Grill, Inc.*, 12-CV-529S, 2013 WL 5295655 (W.D.N.Y. Sept. 18, 2013) ...................................................................................... 14

*Brumley v. Camin Cargo Control, Inc.*, CIV.A. 08-1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) ....................................................................................... 14, 15

*Campos v. Goode*, No. 10 CIV. 0224 DF, 2011 WL 9530385 (S.D.N.Y. Mar. 4, 2011) ........................................................................................................................ 31

*Clark v. Ecolab, Inc.,* 07 Civ 08623 (PAC), 2010 WL 1948198 (S.D.N.Y May, 11, 2010) ........................................................................................................................ 14

*Clark v. Ecolab, Inc.*, 1:07 Civ. 08623-PAC, Doc. 101 (S.D.N.Y. April 27, 2010) .................... 20

ii

*Demonchaux v. Unitedhealthcare Oxford*, 10 Civ. 4491 DAB, 2014 WL 1273772 (S.D.N.Y. 2014) ................................................................................................... 21

*Duarte v. Tri-State Physical Med. & Rehab., P.C.*, 11 Civ. 3765 NRB, 2012 WL 2847741 (S.D.N.Y. July 11, 2012) ........................................................................ 26

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y 2005) ................................. 26

*Grochowski v. Ajet Const. Corp.*, No. 97 CIV. 6269 (NRB), 2002 WL 465272 (S.D.N.Y. Mar. 27, 2002) ........................................................................................ 27

*Guallpa v. N.Y. Pro Signs Inc.*, 11 Civ. 3133 LGS FM, 2014 WL 2200393 (S.D.N.Y. May 27, 2014) .......................................................................................................... 20

*Guaman v. Ajna-Bar NYC*, No. 12 CIV. 2987 DF, 2013 WL 445896 (S.D.N.Y. Feb. 5, 2013) ..................................................................................................................... 7

*Gulino v. Symbol Technologies,* 2:06-cv-02810-JG-AKT (October 28, 2008) .......................... 14

*Habenicht v. Keycorp ,* 11-cv-02619 (N.D.Ohio Oct. 19, 2012) ................................. 14

*Heng Chan v. Sung Yue Tung Corp.*, No. 03 CIV. 6048 (GEL), 2007 WL 1373118 (S.D.N.Y. May 8, 2007) .......................................................................................... 27

*Hensley v. Eckerhart 461 US 424 (1983)* ..................................................... 8, 9, 22, 27

*Hernandez v. Merrill Lynch & Co.*, No. 11 CIV. 8472 KBF DCF, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) .......................................................................................... 7

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ........................................ 8

*In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1296 (E.D.N.Y.1985) ............... 24

*In re Dreyfus Aggressive Growth Mut. Fund Litigation*, 98 CIV 4318, 2001 WL 709262 (S.D.N.Y. June 22, 2001) ........................................................................... 31

*Kassim v. City of Schenectady*, 415 F.3d 246 (2d Cir. 2005) ................................... 16, 30

*Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417 (S.D.N.Y. 2013) ..................... 12

*Kuzma v. Internal Revenue Service*, 821 F.2d 930 (2d Cir.1987) ................................ 32

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) ...................................... 32

*Lewis v. Alert Ambulette Serv. Corp.*, 11-CV-442, 2012 WL 170049 (E.D.N.Y. Jan. 19, 2012) ................................................................................................................... 15

*Llandez v. Service One Janitorial,* 04 Civ. 2210 (SCR) (S.D.N.Y. Jan. 25, 2007) ................... 14

iii

*Lunday v. City of Albany,* 42 F.3d 131 (2d Cir. 1994)................................................................ 26

*McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund,*
    450 F.3d 91 (2d Cir. 2006) ............................................................................................ 14

*Millea v. Metro–North R.R. Co.,* 658 F.3d 154 (2d Cir. 2011)............................................... 13, 15

*Mister Sprout, Inc. v. Williams Farms Produce Sales, Inc.,* No. 10 Civ.
    6036(RMB)(JCF), 2012 WL 3031471 (S.D.N.Y. July 25, 2012) ........................................... 24

*Mohr v. Chicago Sch. Reform Bd. of Trs.,* 194 F. Supp. 2d 786 (N.D. Ill. 2002) ...................... 30

*Morangelli v. Chemed Corp.,* 275 F.R.D. 99 (E.D.N.Y. 2011) .................................................... 15

*Moreno v. City of Sacramento,* 534 F.3d 1106 (9th Cir. 2008) ................................................... 30

*Murphy, et al, v. Northern Dutchess Paramedics,* 7:11-cv-05661-LMS (SDNY, Doc.
    101, 8/15/14)................................................................................................................ 13, 14

*MZH, AG v. State Indus.-Trade Unitary Enter. "Belyaya Russ",* 03 CIV 3774, 2003
    WL 22852895 (S.D.N.Y., Nov. 10, 2003) ......................................................................... 22

*N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.,* 657
    F.Supp.2d 410 (S.D.N.Y. 2009) ...................................................................................... 21

*N.Y.C. Dist. Council of Carpenters Pension Fund v. Quantum Constr.,* 06 Civ.
    13150, 2008 WL 5159777 (S.D.N.Y. Dec. 9, 2008) .......................................................... 21

*National Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG,* 04 Civ.
    2983 (DLC)(KNF), 2006 WL 5804603 (S.D.N.Y. Dec. 11, 2006)........................................ 21

*New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136 (2d Cir.1983)................. 9

*Novella v. Westchester Cnty.,* 443 F. Supp. 2d 540 (S.D.N.Y. 2006) .......................................... 25

*Odom v. Hazen Transp., Inc.,* 275 F.R.D. 400 (W.D.N.Y. 2011) ............................................... 26

*Perdue v. Kenny A. ex rel. Winn,* 130 S.Ct. 1662 (2010) ......................................................... 13

*Reed v. A.W. Lawrence & Co., Inc.,*95 F.3d 1170 (2d Cir. 1996) ................................................ 9

*Reiseck v. Universal Commc'ns of Miami, Inc.,* No. 06 CIV. 0777 LGS JCF, 2014
    WL 5374684 (S.D.N.Y. Sept. 5, 2014)............................................................................. 32

*Rozell v. Ross-Holst,* 576 F.Supp.2d 527 (S.D.N.Y. 2008) ........................................................ 21

*Salazar-Martinez v. Fowler Bros., Inc.,* No. 10–CV–6257, 2012 WL 4062582
    (W.D.N.Y. Sept. 14, 2012) ............................................................................................ 14

iv

*Saunders v. City of New York, Inc.*, 07 Civ. 830(SAS), 2009 WL 4729948 (S.D.N.Y. 2009) ............................................................................................................................... 22

*Siler v. Landry's Seafood H. - N. Carolina, Inc.,* 13 Civ. 587 RLE, 2014 WL 2945796 (S.D.N.Y. June 30, 2014)............................................................................ 32

*Smith v. Nagai*, 10 CIV. 8237 PAE JCF, 2012 WL 2421740 (S.D.N.Y. May 15, 2012) ............................................................................................................................. 14

*Sulkowska v. City of New York*, 170 F.Supp.2d 359 (S.D.N.Y.2001) ........................................ 24

*Teen Model v. Blood is the New Black*, No. 11 CIV. 05766 GBD DF, 2012 WL 5838185 (S.D.N.Y. Oct. 26, 2012) ..................................................................... 24

*Texas State Teachers v. Garland Indep. School Dist.*, 489 U.S. 782, 109 S. Ct. 1486 (1989)....................................................................................................................... 8

*Tlacoapa v. Carregal,* 386 F.Supp.2d 362 (S.D.N.Y. 2005).................................................... 14

*Torres v. Gristede's Operating Corp* 519 F. App'x 1 (2d Cir. 2013)......................................... 16

*Tran v. Tran*, 166 F. Supp. 2d 793 (S.D.N.Y. 2001) .................................................................. 24

*Velez v. Novartis Pharm. Corp.*, 04 Civ. 09194, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ................................................................................................................. 20

*Viafara v. MCIZ Corp.*, 12 Civ. 7452 RLE, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ............................................................................................................................. 20

*West Coast Hotel v. Parrish*, 300 US 379, (1937).................................................................... 9

*Williamson v. BellSouth,* 04 Civ. 9774 (RJH)(KNF) (S.D.N.Y. July 21, 2006).......................... 14

**Statutes**

29 U.S.C. §255(a) ..................................................................................................................... 10

29 U.S.C. 216(b) ....................................................................................................................... 7

NYLL § 198 ............................................................................................................................... 7

NYLL § 663 ............................................................................................................................... 7

**Regulations**

29 C.F.R. §516.2 ...................................................................................................................... 28

## INTRODUCTION

The FLSA (1938) and NY Labor Law require overtime premium pay for all employees, except those subject to narrow, specified exceptions. Yet, from Bloomberg L.P.'s founding in 1981 up through May 2013, it refused to pay overtime premium pay to any United States workers except interns. Every other employee at every rung of the ladder was denied time and one half, no matter how many hours they worked and no matter how clearly entitled to overtime premium they were.

Bloomberg engaged in a course of flagrant wage hour violation even as it received regular wage hour advice from large competent law firms such as Willkie Farr, Grotta Glassman, and Jones Day. *See, Plaintiffs' Brief in Sup. Of Mot. to Compel*, *Enea v* Bloomberg, 12-cv-4656 (GBD)(FM) Doc. No. 102 at pp. 7-9 (hereinafter referred to as "*Enea Mot. to Compel*"). When Bloomberg was sued in 2006 for wage hour violations for field techinicians in *Glass v. Bloomberg*, No. BC351652, complaint filed (Sup. Ct. Cal., Cty. of Los Angeles May 1, 2006)*,* it quickly settled the case. *Enea Mot. to Compel* at pp. 8-9. But still, Bloomberg did not change its policy denying overtime. *See, Enea Mot. to Compel* at p. 7. This failure to pay overtime to anyone was a concern to Bloomberg's in-house labor counsel, Matthew Asman, when he was hired in 2008. *Id.* at p. 9. Asman immediately began a review of Bloomberg's wholesale failure to pay overtime. *Id.* at pp. 9-10.

In July 2010, the U.S. Department of Labor began an audit of Bloomberg's failure to pay overtime. *Id.* at pp. 10-11. Over the several year period of the non-public DOL investigation Bloomberg continued its practice of refusing overtime to each and every worker at the company except interns. *Id.* at p. 7. In 2012, while the DOL investigation was slowly moving forward, individual Bloomberg employees began filing overtime pay lawsuits with representation by

1

Getman Sweeney. *See Enea v. Bloomberg*, 12-cv-04656 (filed 6/14/12); *Jackson v. Bloomberg*, 13-cv-2001 (filed 3/26/13); *Siegel v. Bloomberg*, 13-cv-1351(filed 2/28/13). *See also Michael v. Bloomberg*, (filed 4/14/14). Another firm also filed a case on behalf of a single plaintiff who worked as a Contract Representative, *DeOca v. Bloomberg*, 13-cv-00076 (filed 1/3/13). In the DOL audit and all of these cases, Bloomberg has been represented by Willkie Farr, who had provided legal advice to the company about the practices that were subject of the investigation and subsequent law suits.

In April 2013, while this case was pending, Bloomberg finally resolved the USDOL overtime investigation, reclassifying approximately 30 different positions (including the SDRs in this case) as overtime eligible. *See, Enea Mot. to Compel,* at pp. 7, 10-11. In April 2013, while this case was pending, Bloomberg began paying Service Desk Reps overtime premium pay for hours worked over 40 and began recording their hours worked at home. *See,* 30(b)(6) Dep. pp. 115:5-119:10 attached as Ex. A. Despite wrapping up its FLSA liability with the DOL, Bloomberg refused to settle this case for the SDRs who joined it, claiming they were exempt.

Plaintiffs believe the reason Bloomberg settled the DOL investigation, and instead fought this case so hard and for so long, was that Plaintiffs' counsel refused to recommend a settlement that used a back pay calculation method known as the "Fluctuating Work Week" (FWW) method.[1] It bears noting that, as part of its effort to wrap up all FLSA back liability with the DOL company-wide, Bloomberg made calculations for the SDRs in this case.[2] Bloomberg supplied USDOL with the back pay methodology it proposed to use. Notably, Bloomberg's back

---

[1] Using the FWW method, the salary is treated as covering all hours, regardless of how many are worked, and the back pay is calculated at ½ the salary divided by total hours worked. Using the time and one half method, back pay is calculated at 1.5 times the salary divided by forty. The FWW results in damages approximately only 1/6 as high as the time and one half method. For fuller discussion on the law of the FWW, *see* Doc. 69.

[2] Plaintiffs believe some, but not all SDRs received checks using this methodology.

pay methodology used its badge hours as hours worked (with certain deductions for lunch), made no inquiry into whether SDRs did any work at home, and calculated back pay using the FWW damage methodology.[3] Under this back pay scheme, which USDOL allowed, the three Plaintiffs in this case were slated to receive $155, $1,565, and $609 for a total of only $2,329 to settle their claims. Ex. B. Once it had largely resolved its federal FLSA liability with the DOL (using a three year limitation period), Bloomberg moved to resolve its state Labor Law liability (which extends through a six year limitation period) for the same classes of employees.

Bloomberg chose to resolve its state liability by offering to add 30 job titles to the single plaintiff's mediated settlement in the *DeOca* litigation. In that case, a mediation resulted in the individual's claim also being settled using the FWW methodology. Once satisfied with that highly favorable result, Bloomberg offered plaintiffs' counsel in *DeOca* the opportunity to fold in 442 other workers' claims using the same formula. *DeOca,* Ottinger Decl., Doc. No. 280 at ¶18. No inquiry was conducted there concerning whether the FWW could be used consistent with SDNY law.[4] In exchange for a release from any further NYLL liability, Bloomberg offered 442 workers $2,682,659[5] and agreed to pay the law firm's attorneys' fees in the amount of $1,355,304.29, a premium of $853,238.04 over his claimed lodestar of $502,066.25 (see Doc. 284 therein) despite the fact that they had engaged in only 6 months of litigation for a single individual and had been offered class claims by Bloomberg by agreement with no formal

---

[3] A detailed explanation of why the FWW is not available to Bloomberg is set forth in Plaintiffs' Confidential Mediation Statement of April 17, 2014 and in Plaintiffs' Summary Judgment Brief, Doc. 79, pp. 20-30.

[4] The legal prerequisites to using the FWW for back pay calculation is set forth in detail in Plaintiffs' summary judgment brief, pp. 20-30, along with cites to the extensive discovery showing that Bloomberg did not give its workers written notice that their salary was intended to cover all hours worked, that there was no "mutual understanding" to that effect, and that workers' pay was not fixed since they received annual bonuses based in part on their performing extra hours of work.

[5] The settlement was calculated at 5,407,000, minus DOL Payments, which ultimately totaled $1,340,680.50, minus attorneys' fees, which totaled $1,355,304.29, minus $20,000 in service payment to the Plaintiff, and $8,356 in costs for a total of $ 2,682,659 with the settlement shares of those who opt-out reverting back to Defendant. This sum divided by 442 workers folded in amounts to $6,069 per person.

discovery.[6] In *DeOca,* the 442 Bloomberg employees covered by the settlement were to be paid an average of $6,069. Interestingly, a private mediation held at virtually the same time with Getman Sweeney, of the class claims in the *Enea v. Bloomberg* litigation ended mid-day following Getman Sweeney's insistence that the FWW could not be used as the measure of damages.[7]

In the DOL audit and in *DeOca,* Bloomberg successfully resolved its back pay liability on the cheap. It obtained the FWW from the United States and from *DeOca's* counsel, and it completely avoided any payment for the hours Bloomberg employees worked at home. Because Getman Sweeney refused to accept Bloomberg's entitlement to use the FWW and persisted in pressing the claim for unrecorded hours worked at home, this litigation took much longer to resolve than *DeOca.* Despite having reclassified the SDR position as FLSA non-exempt in the DOL audit, Bloomberg fought the claims in this case hard. It even persisted with the defense that SDRs are "exempt" from the FLSA and NYLL under the administrative and computer exemptions. It fought class and collective action notice. It fought liability. It fought discovery in numerous ways. It sought tremendously burdensome electronic discovery from the Plaintiffs, even though there was nothing applicable to the claims there. The only defenses Bloomberg eventually conceded in this case were the defenses that Bloomberg acted in "good faith" and, for

---

[6] The complaint was filed on January 3, 2013 and the case was settled in mediation on July 8, 2013. *De Oca,* Doc. 280 at ¶ 6 and ¶ 22.

[7] It is now abundantly clear that Bloomberg scheduled near simultaneous mediations in *Enea* and *DeOca*, which acted effectively as a "reverse auction" without the awareness of either counsel. Newberg on Class Actions § 10:36 (5th ed.) states:

> The Federal Judicial Center describes a reverse auction as "the label for a defendant's collusive selection of the weakest attorney among a number of plaintiff attorneys who have filed lawsuits dealing with the same subject matter; in other words, a reverse auction is the 'sale' of a settlement to the lowest bidder among counsel for competing or overlapping classes." Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 14 (Federal Judicial Center 2005). *See also* Manual for Complex Litigation, Fourth, § 21.61 (describing a reverse auction as a situation "in which [the defendant] selects among attorneys for competing classes and negotiates an agreement with the attorneys who are willing to accept the lowest class recovery (typically in exchange for generous attorney fees).").

statute of limitation purposes, it conceded that it acted willfully. *See*, Doc. No. 54. Bloomberg finally settled this case after Judge Cote granted summary judgment to Plaintiffs on liability, but prior to Court resolution of damages.

## HISTORY OF SETTLEMENT NEGOTIATIONS

Prior to the first settlement conference with Your Honor in January 2014, Bloomberg had offered Plaintiffs only ██████████ including attorneys' fees to resolve the claims.[8] In a phone conference with Plaintiffs and Your Honor on April 3, 2014, Bloomberg ultimately offered Plaintiffs the same ██████████ excluding attorneys' fees.[9] This was the last offer extended by Bloomberg, prior to the in-person mediation session held on February 17, 2015. At the in-person mediation, the parties did not reach agreement, however Your Honor extended a Judge's proposal of ██████████ exclusive of fees, which was shortly thereafter accepted by all sides.

The settlement reached is an excellent result for the Plaintiffs. Siegel received ██████████ Oliveros received ██████████ Harris received ██████████ reflecting their different hours of work at home and different longevity, for an average settlement of ██████████ The average back pay share in this case is more than ██ times higher than what was to be recovered by the U.S. Department of Labor for these same three workers using the FWW (average recovery of $776.33), and the amount recovered is just shy of ██ times higher than the average recovery in the *DeOca* settlement ($6,069 average). It is also ██ times higher than what Bloomberg offered to Plaintiffs prior to summary judgment and prior to the mediation. Counsel's hard work over a period of years was necessary to obtain these excellent results.

---

[8] At that time, the case had been extensively litigated and attorneys' fees exceeded the meager amount being offered. In January 2014, which was prior to any depositions and most discovery, G&S's fees were approximately $90,529.50. In April 2014, G&S's fees were approximately $117,478.50.

[9] Bloomberg explained that it believed these damages represented full payment to Plaintiffs using the FWW methodology and a few thousand more as an inducement.

5

While G&S were ultimately successful in obtaining a valuable settlement for Plaintiffs, this case was not without risks at the time it was taken. Bloomberg is a huge corporation, with $8.3 billion in revenues in 2013,[10] and thus practically limitless resources to defend and delay the lawsuit. While Bloomberg employs more than 15,500 people around the world,[11] the pool of Service Desk Representatives was small, with only 33 putative collective action members. Bloomberg raised several defenses, including the computer and administrative exemptions and the fluctuating workweek ("FWW"). Given that the class size was less than forty individuals, if class were not certified, taking on the case represented a commitment to handling individual litigation without an upside risk for class counsel. Despite these hurdles G&S was able to secure a significant settlement for Plaintiffs by diligently and skillfully litigating the case for two years.

The parties have not been able to settle fees, however. Though Getman Sweeney were up against Willkie Farr & Gallagher, a corporate behemoth with approximately 650 lawyers located in nine offices in six countries[12] and revenues of over $640 million in 2014[13], our persistence and efficiency allowed us to obtain remarkable results for Plaintiffs,.[14]

Due to G&S's detailed knowledge of the FWW and its requirements,[15] its complex discovery practice, and its work to obtain summary judgment in Plaintiffs' favor on liability, Getman Sweeney was able to achieve a settlement for Plaintiffs far in excess of what the

---

[10] http://www.forbes.com/companies/bloomberg/ (last visited 4/30/15).
[11] Id.
[12] http://www.willkie.com/about-us (last visited 4/30/15).
[13] http://www.americanlawyer.com/id=1202719239935/The-Am-Law-100-the-Early-Numbers-Willkie-Farr-Achieves-Personal-Best-in-2014?slreturn=20150330115216 (last visited 4/30/15).
[14] In the event that Defendant challenges this petition claiming counsel expended unnecessary time or effort, Plaintiffs request that the Court obtain and review its own billings, to review the reasonableness of counsel's efforts and the degree to which Bloomberg's strategies required this work.
[15] While any attorney would gladly take a fee of $1,355,304.29 in attorneys' fees for a $500,000 lodestar, attorneys owe a duty to FLSA class members not to counsel acceptance of back pay sums below the litigation risk discounted fair settlement value of the claims.

government or other counsel obtained. G&S is happy to have achieved an admirable result for its

clients. G&S is now entitled to collect its fees for this work.

## ARGUMENT

I.    **The Fee Shifting Provision of the FLSA Ensures That Employees With Small Damage Claims Are Able to Enforce Claims Against Their Employer**

Section 216(b) of the Fair Labor Standards Act (FLSA) provides that where an employee

prevails in an action for back wages "the court in such action shall, in addition to any judgment

awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the

defendant, and costs of the action." 29 U.S.C. 216(b). This language has been interpreted to

mean that attorneys' fees under FLSA are mandatory. *Alyeska Pipeline v. Wilderness Society*,

421 U.S. 240, 261, fn. 34 (1975). Fees are also available under the analogous state statutes,

NYLL §§ 198 and 663.

This Court has long recognized the crucial importance of the fee-shifting provisions of

the FLSA in encouraging the vindication of workers' rights by providing for enforcement of the

law through "private attorneys general," particularly where individual workers have relatively

small claims. *See, e.g., Hernandez v. Merrill Lynch & Co.*, No. 11 CIV. 8472 KBF DCF, 2013

WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013) (Freeman, M.J.) (citations omitted) ("Fee awards

in wage and hour cases are meant to 'encourage members of the bar to provide legal services to

those whose wage claims might otherwise be too small to justify the retention of able, legal

counsel.' The FLSA and state wage and hour statutes are remedial statutes, the purposes of

which are served by adequately compensating attorneys who protect wage and hour rights.");

*Guaman v. Ajna-Bar NYC*, No. 12 CIV. 2987 DF, 2013 WL 445896, at *7 (S.D.N.Y. Feb. 5,

2013) (Freeman, M.J.) (citations omitted) ("Where relatively small claims can only be

prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys

7

general,' attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.").

Fee shifting is particularly important in wage and hour cases because plaintiffs, as working people, typically lack sufficient funds to hire an attorney on a pay by the hour basis and potential damages awards in minimum wage and overtime cases are insufficient to justify a standard contingent-fee arrangement. *City of Burlington v. Dague*, 505 U.S. 557, 569 (1992) (dissent). Given the low values and the risks of losing, Congress intended to lower the hurdles to enforcing FLSA rights through fee shifting. *See, Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (acknowledging Congress' intent to include mechanisms in the FLSA to make vindication of rights more accessible). Fee shifting allowed counsel to spend the time and resources necessary to represent Plaintiffs competently in this matter.

II.   **Plaintiffs' Counsel Obtained an Extraordinary Result for Plaintiffs**

In *Hensley v. Eckerhart* the Supreme Court ruled that in fee shifting cases, plaintiffs are entitled to attorneys' fees, "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." 461 U.S. 424, 433 (1983); *see also Texas State Teachers v. Garland Indep. School Dist.*, 489 U.S. 782, 109 S. Ct. 1486, 1493 (1989). Here, Plaintiffs succeeded on several key issues in the case, securing conditional certification of a collective action and summary judgment on the computer and administrative exemptions issue, which conclusively established Bloomberg's liability in the case. G&S's success on the exemption issue in summary judgment saved time, money and litigation risk by obviating the need to prove this issue at trial. Moreover, Plaintiffs obtained back overtime wages

of ███ through the settlement of the case. Under *Hensley,* Plaintiffs are unquestionably a prevailing party entitled to a fully compensatory fee.[16]

Though the amounts at issue in FLSA cases will generally be small, the Courts have repeatedly recognized the crucial importance such cases have to guaranteeing a basic living wage and limiting the work week to reasonable hours for wage earning working men and women and their families. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). The United States Supreme Court has long recognized the crucial importance of the FLSA to the individual claimants and to society at large,

> The exploitation of a class of workers who are in an unequal position with respect to bargaining power and are thus relatively defenseless against the denial of a living wage is not only detrimental to their health and well being, but casts a direct burden for their support upon the community.

*West Coast Hotel v. Parrish*, 300 US 379, 399 (1937).

> The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce.

*Brooklyn Savings Bank v. O'Neil*, 324 US 697, 706 (1945). In the present case, a settlement of ███ for three Plaintiffs, or an average recovery of ███ is clearly "substantial" within the meaning of *Hensley. See* 461 U.S. at 438.

Here, the settlement was not merely "substantial," it was exemplary. Plaintiffs' counsel was able to secure a settlement for Plaintiffs ██ times what Bloomberg attempted to settle for

---

[16] Time spent on preparing a fee petition is itself compensable. *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170 (2d Cir. 1996); *see also New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983).

with the USDOL for the same claims litigated here, and nearly ▇ times what other counsel obtained for other Bloomberg employees for identical claims in *DeOca*.

III.   **Counsel's Work In The Case.**

Like any wage hour case, once approached by the Plaintiff, Counsel investigated the claims, reviewed wage and hour information, drafted and filed the complaint. Once filed, the answer was reviewed, a discovery and scheduling conference held with the Defendant's attorneys, a preliminary conference was held with the Court and Plaintiffs here moved for collective and class certification and the right to send notice to the class. Plaintiffs are typically required to move for notice early in the case to avoid prejudicing class members' rights through the continued running of the FLSA limitations period on a rolling pay week by pay week basis. 29 U.S.C. §255(a). At the time Plaintiffs moved for class and collective notice, they did not know the size of the class.[17] *See Doc. 14-1,* Pl. Brf. Support of Class, p. 6.

Once the collective notice was sent and two additional individuals joined, the parties engaged in discovery. This required numerous demands of defendant, and counsel reviewed complex spreadsheet wage and hour data, and also engaged in significant technical work to identify sources of time stamp data that would corroborate remote log-ins from home. Plaintiffs took four depositions, a 30(b)(6) of the company, a former Team Lead Sergio Agopian, Manager, Michael Seminerio, and HR professional, Allison Tahmoush. In fact, much time and extra work was saved here by the fact that by the time the mediation occurred here, undersigned counsel had taken several depositions in the *Enea* and *Jackson* cases*,* reviewed thousands upon thousands of pages of documents and millions of rows of data in those cases, and had a thorough

---

[17] The class consisted of 33 individuals, a number below the magic threshold of 40, and despite Plaintiffs' arguments to the contrary, Judge Cote denied class certification on numerosity alone, although she certified the FLSA class as "similarly situated" and directed that notice issue. From that notice, the other two Plaintiffs, Oliveros and Harris joined the case.

understanding of Bloomberg's complex IT architecture, its work and organizational structure, its wage hour history, and its HR policies.

Plaintiffs were also required to respond to extensive ESI discovery from defendant with respect to all 3 plaintiffs, being forced by Bloomberg to search their home computers, external drives, social media and webmail, etc. The work involved in searching home computers is far more complex than that of searching corporate enterprise systems. Home computers are not designed for file identification and extractions to discovery standards. Each email, file structure, web and social media program has different search capabilities and protocols. Programs are not standardized. Even though there was no reason to think home systems would have relevant data in this case, Bloomberg insisted that Plaintiffs undergo massively intrusive and burdensome searches. Counsel's IT department was required to spend a huge amount of work to perform these tasks demanded by Bloomberg.

Once discovery was complete, counsel drafted, briefed and documented a summary judgment motion. Plaintiffs raised three claims – that the Plaintiffs were not exempt under the administrative or computer exemptions, 29 C.F.R. 541.200 *et seq.* and 541.400 *et seq.*, that the FWW could not be applied as a damage methodology, and that the Plaintiffs' account of their hours worked at home should be accepted as conclusive. Judge Cote granted summary judgment to Plaintiffs that they were not exempt from the FLSA or NYLL. While she did not grant summary judgment on the other two points, Plaintiffs believe that the evidence put forth there was so strong and the evidence to the contrary so weak, that the settlement result flowed directly from these submissions.

Plaintiffs also engaged in complex settlement negotiations between February 3, 2014 and the final successful mediation. Even after that point, counsel were required to engage in

11

significant post settlement work to draft a settlement agreement. That agreement became complex due to Bloomberg's demands for confidentiality and release language which required additional negotiation with Plaintiff Siegel's New Jersey counsel to avoid the agreement's interference with claims in that case and thus allowing the parties here to reach a final resolution. And then, counsel were required to document their fees and draft this brief. Throughout this case, Getman Sweeney has litigated against Bloomberg, an opponent with unlimited resources, working zealously to limit its exposure.

In order to rigorously litigate the FWW issue, Plaintiffs' counsel had to do such work as reviewing and analyzing payroll data to determine if Bloomberg paid Plaintiffs a fixed weekly wage, reviewing and analyzing Bloomberg's communications with Service Desk Representatives concerning their hours of work and salary, and deposing Bloomberg regarding its understanding of what Plaintiffs' salary was meant to cover.[18] Due to G&S's detailed knowledge of the FWW and its requirements, its thorough understanding of the FLSA exemptions, and its willingness to tenaciously prosecute this case for two years, G&S was able to win the exemption issue on summary judgment, definitively establishing Bloomberg's liability in this case, and to achieve a settlement for Plaintiffs that did not use the FWW method of calculating damages. G&S's victory on the exemption issue in summary judgment saved immense amounts of time, money and litigation risk by eliminating the need to present this issue at trial. The attorneys in *De Oca* received $1,355,304.29 (multiplier of 2.7 X $500,000 lodestar in attorneys' fees for approximately 6 months of litigation,[19] pursuant to a fee petition that Bloomberg did not oppose.

---

[18] The FWW method can be used only where the parties have mutually agreed that a fixed weekly wage would compensate the employee for all his hours, no matter their number. *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 438 (S.D.N.Y. 2013).
[19] The complaint was filed on January 3, 2013 and the case was settled in mediation on July 8, 2013. *De Oca*, Doc. 280 at ¶ 6 and ¶ 22.

G&S's petition seeking $$397,417.05 on a lodestar of $441,574.50 is more than reasonable for the work performed and the better results obtained here.

IV.   **Plaintiffs' Counsel's Fees Calculated Using the Lodestar Method Are Presumptively Reasonable.**

As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Barile v. Allied Interstate, Inc.*, No. 12 CIV. 916 LAP DF, 2013 WL 795649, at *2 (S.D.N.Y. Jan. 30, 2013) (Freeman, M.J.), *report and recommendation adopted*, No. 12 CIV. 916 LAP, 2013 WL 829189 (S.D.N.Y. Mar. 4, 2013), *quoting Millea v. Metro–North R.R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates "presumptively reasonable fee" (*citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 183 (2d Cir. 2008); *Perdue v. Kenny A. ex rel. Winn,* 130 S.Ct. 1662, 1673 (2010) (internal quotation marks omitted)). There is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." *Barile*, 2013 WL 795649, at *2, *citing Perdue,* 130 S. Ct. at 1673. Here Plaintiffs' counsel is seeking their lodestar, with a 10% reduction voluntary reduction for any possible inefficiencies or vague time entries, and is seeking no enhancement. See Section V.C. Plaintiffs' counsel merely seeks to be fairly compensated for the effective and necessary work performed in this case to secure the significant settlement for Plaintiffs.

Plaintiffs' counsel's usual billing rates are reasonable and have been approved throughout the country. *See, e.g., Murphy, et al, v. Northern Dutchess Paramedics,* 7:11-cv-05661-LMS (S.D.N.Y. 8/15/14)(M.J. Smith)(*See* Doc. 101, approving the rates sought here noting "District Courts throughout the country, including in this District, have regularly approved Class Counsel's customary rates." Doc. 101, ¶37); *Smith v. Nagai*, 10 CIV. 8237 PAE JCF, 2012 WL

13

2421740 (S.D.N.Y. May 15, 2012) *report and recommendation adopted sub nom. Smith v. Saki Rest. Corp.*, 10 CIV. 8237 PAE JCF, 2012 WL 2428929 (S.D.N.Y. June 27, 2012) (approving GS 2012 hourly rates); *See Salazar-Martinez v. Fowler Bros., Inc.,* No. 10–CV–6257, 2012 WL 4062582 (W.D.N.Y. Sept. 14, 2012)*; Habenicht v. Keycorp ,* 11-cv-02619, Doc. #37 (N.D. Ohio Oct. 19, 2012)*; Brumley v. Camin Cargo Controls, Inc.,* 2:08-cv-01798-JLL-MAH, Doc. No. 234 (D.N.J. Mar. 26, 2012)*; Bredbenner v. Liberty Travel, Inc.,* Civil Action Nos. 09–905 (MF), 09–1248(MF), 09–4587(MF), 2011 WL 1344745, 20-22 (D.N.J. April 8, 2011)*; Clark v. Ecolab, Inc.,* 07 Civ 08623 (PAC), 2010 WL 1948198, Doc. # 105 (S.D.N.Y May, 11, 2010)*; Young v. Cooper Cameron*, 04 Civ. 5968, Doc. #104 (S.D.N.Y. Mar. 30, 2009);[20] *Gulino v. Symbol Technologies,* 2:06-cv-02810-JG-AKT, Doc. 47 (October 28, 2008)*; Ayers v. SGS Control Servs., Inc.*, 03 Civ 9078 (RMB), 2008 WL 4185813 (S.D.N.Y. Sept. 9, 2008) *aff'd in part and remanded*, 353 F. App'x 466 (2d Cir. 2009)*; Llandez v. Service One Janitorial,* 04 Civ. 2210 (SCR), Doc. # 22 (S.D.N.Y. Jan. 25, 2007)*; Williamson v. BellSouth,* 04 Civ. 9774 (RJH)(KNF), Doc. # 27 (S.D.N.Y. July 21, 2006).

Moreover, courts across the country have consistently recognized Plaintiffs' counsel's experience and skill at litigating wage-and-hour cases. *See, e.g., Murphy, et al, v. Northern Dutchess Paramedics,* 7:11-cv-05661-LMS (SDNY, Doc. 101, 8/15/14) (M.J. Smith) ("Class Counsel has extensive experience in litigating wage and hour collective and class actions.

---

[20] In two decisions over the years a Court rejected Getman & Sweeney overall staff rates. In *Tlacoapa v. Carregal,* 386 F. Supp. 2d 362 (S.D.N.Y. 2005), the Court reduced our rate due to the small size (only 3 attorneys at the time) of the firm. In *Young v. Cooper Cameron,* the S.D.N.Y. awarded Getman & Sweeney's rates and fees and rejected application of *Tlacoapa* noting that the *Tlacoapa* decision was almost entirely based on the size of the firm at the time. The Second Circuit has also since rejected the reasoning of *Tlacoapa,* holding that "courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner. Overhead is not a valid reason for why certain attorneys should be awarded a higher or lower hourly rate." *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 98 (2d Cir. 2006). The other case reducing our hourly rates overall was *Brown v. Mustang Sally's Spirits & Grill, Inc.*, 12-CV-529S, 2013 WL 5295655 (W.D.N.Y. Sept. 18, 2013) in which the Court found that local rates in the Western District of New York should apply rather than counsel's regular billing rates. *But see, Salazar-Martinez v. Fowler Bros., Inc.*, 10-CV-6257, 2012 WL 4062582 (W.D.N.Y. Sept. 14, 2012) (awarding Getman & Sweeney their regular out of district billing rates). Counsel's application here is consistent with the *Brown* case in that it seeks local rates.

Numerous courts have recognized Class Counsel's extensive experience in successfully litigating wage and hour cases." Doc. 101, ¶15); *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 119 (E.D.N.Y. 2011) (finding Getman & Sweeney to have "stellar" qualifications as class counsel in wage-and-hour class litigation); *Lewis v. Alert Ambulette Serv. Corp.*, 11-CV-442, 2012 WL 170049, *15 (E.D.N.Y. Jan. 19, 2012) ("[Getman & Sweeney] has brought to bear its considerable experience in handling class actions, and other complex litigation, particularly claims of the type asserted in the present action"); *Brumley v. Camin Cargo Control, Inc.*, CIV.A. 08-1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) ("Both this Court and other district courts around the country have recognized Plaintiffs' counsel's experience and skill in prosecuting wage-and-hour class litigation."); *Bredbenner v. Liberty Travel, Inc.*, Civil Action Nos. 09–905 (MF), 09–1248(MF), 09–4587(MF), 2011 WL 1344745, at *7 and *20 (D.N.J. April 8, 2011) (finding Getman & Sweeney highly experienced and competent in wage-and-hour litigation.).

While Plaintiffs' counsel's requested fees exceed the settlement amount, this is not uncommon in FLSA claims where individual financial recoveries are small. *See Millea v. Metro-N. R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011) (finding that it was legal error for district court to disregard lodestar and calculate fee award as proportion of damages). This is particularly the case in cases where, as here, there is no Rule 23 class, but most of the work performed was necessary regardless, such as Plaintiffs' motion for summary judgment on the computer and administrative exemptions. Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. *Id.* Indeed, the whole purpose of fee-shifting statutes is to generate attorneys'

fees that are disproportionate to the plaintiff's recovery. *Id.; see also Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (listing cases) ("Reasoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value, we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation.").

As the Second Circuit held in *Torres v. Gristede's Operating Corp.*:

> The proportionality of the $3.42 million fee award is not to be judged, as Gristede's urges, against the dollar value of the $3.53 million settlement. *See Kassim v. City of Schenectady,* 415 F.3d at 252 (dispelling "notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation"). Rather, " 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Plaintiffs' successes here included procuring summary judgment on FLSA liability, *see Torres v. Gristede's Operating Corp.,* 628 F.Supp.2d 447, 457–62 (S.D.N.Y.2008), and achieving a significant monetary recovery (up to $38,000 per class member) as well as injunctive and other non-monetary relief.

519 F. App'x 1, 5 (2d Cir. 2013). As detailed above, Plaintiffs' counsel obtained extraordinary results for Plaintiffs. Such results more than justify the award of G&S's requested fees and indeed, would justify the enhancement of the requested fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("in some cases of exceptional success an enhanced award may be justified"); *see also Ansoumana v. Gristede's Operating Corp.*, No. 00 CIV 253(AKH), 2004 WL 504319, at *1 (S.D.N.Y. Jan. 7, 2004) (enhancing lodestar in FLSA case because of "creative work of plaintiffs' lawyers in the development of the case," "settlement negotiations" and "successful motion practice"). Claimants do not seek enhancement here, though they could.

16

V.      **Plaintiffs Seek Fees of $397,417.05 on a Lodestar Fee of $441,574.50.**

The lodestar in this case is $441,574.50 which is determined as follows:

| Name (Status) | Hours | Hourly Rate | Total |
|---|---|---|---|
| Dan Getman =P[21] | 273.8 | $625.00 | $171,125.00 |
| Michael Sweeney =P | 8.5 | $505.00 | $4,292.50 |
| Matt Dunn  =A | 2.7 | $360.00 | $972.00 |
| Lesley Tse =A | 416.3 | $325.00 | $135,297.50 |
| Artemio Guerra=A | 153.9 | $275.00 | $42,322.50 |
| Mike Russo =IT | 196.7 | $220.00 | $43,274.00 |
| Anibal R. Garcia = PL | 14.3 | $150.00 | $2,145.00 |
| Janice Pickering = PL | 9.1 | $150.00 | $1,365.00 |
| Carolyn Mow =PL | 231.3 | $150.00 | $34,695.00 |
| Monica Ayres=PL | 11.7 | $150.00 | $1,755.00 |
| Kathy Weiss =PL | 0.1 | $150.00 | $15.00 |
| James Sherwood = PL | 10.3 | $150.00 | $1,545.00 |
| Clerical | 32.6 | $85.00 | $2,771.00 |
| **TOTAL** | **1361.3** | | **$441,574.50** |

**A.  Getman & Sweeney's Regular Hourly Rates Are Reasonable.**

Getman Sweeney is a plaintiffs' side wage and hour firm, handling class and collective

cases around the U.S. against some of the largest companies in the world. The firm's regularly

hourly billing rates were last set in January 2014 and are as follows:

> Partners: Dan Getman ('84) $625, Michael J.D. Sweeney ('96) $505
> Associates: Matt Dunn ('03) $360, Lesley Tse ('06) $325, Artemio Guerra ('10) $275
> Paralegals: $150
> Senior Technology Specialist: Michael Russo $220
> Clerical: $85

Getman Decl. Ex. C. Although G&S typically handle contingent litigation without upfront

payment of fees, when the firm does paying work for other individuals or firms, we bill at, and

receive, our regular hourly rates.

The principle qualifications of the litigation team who handled this case are set forth in

the declaration of Dan Getman, Ex. C hereto, and are also available in summary form on the

---

[21] P = Partner, A = Associate, PL = Paralegal, IT = Technology Specialist.

Getman Sweeney website. Getman is the founding partner of Getman & Sweeney, PLLC. He graduated from Yale Law School with a J.D. in 1984. He practiced for more than 10 years representing migrant farmworkers, a total of 15 years with public interest law firms engaged in federal as well as state court class and individual litigation, and 16 years with this practice dedicated to fighting wage theft. Getman & Sweeney handles wage and hour cases, mainly class or collective actions, exclusively for plaintiff-employees. The firm regularly represents employees against multi-national and Fortune 500 companies; litigating these cases around the country on a contingent fee basis.[22] Getman Dec. ¶¶ 1-4, 13.

Two associates worked on this litigation team. Associate Lesley Tse graduated from Fordham Law School in 2006. Ms. Tse was admitted to practice in New York courts in May 2007, beginning her legal career as a staff attorney in the Housing Unit at Nassau/Suffolk Law Services in Hempstead, NY and as a staff attorney in the Housing Unit at Manhattan Legal Services, the Manhattan office of Legal Services-NYC. In 2011, Ms. Tse became the Deputy Director of the Housing Unit at Manhattan Legal Services before joining G&S later in 2011. Getman Dec. ¶¶ 36-40. Mr. Guerra graduated from Fordham University School of Law, JD 2010 obtaining a Masters from Hunter College (Urban Studies) as well. Before joining the firm he was the coordinating attorney of the Immigrant Worker Rights Project at Catholic Migration Services in Queens, New York, where he represented low-wage workers in wage and hour litigation and managed a collaborative effort with the Occupational Safety and Health Administration and the U.S. Department of Labor to educate workers about their rights. Getman Dec. ¶¶ 41-42. For over

---

[22] For example, the firm has handled or is handling cases against Butterball, LLC (NC), Sprint (DC), Ecolab (NY), Roto-Rooter (NY), Kellogg (WA), Swift Transportation (AZ), DirecTV (MDL, OH, TN, LA), KeyBank (OH), SunTrust Bank (GA), SGS (NY), Liberty Travel (NJ), Symbol Technologies (NY), George Washington University (DC), Waste Management, Inc. (NY), MortgageIT (NY), American Home Mortgage (NY), Waterstone Mortgage Corp. (WI), Central Refrigerated Service, (CA) as well as the governments of Puerto Rico, and the United States of America.

ten years, Mr. Guerra worked as a community organizer and advocate organizing janitors, homeowners, and low-income tenants. Getman Dec. ¶¶ 43-44. Mr. Guerra joined the firm as an associate in 2012.

Getman & Sweeney employs seven paralegals: Carolyn Mow, Anibal Garcia, Janice Pickering, Monica Ayres, Andrea Russo, James Sherwood, and Misty Emerick (together possessing six Masters degrees, and one doctorate).[23] Getman Dec. ¶ 53. The excellent qualifications of the paralegals are summarized on Getman & Sweeney's website getmansweeney.com, and *see* Ex. 2 to Getman Declaration. Getman & Sweeney also employs Michael Russo as Senior Technology Specialist. Getman Dec. ¶ 53. He holds a Bachelors Degree in Physics from Bard College. He has worked in the information systems field since 1984. Since 2006, he has provided technology support, specializing in technology and e-discovery for Getman & Sweeney. His qualifications are summarized on Getman & Sweeney's website and are attached as Ex. 2 to Getman Declaration. Getman Sweeney believes Mr. Russo's in-house work to be a critical component of the practice, enabling the firm to do the most technically demanding data processing necessary to bring cases such as this one (and much larger class cases). Mr. Russo's full time work for the firm enables complex discovery, IT forensics, damages modeling, and database management. This is work that all but the largest firms send out for expensive expert analysis, or simply forego, using back of the envelope estimates instead. With Mr. Russo's work, Getman Sweeney can confidently calculate damages by matching databases of wages and hours, assess the fair settlement value of any case, and handle the complex data issues that arise with extremely sophisticated employers and also do so for those employers with poor or inadequate records (both being the case here). Getman Dec. ¶ 69.

_____

[23] Also Kathy Weiss (Masters Ed.) was a paralegal with the firm until she retired in 2015.

**B. Getman Sweeney's Rates Are In Line With This District.**

Class Counsel's billing rates are at or below the rates for employment firms approved in this District and the rates charged by wage and hour firms in New York City. *See, Clark v. Ecolab, Inc.*, 1:07 Civ. 08623-PAC, Doc. 101, p. 4, ¶ 11 (S.D.N.Y. April 27, 2010) (In 2010 Outten & Golden LLP's "rates range[d] from $475 to $900 per partner's hour, [ ] $225 to $350 per associate's hour, $195 per law clerk's hour, and $140 to $175 per paralegal's hour."). This District has generally approved comparable hourly rates for attorneys with similar experience to counsel in this case. *See, Guallpa v. N.Y. Pro Signs Inc.*, 11 Civ. 3133 LGS FM, 2014 WL 2200393, *10 (S.D.N.Y. May 27, 2014) ($600 for a partner who graduated from law school in 1995;[24] $350 for an associate who graduated from law school in 2006); *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 225 (S.D.N.Y. 2011) (awarding $625 per hour for an experienced civil rights attorney based on evidence that the rate was "well within the range of hourly rates for attorneys in civil rights cases in the Southern District and Washington, D.C., area"); *Viafara v. MCIZ Corp.*, 12 Civ. 7452 RLE, 2014 WL 1777438, *14 (S.D.N.Y. May 1, 2014) ($550 for partner, $350 for an associate, $175 for a first year associate); *Asare v. Change Group of New York, Inc.*, 12 Civ. 3371 CM, 2013 WL 6144764, *19 (S.D.N.Y. Nov. 18, 2013) (finding that counsel's rates were reasonable; the rates included $750 per hour for partner time, $500 per hour for senior associate time, and $300 per hour for associate time). Counsel's rates have also historically been consonant with SDNY rates then applicable. *See e.g. Scott v. City of New York*, 643 F.3d 56, 59 (2d Cir. 2011) ($550 per hour rate in FLSA case to be reasonable); *Velez v. Novartis Pharm. Corp.*, 04 Civ. 09194, 2010 WL 4877852, *22 (S.D.N.Y. Nov. 30, 2010) (accepting hourly rates of $400 to $750 per hour for lodestar crosscheck and noting that the rates were "below the rates charged by firms of [its] caliber (principally defense firms) that litigate

---

[24] Mr. Getman graduated law school in 1984.

frequently in th[e] [Southern] District"); *Rozell v. Ross-Holst*, 576 F.Supp.2d 527, 546 (S.D.N.Y. 2008) (awarding $600 per hour for partner and of counsel and between $250 and $350 for associates in an employment discrimination case). (Plaintiffs are also quite confident that the billing rates it charges are far lower than the billing rates Wilkie Farr charged Bloomberg for its work in the case.[25]

Courts in this District also regularly approve non-attorney rates comparable to Getman & Sweeney's. Paralegal rates of $150 an hour and more are common in this District. *Demonchaux v. Unitedhealthcare Oxford*, 10 Civ. 4491 DAB, 2014 WL 1273772 (S.D.N.Y. 2014) ($175.00 and $200.00 per hour for paralegal services were reasonable); *Asare v. Change Group of New York, Inc.*, 12 Civ. 3371 CM, 2013 WL 6144764, *19 (S.D.N.Y. Nov. 18, 2013) ($150 per hour for paralegal/staff time reasonable); *Allende v. Unitech Design, Inc.*, 783 F.Supp.2d 509, 515 (S.D.N.Y. 2011) (awarding paralegal rates of $150); *N.Y.C. Dist. Council of Carpenters Pension Fund v. Quantum Constr.*, 06 Civ. 13150, 2008 WL 5159777, *13 (S.D.N.Y. Dec. 9, 2008) (awarding $150 per hour for paralegals in an ERISA default judgment case and noting that the rates awarded were "commensurate with those generally charged for similar work in this district"); *N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F.Supp.2d 410, 424 (S.D.N.Y. 2009) (awarding $150 per hour for paralegals).

Courts also recognize that higher rates are reasonable for specialized functions, particularly in the information technology. *See National Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG*, 04 Civ. 2983 (DLC)(KNF), 2006 WL 5804603, *6 (S.D.N.Y. Dec. 11, 2006) (awarding in 2006 rate of $200 for paralegals with specialized knowledge). Finally, a

---

[25] Upon information and belief, Wilkie's hourly rates are far in excess of what G&S bills here. Further, Plaintiffs' offer to resolve this petition for the amount Wilkie billed, without even knowing that amount was refused. Bloomberg also expended significant funds in many ways far in excess of what G&S did. For example, Bloomberg insisted on taking video depositions, using real-time transcription and routinely ordering same-day transcripts, while Plaintiffs took traditional depositions and waited to receive them.

clerical rate of $85 is appropriate for work not requiring paralegal skills. *See, e.g., Saunders v. City of New York, Inc.*, 07 Civ. 830(SAS), 2009 WL 4729948 (S.D.N.Y. Dec. 9, 2009) (adjusting paralegal rates to $75 per hour for clerical work); *Am. Civ. Liberties Union of Florida, Inc. v. Dixie County Fla.,* 1:07 Civ. 18-MP-GRJ, 2012 WL 1004372, *2 (N.D.Fla. March 23, 2012) (finding that $75 per hour is appropriate for clerical work); *Branson v. Harrah's Tunica Corp.*, 2:08 Civ. 02804-BBD, 2011 WL 3678428, *2 (W.D.Tenn. April 19, 2011) report and recommendation adopted, 2:08 Civ. 02804-BBD, 2011 WL 4499323 (W.D.Tenn. 2011) (same).

### C. Plaintiffs' Time Was Reasonable and Efficient.

In contingent fee litigation, plaintiffs' counsel has a strong incentive to achieve the maximum impact without overworking a case. In support of this motion, Plaintiffs' counsel has submitted detailed and accurate time records. The time records were made contemporaneously. They are kept in the preferred one-tenth of an hour increments. *See MZH, AG v. State Indus.-Trade Unitary Enter. "Belyaya Russ",* 03 CIV 3774, 2003 WL 22852895, at *1 (S.D.N.Y., Nov. 10, 2003) (stating that tenth-of-an-hour increments are the preferred method of timekeeping). The firm does not engage in block billing of multiple tasks. In reviewing these records, the Court should keep in mind that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983)

The time records show that Plaintiffs' counsel was appropriately divided among G&S staff, with tasks being delegated to the lowest-billing professional who could perform the task well whenever possible. This resulted in 572.9 hours of work being performed by associate attorneys, 309.4 being performed by paralegals, 196.7 being performed by information technology ("IT") staff, and 282.3 being performed by partners/senior attorneys. The ESI

22

discovery in this case, the technological nature of Plaintiffs' job, as well as the computer exemption issue, required G&S's IT staff to perform many hours of work and to be involved in most facets of the case.

Most of the hours billed are attributable to 1) discovery, including meeting and conferring on disputes, filing discovery related motions, obtaining discovery from Plaintiffs, and preparing for, taking and defending depositions (approximately 28%); 2) Plaintiffs' motion for summary judgment (approximately 27%) and 3) settlement (approximately 13%).  Bloomberg's conduct regarding discovery caused Plaintiffs' counsel to do a lot of preventable work. For example, Bloomberg's insistence on litigating the exemptions issue, rather than conceding it as they did in the *De Oca* case and the DOL audit, required Plaintiffs' counsel to obtain, review and analyze the thousands of "tickets" that described each troubleshooting and fixing job Plaintiffs performed. Bloomberg also demanded that Plaintiffs engage in extensive ESI discovery of their personal email accounts, personal computers and social media accounts, which necessitated the time-consuming process of accessing and searching multiple devices, multiple email accounts and multiple social media accounts for each Plaintiff, and which ultimately yielded nothing of relevance. Bloomberg also took many unjustified positions regarding discovery, particularly in the areas of electronically stored information ("ESI") discovery and discovery on Bloomberg's good faith and willfulness defenses, forcing the parties had to hold numerous and lengthy meet and confers and requiring Plaintiffs to file various motions with the Court for relief, before Bloomberg ultimately abandoned those defenses. *See, e.g.*, Docs. 52, 59, 63. Plaintiffs' counsel should not be penalized for Bloomberg's conduct – undoubtedly Bloomberg was billed for this work by its own counsel.

Approximately 27% of counsel's fees is attributable to the summary judgment motion. While this is a large percentage of the fees, it was a very complex motion presenting very fact specific issues, as is evidenced by the 19-page Rule 56.1 statement (Doc. 84) and the 30 exhibits in support of the motion. Not unreasonably, Plaintiffs' counsel revised the motion many times before filing it. *See In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1296, 1306 (E.D.N.Y.1985), *aff'd in relevant* part, 818 F.2d 226 (2d Cir.1987). ("Like any creative artist, the good litigator may pursue many blind alleys and revise many drafts before producing the convincing brief or argument. In the end, close scrutiny of the [hours claimed] may ameliorate but cannot eliminate the problem of unnecessary work."). In the end, Plaintiffs' extensive work on the motion paid off, as Plaintiffs' motion for summary judgment was granted on the most important issue of the case, the exemptions issue. Once that issue was resolved, Plaintiffs effectively won the case.

While some of the work G&S has billed for is non-legal (such as travel), Plaintiffs' counsel is entitled to be compensated for these tasks. *Tran v. Tran*, 166 F. Supp. 2d 793, 804 (S.D.N.Y. 2001) ("In addition, it is not unreasonable for attorneys to be compensated for some non-legal tasks, including travel time and basic office work.") *See also Mister Sprout, Inc. v. Williams Farms Produce Sales, Inc.,* No. 10 Civ. 6036(RMB)(JCF), 2012 WL 3031471, at *7 (S.D.N.Y. July 25, 2012) ("it is within a district court's discretion to compensate travel time at the full hourly rate …."); *Teen Model v. Blood is the New Black*, No. 11 CIV. 05766 GBD DF, 2012 WL 5838185, at *4 (S.D.N.Y. Oct. 26, 2012)(compensating travel at regular hourly rate); *See Sulkowska v. City of New York*, 170 F.Supp.2d 359, 369 (S.D.N.Y.2001) ("Given that

24

plaintiff hired a firm located outside of Manhattan, it would be reasonable to expect the firm to bill plaintiff for lawyers' travel to and from the city.").[26]

Additionally, in an exercise of billing judgment, G&S did not bill all of the time expended on this case. For example, Dan Getman had only 382 time entries regarding the drafting, sending or reviewing of emails, yet there were approximately 1840 emails generated in the case. Further, Plaintiffs' counsel is willing to reduce its fees by a full 10% to account for any claimed inefficiency or billing error that might be found upon review. (In the event the Defendant challenges the entries beyond 10%, Plaintiffs are not offering this 10% as a gratis reduction to be taken as a baseline to which further reduction is to be taken). The discount of a 10% reduction amounts to a reduction of $44,157.45 from billable hours actually expended. Thus, with the reduction, Plaintiffs seek a total of $397,417.05 in fees.

### D.  The Denial of Rule 23 Class Certification Based on Numerosity and the Denial of Summary Judgment on the FWW Does Not Warrant a Reduction of the Requested Fees

While Plaintiffs' motion for a Rule 23 class was denied on the basis of numerosity, this is no reason to reduce the requested fees. Here, the putative class of Service Desk Representatives numbered 33. Courts do not have a bright line rule for numerosity. Generally, courts will find that the numerosity requirement has been satisfied when the class compromises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer, leaving a grey discretionary area in the middle. *Novella v. Westchester Cnty.*, 443 F. Supp. 2d

---

[26] While Courts in the SDNY do on occasion reduce travel time entries by half, doing so unfairly penalizes succesful plaintiffs' firms and benefits the defendant acting unlawfully, as there is no evidence that any private firms in NYC reduce their travel billings by half when attorneys must travel for the case. "[C]ounsel for prevailing parties should be paid, as is traditional with attorneys compensated by fee-paying clients, <u>for all time reasonably expended on a matter.</u>" *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983)(emph. added*); Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 738 (1987)("the public would be best served by the award of fees similar to what "is traditional with attorneys compensated by a fee-paying client.").

540, 546 (S.D.N.Y. 2006), *vacated on other grounds*, 661 F.3d 128 (2d Cir. 2011), *citing Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998). Courts in this district have certified classes of 33 or fewer. *See, e.g.*, *Duarte v. Tri-State Physical Med. & Rehab., P.C.*, 11 Civ. 3765 NRB, 2012 WL 2847741 (S.D.N.Y. July 11, 2012); *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y 2005). Thus, Plaintiffs' motion for a Rule 23 class was neither frivolous nor imprudent.

Indeed, the FLSA's goal is to see that ALL covered employees are paid overtime for overtime work, *Barrentine v. Arkansas Best Freight System, Inc.*, 450 U.S. 728, 739 (1981) ("The principal congressional purpose in enacting the FLSA was to protect <u>all</u> covered workers from substandard wages and oppressive working hours…".). Without a class, Bloomberg has avoided most of the liability it has to its Service Desk Representatives for overtime it well knows it was required to pay. Plaintiffs' counsel's duty of zealous representation required it to move for certification to benefit as many employees as possible, regardless of not meeting the 40 member class threshold. Plaintiffs' counsel should not be penalized for making a reasonable and commendable motion that was ultimately unsuccessful based on a single arguable factor.

Furthermore, most of Plaintiffs' counsel's work on the motion for Rule 23 class certification is also attributable to Plaintiffs' successful motion for collective action certification pursuant to the FLSA. Plaintiffs' counsel's investigation of the facts to support the Rule 23 class motion regarding the typicality and commonality of the putative class's claims also supported the FLSA collective action motion regarding whether putative collective action members were "similarly situated." Plaintiffs moved for Rule 23 class certification and FLSA collective action certification in the same motion, so the drafting of common sections, like the facts of the case, could be ascribed to both claims. *See Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994)

("So long as the plaintiff's unsuccessful claims are not wholly unrelated to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount."); *Heng Chan v. Sung Yue Tung Corp.*, No. 03 CIV. 6048 (GEL), 2007 WL 1373118, at *6 (S.D.N.Y. May 8, 2007), *quoting Hensley,* 461 U.S. at 435. ("Where 'the plaintiff's claims for relief ... involve a common core of facts or [are] based on related legal theories,' it is 'difficult to divide the hours expended on a claim-by-claim basis,' and 'the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."); *Grochowski v. Ajet Const. Corp.*, No. 97 CIV. 6269 (NRB), 2002 WL 465272, at *2 (citations omitted) (S.D.N.Y. Mar. 27, 2002) ("if the plaintiff won substantial relief, and all of his claims for relief 'involve[d] a common core of facts' or were 'based on related legal theories,' so that '[m]uch of counsel's time w[as] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis,' there should be a fee award for all time reasonably expended.").

While Plaintiffs' motion for a Rule 23 class was denied, their motion for a FLSA collective action was granted. Thus ultimately, all individual class members were given the chance to join this case. That many did not join out of fear of retaliation or of jeopardizing their future employment, should not count against Plaintiffs' counsel's fee. Accordingly, Plaintiffs' counsel should be awarded the requested fees.

Similarly, the denial of summary judgment on the FWW issue does not justify a reduction in Plaintiffs' counsel's fees. The FWW issue is a highly contested and very fact specific one, and this Court has come down on both sides of the issue. *Compare Kadden v. VisuaLex, LLC*, 910 F.Supp.2d 523, 542 (S.D.N.Y. 2012) (requiring the time and a half method) *with Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 263 (S.D.N.Y. 2013) (allowing FWW

27

method). While judgment was not granted, G&S was ultimately able to settle largely using the time and a half method of calculating damages because of the strong showing on the motion that we would prevail on the issue at trial.

**E.   Bloomberg's Litigation Strategy Made This Case Inordinately Expensive to Litigate**

In January 2014, when Your Honor first attempted to obtain a settlement, G&S's fees were approximately $90,529.50. In April 2014, G&S's fees were approximately $117,478.50. By settling this case only after discovery was complete and summary judgment obtained against it, Bloomberg made a strategic decision to litigate fully, well knowing it would have to pay its own attorneys and also Plaintiffs' counsel. Why it made that strategic decision is entirely unfathomable, particularly in light of its admission to DOL that overtime was due to SDRs.[27]

This case was also made more complex by Bloomberg's failure to record all the hours that Plaintiffs worked, as was required by law. 29 C.F.R. §516.2. This failure required Plaintiffs' counsel to obtain, review and analyze extensive amounts of data, including remote logins to the Bloomberg network and other electronic timestamps, in order to accurately estimate Plaintiffs' actual work hours. Bloomberg also asserted defenses it knew would take vast time to litigate. For example, Bloomberg initially asserted that it failure to pay Plaintiffs overtime was in good faith and that its violation of the FLSA was not willful. This required Plaintiffs to investigate what Bloomberg knew regarding the FLSA, what legal advice it received, what steps it took to ensure it was in compliance with the law, etc. Bloomberg only dropped this issue once the parties were nearing trial. Bloomberg's assertion that Plaintiffs were exempt from the overtime provisions of the FLSA based on their job duties, even though it admitted to the DOL that SDRs were not

---

[27] Bloomberg may have resisted early resolution of this case because it is facing several other class actions involving the same counsel and similar legal issues, and it may not have wanted to set a "precedent."

exempt, and even though Bloomberg did not litigate this issue for any of the 29 job titles in the *De Oca* case, remains incomprehensible. This position required Plaintiffs' counsel to obtain, review and analyze the thousands of "tickets" that described each troubleshooting and fixing job Plaintiffs performed, and to file a lengthy and complex motion for summary judgment on which Plaintiffs prevailed.

Bloomberg also took many burden-inducing positions regarding discovery, particularly in the areas of electronically stored information ("ESI") discovery and discovery on Bloomberg's good faith and willfulness defenses, forcing the parties had to hold numerous and lengthy meet and confers and requiring Plaintiffs to file various motions with the Court for relief. *See, e.g.*, Docs. 52, 59, 63. Bloomberg also designated all documents it produced in discovery as confidential. This required the parties to engage in a time-consuming meet and confer process prior to Plaintiffs filing anything with the Court to determine which of Bloomberg's documents were being filed and which of these documents Bloomberg was willing to de-designate. If any documents remained confidential, Plaintiffs' filing had to be done under seal, which is in itself a time-consuming process. *See* Doc. 72. Bloomberg also demanded that Plaintiffs engage in extensive ESI discovery of their personal email accounts, personal computers and social media accounts, which Plaintiffs' counsel argued were very unlikely to contain anything relevant to the case, and eventually did not yield anything relevant to the case. This required Plaintiffs' counsel to access and search multiple devices, multiple email accounts and multiple social media accounts for each Plaintiff, which was a complex and time-consuming process.

In early settlement discussions, Bloomberg also sought to require Plaintiff Siegel to negotiate a concurrent New Jersey state court discrimination case alongside their FLSA and NYLL claims. Had Plaintiffs not resisted this effort, Bloomberg would have added further

29

complexity to the discussions, requiring the involvement of other counsel and claims, and forcing Plaintiffs and their counsel to bargain against one another, thereby dooming settlement.

Most of the time Plaintiffs' counsel spent litigating this case was in response to tactics and positions taken by Bloomberg. As the Second Circuit noted in *Kassim v. City of Schenectady*, "an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel and of the court. If the attorney is compelled to defend against frivolous motions and to make motions to compel compliance with routine discovery demands, or to respond to unreasonable demands of the court for briefing or for wasteful, time-consuming court appearances, the hours required to litigate even a simple matter can expand enormously." 415 F.3d 246, 252 (2d Cir. 2005). G&S's requested fees should be awarded in full.

In contingency fee cases such as this one, plaintiffs' counsel is motivated to balance litigating the case as efficiently as possible with litigating the case as effectively as possible. As the Ninth Circuit has explained:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *see also*, *Mohr v. Chicago Sch. Reform Bd. of Trs.*, 194 F. Supp. 2d 786, 789 (N.D. Ill. 2002) ("If the winning counsel had taken less time, he might not be in a position to ask for attorneys' fees as the prevailing party's representative"). As this Court has similarly recognized:

> Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever." *deMunecas*, 2010 WL 3322580, at *9 (internal quotation marks

30

omitted). Here, Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation, and is therefore entitled to an attorneys' fee award that is approximately 1.06 their lodestar amount in this case.

*Campos v. Goode*, No. 10 CIV. 0224 DF, 2011 WL 9530385, at *7 (S.D.N.Y. Mar. 4, 2011)

(Freeman, M.J.); *see also In re Dreyfus Aggressive Growth Mut. Fund Litigation*, 98 CIV 4318,

2001 WL 709262, *6 (S.D.N.Y. June 22, 2001) ("Contingency risk is the principal, though not

exclusive, factor courts should consider in their determination of attorneys' fees."). Because

Plaintiffs' counsel took on a significant risk in bringing this case, and was able to efficiently and

successfully achieve significant results for Plaintiffs against a much more heavily-resourced

adversary, the requested fees should be awarded.

VI.   **Bloomberg Could Have Avoided Paying Plaintiffs' Counsel's Fees By Paying Plaintiffs in Accordance With the Law Or Admitting Its Violation Earlier.**

As early as the early 2000s, Bloomberg had to know it was in violation of the FLSA. It

had not paid any of its regular employees overtime since its inception, even though it had

performed numerous internal investigations regarding its pay practices. It certainly knew it was

in violation of the FLSA when the DOL began its investigation in 2011 and it admitted as much

to DOL in a self-audit that proposed to pay SDRs overtime. Still, Bloomberg did not begin

paying overtime to its employees until 2013.

Instead of doing the right and legal thing, Bloomberg violated the law for years, saving

itself unfathomable amounts of money. It has also saved itself money at the expense of the

remaining Service Desk Representatives by avoiding certification of a Rule 23 class. The

average recovery for the three Plaintiffs here was ███████ Thus, by avoiding paying the

remaining 30 Representatives, Bloomberg saved approximately ███████ at their expense.

Bloomberg should not be heard to complain about having to pay Plaintiffs' counsel's fees to do

so. Attorneys' fees are part of the deterrent effect the FLSA was designed to induce.

31

VII.     **Class Counsel is Entitled to Reimbursement of Reasonable Litigation Costs**

It is well-settled in this Circuit that "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). *See also Kuzma v. Internal Revenue Service*, 821 F.2d 930, 933-34 (2d Cir.1987) ("Identifiable out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable...and are often distinguished from non-recoverable routine office overhead, which must be absorbed within the attorney's hourly rate."). Likewise, "expenses relating to travel, including transportation and meals, are routinely recoverable." *Reiseck v. Universal Commc'ns of Miami, Inc.*, No. 06 CIV. 0777 LGS JCF, 2014 WL 5374684, at *8 (S.D.N.Y. Sept. 5, 2014)(also allowing recovery of electronic research costs). Thus, courts typically allow counsel to recover their out-of-pocket expenses including filing fees, process service fees, court reporter fees, mediation fees, translator fees, videographer fees, postage and photocopies, that are reasonable and were incidental and necessary to the representation of the Class. *Siler v. Landry's Seafood H. - N. Carolina, Inc.,* 13 Civ. 587 RLE, 2014 WL 2945796, *11 (S.D.N.Y. June 30, 2014) (awarding reimbursement of costs including filing fees, court reporting, postage, photocopies, and electronic research).

The full set of invoices and documentation for various costs is set forth in Exhibit 3 to the Getman Declaration. Plaintiffs' Counsel expended $15,953.63 in litigation costs to bring the case to conclusion. Getman Dec. ¶ 54. All costs expended are recoverable under the FLSA.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court award them attorneys' fees in the amount $397,417.05 (plus any addition to the lodestar required to prepare a reply and argue the motion), and reimbursement of expenses in the amount of $15,953.63.

32

Dated:  May 15, 2015                    Respectfully submitted,


                                        By: */s/ Dan Getman* _
                                        Dan Getman
                                        Lesley Tse
                                        Artemio Guerra
                                        Getman & Sweeney PLLC
                                        9 Paradies Lane
                                        New Paltz, NY 12561
                                        Telephone: (845) 255-9370
                                        dgetman@getmansweeney.com

                                        *Plaintiffs' Counsel*