UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
                                     :

LEE SIEGEL, on behalf of himself and PHILIP
HARRIS, JORGE OLIVEROS,           :

             Plaintiffs,      :       Case No. 13-CV-1351 (DCF)

           -against-      :

BLOOMBERG L.P.,              :

            Defendant.     :

                                       :

---------------------------------------------------------- x

**BLOOMBERG L.P.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR APPROVAL OF COUNSEL'S FEES AND COSTS**

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019

*Attorneys for Defendant Bloomberg L.P.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ....................................................................................... 2

I.   Phase 1:  Plaintiffs Bring Suit, Lose Class Certification, and Rebuff Settlement (270 hours) ................................................................................................................... 2

    A.   G&S Files Its Second Putative Class Action Against Bloomberg ............... 2

    B.   Plaintiff Files And Loses His Motion For Class Certification .................... 3

    C.   Court-Ordered Settlement Talks Prove Unsuccessful When Plaintiffs Refuse To Negotiate. ................................................................................. 3

II.  Phase 2:  Plaintiffs Require Excessive Discovery, Lose Key Issues On Summary Judgment And Finally Agree To Settle.  (979.2 hours) ...................................... 5

    A.   The Parties Engage in Discovery and Bloomberg Undertakes A Significant Document Review In Response ................................................ 5

    B.   Plaintiffs Take Several Losing Discovery Disputes To The Court ............. 6

    C.   Plaintiffs Move For Summary Judgment On Three Issues And Lose On Two. ........................................................................................................... 7

    D.   The Court Holds A Successful In-Person Mediation ................................. 7

III. Phase 3:  Even After Agreeing To Settle, G&S Continues To Overbill.  (112.1 hours) ..... 8

ARGUMENT ............................................................................................................. 9

I.   G&S's Requested Fees Are Unreasonable And The "Lodestar" Should Be Reduced Significantly. ...................................................................................................... 10

    A.   G&S's Hourly Rates Are Unreasonable For This Case. ........................... 10

        1.   G&S's Hourly Rates Far Exceed The Prevailing Rates In This District For Work On A Straightforward Wage-and-Hour Case ................................................................................... 11

        2.   Rates Previously Obtained By G&S Are Inapplicable Here. ........ 14

    B.   G&S's 1361 Hours Are Excessive, Redundant, And Unnecessary. .......... 16

i

1. G&S Billed 270 Hours Before Discovery Commenced (January 8, 2013–February 3, 2014) ...............................................17

2. G&S Spent 979.2 Hours And Billed $318,424.50 On Settlement Negotiations, Discovery, And A Largely Unsuccessful Summary Judgment Motion (February 4, 2014–February 17, 2015) ...........................................................18

    a. G&S Spent Excessive Hours Pursuing Scorched-Earth Discovery Tactics With No Material Benefit To Its Clients .................................................................................19

    b. G&S Spent Excessive Hours On Plaintiffs' Summary Judgment Motion And Lost On Two Of The Three Issues. ...........................................................21

    c. G&S Overbilled In Many Areas And Failed To Exercise Billing Judgment As Required By Hensley. ........................................................................21

3. G&S Spent An Additional 112.1 Hours And Billed $40,354.50 After Settlement (February 18, 2015–May 15, 2015) ........................................................................25

II. G&S's Fees Should Be Further Reduced Because Plaintiffs Obtained Only A Limited Degree of Success. ...............................................................................27

    A. After Losing Class Certification, Plaintiffs Recovered Only a Fraction Of What Siegel Set Out To Obtain. ...........................................................28

    B. G&S's Strategy To Litigate Rather Than Settle After Failing To Obtain Class Certification Did Not Add Value To Plaintiffs' Case. .....................29

    C. Plaintiffs Did Not Benefit From Their Summary Judgment Motion. .........30

    D. G&S Did Not Obtain The "Extraordinary" Result It Claims. ...................31

CONCLUSION ...............................................................................32

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                 <u>Page(s)</u>

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany,*
  493 F.3d 110 (2d Cir. 2007)..................................................................9, 10, 21

*Asare v. Change Group of N.Y.,*
  No. 12 Civ. 3371 (CM), 2013 BL 417632 (S.D.N.Y. Nov. 15, 2013) .............................13

*Ayers v. SGS Control Services,*
  No. 03 Civ. 9078 (RMB), 2008 BL 383303 (S.D.N.Y. Sept. 8, 2008) .............................15

*Barbour v. City of White Plains,*
  788 F. Supp. 2d 216 (S.D.N.Y. 2011)............................................................13

*Barfield v. N.Y.C. Health & Hosps. Corp.,*
  537 F.3d 132 (2d Cir. 2008)............................................10, 23, 27, 28, 30, 31

*Brown v. Mustang Sally's Spirits & Grill, Inc.,*
  No. 12-CV-529S, 2013 BL 253002 (W.D.N.Y. Sept. 18, 2013).................................15, 24

*Brumley v. Camin Cargo Control, Inc.,*
  No. 08-cv-01798 (JLL), 2012 BL 72017 (D.N.J. Mar. 26, 2012) .......................................15

*Chambless v. Masters, Mates & Pilots Pension Plan,*
  885 F.2d 1053 (2d Cir. 1989)....................................................................14

*Chen v. Jin Holding Group Inc.,*
  No. 10-cv-0414 (PAC), 2012 BL 26468 (S.D.N.Y. Jan. 31, 2012).................9, 19, 20, 29

*Cho v. Koam Med. Servs. P.C.,*
  524 F. Supp. 2d 202, 206 (E.D.N.Y. 2007) ....................................12, 16, 22, 23

*Clark v. Ecolab, Inc.,*
  No. 07 Civ. 8623 (PAC), 2010 BL 108460 (S.D.N.Y. May 11, 2010) ......................12, 15

*Clark v. N.Y.C. Healthy & Hosps.,*
  No. 10 Civ. 8046 (SAS), 2011 BL 33813 (S.D.N.Y. Aug. 24, 2011) .............................17

*Custodio v. Am. Chain Link & Constr., Inc.,*
  No. 06 Civ. 7148 (GBD)(HBP), 2011 BL 397124 (S.D.N.Y. May 17, 2011) .................31

*Custodio v. Am. Chain Link & Constr., Inc.,*
  No. 06 Civ. 7148 (GBD)(HBP), 2014 BL 12118 (S.D.N.Y. Jan. 13, 2014) ....................11

*Francois v. Mazer,*
  No. 09-cv-3275(KBF), 2012 BL 448171 (S.D.N.Y. Aug. 6, 2012) .................................17

*Fujiwara v. Sushi Yasuda LTD.*,
 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014) ....................................................................14

*Gulino v. Symbol Techs., Inc*,
 No. 06-CV-2810 (JG), 2008 BL 243994 (E.D.N.Y. Oct. 28, 2008)................................15

*Gunawan v. Sake Sushi Rest.*,
 897 F.Supp.2d 76 (E.D.N.Y. 2012) ............................................................................30

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983) ..............................................................................9, 18, 19, 27

*K.L. v. Warwick Valley Cent. Sch. Dist.*,
 No. 12 Civ. 6313 (DLC), 2013 BL 237530 (S.D.N.Y. Sept. 05, 2013) .................9, 11, 14

*Kadden v. VisuaLex*,
 No. 11 Civ. 4892 (SAS), 2012 BL 343407 (S.D.N.Y. Dec. 6, 2012).........................12, 25

*Kahlil v. Original Old Homestead Rest.*,
 657 F. Supp. 2d 470 (S.D.N.Y. 2009).....................................................................14, 24

*Kirsch v. Fleet St., Ltd.*,
 148 F.3d 149 (2d Cir. 1998)........................................................................................23

*Marchuk v. Faruqi & Faruqi, LLP*,
 No. 13-cv-1669 (AKH), 2015 BL 111884 (S.D.N.Y. Apr. 20, 2015) ........................1, 20

*Mugavero v. Arms Acres, Inc.*,
 No. 03 Civ. 5724 (PGG), 2010 BL 27331 (S.D.N.Y. Feb. 9, 2010)................................25

*Murphy v. N. Dutchess*,
 No. 11-cv-05661 (S.D.N.Y. Aug. 15, 2014), ECF No. 101.........................................14, 16

*Okyere v. Palisades Collection, LLC*,
 300 F.R.D. 149 (S.D.N.Y. 2014) .................................................................................14

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*,
 No. 08 Civ. 442 (TPG)(FM), 2013 BL 287106 (S.D.N.Y. July 2, 2013) .........................17

*Rosendo v. Everbrighten, Inc.*,
 No. 13cv7256 (JGK)(FM), 2015 BL 108247 (S.D.N.Y. Apr. 7, 2015)......................11, 13

*Salazar-Martinez v. Fowler Brothers*,
 No. 10-CV-6257, 2012 BL 237949 (W.D.N.Y. Sept. 14, 2012) ......................................15

*Scott v. City of New York*,
 No. 02 Civ. 9530 (SAS), 2009 BL 291530 (S.D.N.Y. Aug. 25, 2009) ............................31

*Serin v. N. Leasing Sys.*,
   No. 06-CV-1625, 2011 BL 441220 (S.D.N.Y. Apr. 19, 2011)...........................................26

*Velez v. Novartis Pharm. Corp.*,
   No. 04 Civ. 09194 (CM), 2010 BL 282185 (S.D.N.Y. Nov. 30, 2010) ...........................13

*Viafara v. MCIZ Corp.*,
   No. 12-cv-07452 (RLE), 2014 BL 121948 (S.D.N.Y. May 01, 2014) .............................12

*Watkins v. Smith*,
   No. 12 CV 4635, 2015 BL 29664 (S.D.N.Y. Feb. 5, 2015) ...............................................10

*White v. W. Beef Props., Inc.*,
   No. 07-cv-2345, 2014 BL 311124 (E.D.N.Y. Sept. 30, 2014) ....................................10, 29

*Wong v. Hunda Glass Corp.*,
   No. 09 Civ. 4402 (RLE), 2010 BL 202572 (S.D.N.Y. Sept. 1, 2010) .............................23

*Yan v. 520 Asian Rest. Corp.*,
   No. 13-CV-2417 (KNF), 2015 BL 62305 (S.D.N.Y. Mar. 9, 2015) ................................23

*Young v. Cooper Cameron Corp.*,
   No. 04-cv-5968 (SC)(GWG),
   2009 BL 353803 (S.D.N.Y. Mar. 18, 2009) ...............................................14, 16, 22, 25, 29

*Yuqilema v. Manhattan's Hero Corp.*,
   No. 13-CV-461 (WHP)(JLC), 2014 BL 410927 (S.D.N.Y. Aug. 26, 2014) ....................12

## PRELIMINARY STATEMENT

Plaintiffs' counsel's request for almost half a million dollars in attorneys' fees and costs for this straightforward, three-plaintiff wage-and-hour case is patently unreasonable and should be reduced significantly.  Their claim that the "*whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to plaintiffs' recovery*" is not only wrong, it reveals the wastefulness and cynicism with which Plaintiffs' counsel approached this case.  Br. 15–16.[1]  The "whole purpose" of the FLSA's fee-shifting provision is to ensure that plaintiffs have adequate representation to make their claims, not to provide a blank check for their counsel to generate disproportionate fees.  Fee-shifting statutes are "not a license to expend limitless resources on litigation simply because the defendant foots the bill."  *Marchuk v. Faruqi & Faruqi, LLP*, No. 13-cv-1669 (AKH), 2015 BL 111884, at *5 (S.D.N.Y. Apr. 20, 2015).

Plaintiffs overlitigated this case from start to finish.  After unreasonably walking away from Court-ordered settlement negotiations in early 2014 following denial of Siegel's class certification motion, G&S billed almost 1000 more hours to litigate this case by a team of two partners, three associates, six paralegals, and one technology specialist.  Only after significant losses on summary judgment did Plaintiffs begin to acknowledge any risk to their position, which lead to a successful in-person mediation before this Court on February 17, 2015.  Even then, G&S managed to bill another $40,000 after agreeing to settle.

Contrary to Plaintiffs' claim that they achieved an "extraordinary result" with the settlement, they accomplished only a fraction of what they set out to achieve when this putative class action was filed.  After losing on Rule 23 class certification and attracting only two opt-in plaintiffs, G&S's original goal of recovering millions for a class of "more than fifty" was

---

[1]       "Br." refers to the Memorandum of Law in Support of Plaintiffs' Motion for Approval of Counsel's Fees and Costs.

impossible. Plaintiffs then staked their claim to recovering no less than 90% of their estimated damages but, after losing again on key issues at the summary judgment stage, that too, was out of reach. Only then, did Plaintiffs settle for a combined ███████, representing approximately ███ of their claimed damages, and ███████████ between the parties' 2014 settlement positions. Bloomberg has already paid its own lawyers to deal with Plaintiffs' losing litigation strategy, it shouldn't be forced to pay G&S a windfall for the same.

Bloomberg respectfully submits that the Court deny the amounts requested in Plaintiffs' motion for approval of counsel's fees and costs (the "Motion"), and award fees no greater than $116,395. As discussed below, that adjustment is appropriate to align the rates requested here with those customarily approved for plaintiffs' counsel in wage-and-hour cases in this district; eliminate fees attributable to excessive and unnecessary tasks; and reflect G&S's poor litigation choices and limited degree of success.

## STATEMENT OF FACTS

**I.     Phase 1:  Plaintiffs Bring Suit, Lose Class Certification, and Rebuff Settlement (270 hours)**

A.     <u>G&S Files Its Second Putative Class Action Against Bloomberg.</u>

On February 26, 2013, G&S filed this action on behalf of plaintiff Lee Siegel, seeking overtime payments under the FLSA and New York Labor Law ("NYLL") for a purported class of "more than 50" "PC support desk employees." Compl. ¶ 13. This was the second of four wage-and-hour lawsuits that G&S has brought against Bloomberg since June 2012. Br. 1–2. The 9-page complaint filed in this case was virtually identical to the complaint from the first-filed matter of *Enea v. Bloomberg*, No. 12-cv-4656 (GBD) (S.D.N.Y. 2012),

except for the job title and the number of overtime hours Siegel claimed that he and the purported class of plaintiffs worked. Hykal ¶ 20.[2]

Bloomberg answered the complaint on March 28, 2013. ECF No. 6. On April 15, 2013, G&S filed a First Amended Complaint ("FAC") with only two changes: it changed the purported class definition of the job of "Service Desk Representative" and added a request for injunctive relief. Hykal ¶ 21 Bloomberg answered the FAC on April 29, 2013. ECF No. 9.

B.    Plaintiff Files And Loses His Motion For Class Certification.

On May 20, 2013, without having taken any discovery, Siegel moved to certify a Rule 23 class and FLSA collective action (the "Class Certification Motion"). The briefing for motion was largely a cut-and-paste job, with virtually the same arguments G&S had presented in an earlier-filed motion in the *Enea* case. Hykal ¶ 22.

On August 16, 2013, the Court denied class certification because numerosity was lacking. ECF No. 26. The Court did, however, approve a FLSA collective action and authorized plaintiff to distribute notice. ECF No. 27. Of the "more than fifty" whom G&S set out to represent in this matter, only two joined the collective action. Those individuals, Jorge Oliveros and Philip Harris, joined the case as plaintiffs on February 14, 2014 to assert NYLL claims (Oliveros, Harris, and Siegel are hereinafter referred to together as "Plaintiffs"). ECF No. 42.

C.    Court-Ordered Settlement Talks Prove Unsuccessful When Plaintiffs Refuse To Negotiate.

After the FLSA opt-in period closed, Judge Cote referred the matter to this Court for settlement and the parties participated in a series of telephonic settlement conferences beginning in early 2014. Hykal ¶ 2. As of the second conference on January 28, 2014, Plaintiffs

---

[2]    "Hykal" refers to the Declaration of Deirdre N. Hykal in support of Bloomberg's Opposition to Plaintiffs' Motion for Approval of Counsel's Fees and Costs.

had not yet made any settlement demand.  Id. ¶ 3.  The Court advised the parties that Plaintiffs

should make a demand, and Bloomberg should make a counter-offer prior to the next settlement

conference, and further encouraged the parties to make meaningful progress towards settlement.

Id.

On February 3, 2014, Plaintiffs made their first settlement demand of

███████████  Hykal ¶ 4.  That sum included█████████(representing 90% of Plaintiffs' full

damages estimate), a $10,000 service award to Mr. Siegel, and $92,139 of attorneys' fees.[3]  Id.

At the February 4, 2014 settlement conference, the Court encouraged the parties

to work together towards settlement and instructed the parties to be mindful of attorneys fees.

Hykal ¶ 5.  For example, the Court recommended that only one attorney for each side attend the

conferences to avoid unnecessary costs in litigating the case.  Id.  Nevertheless, Plaintiffs

continued to have two attorneys attend every settlement conference (and just about every call,

conference, or event in this matter), Ex. 13,[4] wholly disregarding any notion of proportionality in

the investment of attorney time in matters.

In response to the settlement demand, Bloomberg made a monetary offer to each

of the Plaintiffs totaling█████████  Hykal ¶ 6.  At the next settlement conference on March 19,

2014, and at subsequent conferences, G&S mischaracterized Bloomberg's counter-offer as a

"zero offer" because it excluded attorneys' fees.  Id. ¶ 7.  Bloomberg explained that its offer

assumed liability and calculated damages for each individual Plaintiff using similar parameters

required by the U.S. Department of Labor ("DOL") when it supervised Bloomberg's backpay

---

[3]       The bills submitted in connection with this Motion reflect that G&S had already spent 270 hours on the case, incurring $85,098 in fees to draft the complaints and a losing motion for class certification using a template from *Enea*, issue a collective action notice, and generate a settlement demand.  Ex. 4.

[4]       "Ex." refers to the exhibits to the Declaration of Deirdre N. Hykal.

awards to other reclassified employees. Id. Counsel for Bloomberg confirmed that the offer did

not include a separate attorneys' fees amount and stated that G&S would not be entitled to

recover 100% of attorneys fees in light of its losing Rule 23 motion. Id. ¶ 8. The Court

encouraged the parties to engage in fulsome settlement discussions, and encouraged G&S to

provide Bloomberg with information to support its claim of attorneys fees. Id. G&S never did

so. Id. ¶ 10.

On April 3, 2014, the parties participated in another telephonic settlement

conference with the Court. Hykal ¶ 9. Bloomberg reported that it had provided Plaintiffs with

information regarding the extent to which Bloomberg's data would contradict their claims of

hours worked, and encouraged Plaintiffs to make a new settlement demand in response to

Bloomberg's opening offer. Id. They refused to do so. Id. ¶ 10.

At almost every turn, the Court encouraged the parties to settle in light of the low

dollar amount at stake as compared to the cost of litigating this action. Hykal ¶ 8. Bloomberg

also requested an in-person settlement conference to be attended by all parties; G&S resisted and

Plaintiffs refused to attend. Id. ¶ 9. Despite eleven telephonic conferences with the Court in

2014, Plaintiffs never budged from their initial demand or responded to Bloomberg's March

2014 offer. Id. ¶ 10. Instead, they pursued excessive discovery and a flawed summary judgment

motion – only to eventually settle ██████████████ of the parties' respective opening offers.

## II. Phase 2: Plaintiffs Require Excessive Discovery, Lose Key Issues On Summary Judgment And Finally Agree To Settle. (979 hours)

### A. The Parties Engage in Discovery and Bloomberg Undertakes A Significant Document Review In Response

Following the failed settlement discussions in early 2014, Plaintiffs expended an

unreasonable amount of time in connection with discovery in this action with seemingly no

purpose.

Plaintiffs served interrogatories and requests for the production of documents and also made a number of requests for production of data from Bloomberg, all of which were almost identical to their *Enea* requests.  Hykal ¶¶ 24, 25.  In response, Bloomberg produced over one million pages of documents and eight categories of data to Plaintiffs.  Hykal ¶¶ 26, 27.  Despite Plaintiffs' unreasonable demands and protracted negotiations over their document requests, with which Bloomberg complied at great expense, the documents played almost no role in the depositions Plaintiffs took or their summary judgment briefing, and Plaintiffs spent only 15 hours in total reviewing them.  Hykal ¶ 30; Ex. 10.

B.   Plaintiffs Take Several Losing Discovery Disputes To The Court.

G&S made excessive demands of Bloomberg while at the same time resisting any electronic productions from their own clients.  Hykal ¶ 28.  Counsel's common refrain in meet-and-confers with Bloomberg was that G&S would litigate any dispute because Bloomberg would ultimately have to pay their fees.  Hykal ¶ 29.  G&S's litigation strategy, untethered to the commercial realities of cost-benefit analyses that paying clients undertake, resulted in numerous disputes being litigated unnecessarily.

Plaintiffs sought Court intervention with regard to numerous discovery disputes, with scant success.  For example:

- Plaintiffs refused to appear for their twice-noticed depositions, insisting that they had "priority" to depose Bloomberg managers first.  Bloomberg had to obtain an order from Judge Cote compelling their appearance at depositions.  ECF No. 51.  However, when it came time to oppose Bloomberg's application to the Court, Plaintiffs conceded that they "do not automatically get priority," thereby wasting both parties' time with their posturing on this issue.  ECF No. 53.

- G&S wrote a letter on June 2, 2014 to Judge Cote seeking a conference to discuss (i) Bloomberg's supposed refusal to produce documents concerning its good faith and lack of willfulness defenses and (ii) Bloomberg's refusal to engage in ESI searches of shared drives and email accounts of nine managers and co-workers on the Service Desk, as well as HR representatives and in-

- 6 -

house counsel.  ECF No. 52.  The letter was entirely unnecessary because Bloomberg had (i) offered to withdraw its good faith and lack of willfulness defenses in an effort to compromise and narrow the scope of expensive, unnecessary discovery, and (ii) offered to search emails of eight custodians. ECF No. 54.  When the parties appeared before Judge Cote on June 4, the Court resolved almost every dispute in Bloomberg's favor: Judge Cote ordered Plaintiffs to appear for their depositions, ordered Bloomberg's ESI search terms proposal, denied Plaintiffs' request that Bloomberg search shared drives, and denied Plaintiffs' request that Bloomberg produce emails from co-workers on the Service Desk.

- Even after Judge Cote clearly conveyed at the June 4 conference that the parties should resolve discovery swiftly and efficiently, Plaintiffs went to the Court yet again on June 17 asking the Court to order that Bloomberg produce the results of its ESI searches by June 27.  ECF No. 59.  Once again, the hours spent on this manufactured discovery dispute were unnecessary—Bloomberg had already offered to start a rolling production on June 27, wrapping up production on July 3.  ECF No. 60.  And that is just what the Court ordered. ECF No. 61.

C.     Plaintiffs Move For Summary Judgment On Three Issues And Lose On Two.

On August 8, 2014, Plaintiffs moved for summary judgment on three issues: (1) that Plaintiffs were not exempt from overtime pay under the FLSA or NYLL; (2) that Plaintiffs' testimony regarding their hours worked must be credited; and (3) that the fluctuating work week ("FWW") method of calculating damages was improper.  ECF No. 83.  G&S attributes 27% of its total hours worked—367 hours—to Plaintiffs' largely unsuccessful summary judgment motion.  Br. 23.

On January 16, 2015, Judge Cote ruled on the motion, granting partial summary judgment only as to the issue of exemption.  ECF No. 100.  Judge Cote denied Plaintiffs' motion on the issues of hours worked and FWW.  Id.  The losses were particularly significant for Plaintiff because G&S had long-postured in settlement discussions that Plaintiffs had virtually no risk on the issues of hours worked or FWW, thereby refusing to negotiate for anything less than 90% of Plaintiffs' estimated damages.  Hykal Decl. ¶¶ 4, 10.

D.     The Court Holds A Successful In-Person Mediation.

Judge Cote's summary judgment ruling included an order directing the parties again to contact the Court for a settlement conference. ECF No. 101. On January 23, 2015, this Court held a telephonic conference and, over G&S's objection, ordered all parties to appear in person for a mediation on February 17, 2015. Hykal 12. Only after losing the key parts of its summary judgment motion and being ordered to participate in person did G&S show any willingness to negotiate a settlement of this matter. The mediation was successful and the parties agreed to a "judge's proposal" to settle the matter. Hykal ¶¶ 13, 14. Contrary to their recalcitrant position in 2014 requiring 90% of estimated damages (and 100% of unsubstantiated attorneys' fees), Plaintiffs settled for ▉▉▉▉ or just ▉▉▉▉ of their estimated damages. Hykal ¶¶ 4, 13. That number is also approximately ▉▉▉▉▉▉ between each of the original offers exchanged by G&S and Bloomberg a year earlier, when G&S refused to continue the negotiations. Hykal ¶ 13.

## III.  Phase 3:  Even After Agreeing To Settle, G&S Continues To Overbill.  (112 hours)

After the mediation, Bloomberg drafted and sent to G&S a standard settlement agreement. Hykal ¶ 15. In the three months after  the parties agreed to the settlement amount, G&S spent 112 hours and billed $40,304 on this matter. Ex. 4. This includes 30 hours finalizing and wrangling over the terms of the customary settlement agreement proposed by Bloomberg. Ex. 15. Plaintiffs objected to the confidentiality and release language in the agreement, although they ultimately agreed to those covenants. Hykal ¶ 15. And even though the parties had settled, G&S billed several hours for preparing a joint pre-trial order, rather than finalizing the settlement agreement. Ex. 14. In fact, G&S had threatened to "spend all week" drafting a pretrial order for which – lead counsel claimed – Bloomberg would have to foot the bill, if Bloomberg did not accede to one of Plaintiffs' unreasonable demands. Hykal ¶ 17. Bloomberg informed Plaintiffs that it would challenge any time wasted on the pretrial order. Id.

Finally, notwithstanding this Court's offer at the mediation to attempt to streamline any fee petition to avoid "fees on fees," Plaintiffs insisted on a full briefing schedule, Hykal ¶ 13, resulting in another 76.4 hours and $25,820 in requested fees.  Ex. 16.

## ARGUMENT

In evaluating a fee application, "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*, 493 F.3d 110, 112 (2d Cir. 2007).  No paying plaintiff would think it reasonable to pay his lawyers anything approaching the fees that G&S seeks to impose on Bloomberg.  In particular, the FLSA "does not contemplate a windfall recovery" for counsel. *Chen v. Jin Holding Grp. Inc.* No. 10-cv-0414 (PAC), 2012 BL 26468, at *1 (S.D.N.Y. Jan. 31, 2012).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Courts in the Second Circuit apply a two-step process to determine a fee award in FLSA cases.  First, a "presumptively reasonable fee" award is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation. *Arbor Hill*, 493 F 3d at 111-12.  At this stage of the inquiry, courts reduce requested fees for "excessive, redundant or otherwise unnecessary hours" as well as unreasonably high hourly rates charged. *K.L. v. Warwick Valley Cent. Sch. Dist.*, 12-cv- 6313, (DLC), 2013 BL 237530, *6, 10 (S.D.N.Y. Sept. 5, 2013).  Next, courts consider whether the presumptively reasonable fee award is reasonable in light of several factors, the most critical of which is the plaintiff's degree of success. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008).  "If a plaintiff's limited success warrants reducing a fee request, the court may, depending on the

circumstances, exclude specific hours or apply an across-the-board reduction." *White v. W. Beef Props., Inc.*, No. 07-cv-2345, 2014 BL 311124, at *5 (E.D.N.Y. Sept. 30, 2014).

District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case," *Barfield*, 537 F.3d at 151, and must "ensure that the attorney does not recoup fees that the market would not otherwise bear." *Arbor Hill*, 493 F.3d at 112. For the reasons discussed below, G&S's fees should be reduced from $441,574 to **$116,395** to reflect more appropriate hourly rates for this type of litigation in this district; a **35%** reduction in hours billed to account for excessive, redundant, and unnecessary time billed; and a **40%** reduction to reflect their limited degree of success obtained compared to what they set out to achieve. Ex. 3.

## I.   G&S's Requested Fees Are Unreasonable And The "Lodestar" Should Be Reduced Significantly.

### A.   G&S's Hourly Rates Are Unreasonable For This Case.

The requested hourly rates should be reduced because they greatly exceed (in some instances by 50%) the $250 to $450 per hour that courts deem reasonable in this jurisdiction for comparable cases. Indeed, in a case like this, fees at the lower end of that range would be warranted. As Judge Cote recently held, a rate of $450 per hour is the high end of the spectrum of what an attorney in a small firm would expect to receive for a civil case, but "[r]ates generally fall to the lower end of the spectrum, however, when the case presents only straightforward issues." *Watkins v. Smith*, No. 12 CV 4635, 2015 BL 29664, at *3-4 (S.D.N.Y. Feb. 5, 2015). Reducing G&S's requested hourly rates to conform to rates awarded in this district for straightforward wage-and-hour litigations like this one would result in a $143,125 decrease to the lodestar (Ex. 3):

| Name | Requested Hourly Rate | Year Began Litigating Wage-And-Hour Cases | Appropriate Hourly Rate |
|---|---|---|---|
| Dan Getman | $625 | 1989 | $400 |
| Michael Sweeney[5] | $505 | 2004 | $325 |
| Matt Dunn | $360 | 2007 | $275 |
| Lesley Tse | $325 | 2011 | $250 |
| Artemio Guerra | $275 | 2010 | $175 |
| Michael Russo | $220 | - | $150 |
| Six Paralegals | $150 | - | $90 |
| Clerical Work | $85 | - | $0 |

Applying the appropriate hourly rates above to G&S's bills results in a starting point of $298,449 from which further reductions should be applied for unreasonable hours and Plaintiffs' limited success. *See infra*, IB, II.

1. *G&S's Hourly Rates Far Exceed The Prevailing Rates In This District For Work On A Straightforward Wage-and-Hour Case.*

G&S's requested rates greatly exceed those normally awarded in the Southern District of New York in wage-and-hour cases. Because the FLSA and NYLL "are both straightforward statutes . . . attorneys in FLSA cases typically command hourly rates between $250 and $450 per hour, depending on their level of experience." *Rosendo v. Everbrighten, Inc.*, No. 13cv7256 (JGK)(FM),  2015 BL 108247, at *8 (S.D.N.Y. Apr. 7, 2015) (reducing hourly rates and cutting hours billed for litigation of wage-and-hour case). *See also Warwick Valley*, 2013 BL 237530 at *6 (hourly rate of $475 was unreasonable because it "far exceeds the prevailing rates for litigation of [the relevant] type in both the Southern and Northern District of New York); *Yuqilema v. Manhattan's Hero Corp.*, No. 13-CV-461 (WHP)(JLC), 2014 BL 410927, *15 (S.D.N.Y. Aug. 26, 2014) ("Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour

---

[5] The limited hours for Michael Sweeney (5.5) and Matthew Dunn (1.8) reflect only tangential involvement in this case and should be excluded from any fee award.

cases"); *Kadden v. VisuaLex*, No. 11 Civ. 4892 (SAS), 2012 BL 343407, at *2 (S.D.N.Y. Dec. 6, 2012) (reducing hourly rate to $325 for "well-respected solo practitioner with approximately twenty-five years of legal experience with a focus on labor and employment law and litigation," in light of "lack of complexity" of the case).

       "The burden is on the fee applicant to produce satisfactory evidence—in addition to the attorneys' own affidavit—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 206 (E.D.N.Y. 2007). G&S has not met its burden. This case was not a class action, nor did it involve complex issues of law. Indeed, Mr. Getman acknowledged the simplicity of this litigation when he advised Judge Cote that "there are not that many issues in the case." Ex. 2 at 11.

       G&S argues that its "rates are in line with this district" (Br. 20) and in support, relies on a string of distinguishable cases. Most of the cases on which G&S relies involve fees paid as a percentage of the total class settlement fund, where the court did not consider the rates at all or only considered them in connection with a lodestar "cross check." *See, e.g., Clark v. Ecolab, Inc.*, No. 04 Civ. 4488, 2010 BL 108460, *8–10 (S.D.N.Y. May 11, 2010) (approving fees as "percentage-of-recovery" without mentioning counsels' hourly rates); *Viafara v. MCIZ Corp.*, No. 12-cv-07452 (RLE), 2014 BL 121948 (S.D.N.Y. May 01, 2014) (approving fees amounting to one-third of settlement amount achieved for a Rule 23 class and FLSA collective action of over 1,600 people); *Asare v. Change Group of N.Y.*, No. 12 Civ. 3371 (CM), 2013 BL 417632, *18–20 (S.D.N.Y. Nov. 15, 2013) (approving fees amounting to 25% of settlement fund, which was "a fraction—not a multiplier—of the lodestar"); *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194 (CM), 2010 BL 282185 (S.D.N.Y. Nov. 30, 2010) (looking to lodestar

"to validate the percentage of funds figure"). Others involve fee awards for work on non-FLSA cases more complex than this one. *See, e.g., Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 225 (S.D.N.Y. 2011) (approving rates of $450 and $625 for civil rights attorneys in case claiming false arrest, excessive force, malicious prosecution and failure to intervene against the City of White Plains); *Velez*, 2010 BL 282185, 1* (seven years of litigation culminating in seven week trial involving Title VII claims for a class of over 5,600 employees). These cases do not provide a basis for G&S's inflated hourly rates.

Magistrate Judge Maas' decision from April 2015 in *Rosendo* is instructive as to what is a reasonable hourly rate for plaintiffs' attorneys in a wage-and-hour case with comparable experience to that of Mr. Getman, Ms. Tse, and Mr. Guerra, the three G&S attorneys who billed the most to this matter. There, the Court awarded rates of $400/hour for a partner with over 30 years of employment law experience who also teaches employment law and has authored a number of publications concerning employment law, $300/hour for a senior attorney with ten years experience who was a Super Lawyers "New York Metro Rising Star," and $225/hour for associate with three years experience. *See Rosendo*, 2015 BL 108247, at *6-7. Here, Mr. Getman has 29 years of litigation experience and 25 years of wage-and-hour experience; Ms. Tse has nine years of experience, four of which she spent working on wage-and-hour cases; and Mr. Guerra has been practicing law, and wage-and-hour litigation specifically, since 2010. (Getman Decl. ¶¶ 10, 36–39, 40–42.) Based on their relevant experience and *Rosendo*'s guidance, Mr. Getman's hourly rate should be reduced to $400, Ms. Tse's to $250, and Mr. Guerra's to $175.[6]

---

[6]     As a final attempt at justifying its unreasonably high fees, G&S argues, without factual basis, that the billing rates charged by Willkie Farr & Gallagher LLP, attorneys to Bloomberg in this action, "are in far excess" of what G&S seeks. Bloomberg's fees are a business matter between the Company and its counsel, with no bearing on the question of what constitutes "reasonable" fees pursuant to the FLSA and NYLL. The Second Circuit has made

Additionally, paralegal work should be reduced to $90 per hour and the work of G&S's IT specialist should be reduced to no more than $150 per hour, to the extent they perform compensable work. *Warwick Valley*, 2013 BL 237530; *Kahlil v. Original Old Homestead Restaurant*, 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) ("Even paralegal work, however, is not compensable if it is purely clerical.").

     2.     *Rates Previously Obtained By G&S Are Inapplicable Here.*

G&S claims that "counsel's usual billing rates are reasonable and have been approved throughout the country." Br. 13–14. In support, G&S points to several cases where courts supposedly awarded its requested hourly rates, but those cases are inapplicable for several reasons. First, the only case on which G&S relies that was decided since 2012, *Murphy v. N. Dutchess*, No. 11-cv-05661 (S.D.N.Y. Aug. 15, 2014), ECF No. 101, merely recited entire paragraphs of G&S's memorandum of law in support of the unopposed fee motion. *Compare id.* ¶ 38 *with* ECF No. 89 at 22–23. This Court should ignore *Murphy* because "[o]rders drafted by counsel, especially those making findings of fact and conclusions of law that award counsel their own fees, should be given little precedential value." *Fujiwara v. Sushi Yasuda LTD.*, 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014). Furthermore, a number of those cases involved payment to G&S based on a percentage of a class settlement fund where the court did not analyze the reasonableness of the hourly rate. *See Clark v. EcoLab Inc.*, 07-cv-08623 (hourly rate not discussed); *Brumley v. Camin Cargo Control, Inc.*, No. 08-cv-01798 (JLL), 2012 BL 72017, at *14 (D.N.J. Mar. 26, 2012) (used "average rate of $263/hour" for "lodestar cross-check" to

---

clear that fee awards pursuant to fee-shifting statutes need not reflect an amount similar to that paid to defense counsel. *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053 (2d Cir. 1989); *see also Okyere v. Palisades Collection, LLC*, 300 F.R.D. 149 (S.D.N.Y. 2014). G&S's request to base its fees on what defendants pay has been rejected before, and should be rejected again. *See Young v. Cooper Cameron Corp.*, No. 04-Civ. 5968 (SC)(GWG), 2009 BL 353803 (S.D.N.Y. Mar. 30, 2009) (rejecting G&S's request to consider defense fees because "the Court fails to see why they would be relevant.").

approve fees as percentage of settlement for FLSA class of 112); *Gulino v. Symbol Techs., Inc,*

No. 06-CV-2810 (JG), 2008 BL 243994 (E.D.N.Y. Oct. 28, 2008) (hourly rate not discussed).

Additionally, G&S relies on cases that involved significantly more complex work

than what occurred here. In *Salazar-Martinez v. Fowler Brothers*, No. 10-CV-6257, 2012 BL

237949, at *2-3 (W.D.N.Y. Sept. 14, 2012), the court granted G&S's unopposed fee motion and

approved the rates in light of the complicated nature of the case, including "representation of

hundreds of foreign migrant farm workers who reside in rural areas of Mexico, and who do not

speak English, coupled with the fact that the legal issues involved in the case were, and still are,

unsettled in the Second Circuit and many other circuit courts of appeals." *Id.* at *3. This three-

plaintiff case hardly compares to *Salazar-Martinez.*

It is particularly surprising that G&S relies on *Ayers v. SGS Control Services*, No.

03 Civ. 9078 (RMB), 2008 BL 383303 (S.D.N.Y. Sept. 8, 2008) to support the claim that its

"usual billing rates are reasonable and have been approved throughout the country." Br. at 13-

14. In fact, in *Ayers*, the Court reduced G&S's "generous" hourly rates of up to $500 and found

their hours billed "excessive." Indeed, in *Brown v. Mustang Sally*, another recent case where the

court cut G&S's hourly rates and reduced hours billed by 20% for unreasonable billing practices,

U.S. District Judge Skretny admonished G&S for citing *Ayers* to support the claim that its fees

routinely were approved, cautioning that "the padding of neither the bill nor the brief will be

tolerated." *Brown v. Mustang Sally's Spirits & Grill, Inc.*, No. 12-CV-529S, 2013 BL 253002,

*4 (W.D.N.Y. Sept. 18, 2013). Remarkably, G&S did not heed Judge Skretny's warning and

submitted the exact same "brief padding" to this Court. At best, this was a careless cut-and-paste

job from prior fee petitions, and at worst, this is an intentional misrepresentation to the Court in

blatant disregard of another federal court's warning.  Either way, it reflects the type of

unreasonable billing practices for which Bloomberg should not have to pay.

      B.    <u>G&S's 1361 Hours Are Excessive, Redundant, And Unnecessary.</u>

      In what can only be described as "overkill," G&S used two partners, three

associates, one technician, and six paralegals to prosecute this three-plaintiff wage-and-hour

case.  Br. 17.  In another individual FLSA case, Judge Conti slashed G&S's hours by fifty

percent, criticizing the firm's use of nine employees and more than 700 hours through trial, and

finding: "That is overkill in a matter such as this.  Even bearing in mind the remedial nature of

the FLSA and the basis for its fee-shifting provisions, [Defendant] should not carry the burden of

[G&S's] inefficiency and overstaffing."  *Young*, 2009 BL 353803, at *8; *see also Cho*, 524 F.

Supp. 2d at 209 (cutting requested fees 40% for three-plaintiff FLSA representation through trial,

finding "the expenditure of more than 1000 lawyer hours [was neither] necessary [n]or

reasonable").  Again ignoring the caution of Judge Conti, G&S staffed this case with twelve of

its fourteen employees (not the "small team of attorneys and staff" as claimed (Getman Decl.

¶5))—and managed to generate nearly 1400 hours—almost double the amount that Judge Conti

rejected for a case that went to trial.[7]  Ex. 4.

      As reflected below, in each stage of this litigation, G&S's hours billed were

unreasonable.  A line-by-line examination reveals numerous examples of G&S time entries that

should be reduced or stricken based on the inordinate amounts of time spent on tasks such as

internal conferencing among several attorneys and staff (255.2 hours); attendance by multiple

attorneys at three depositions and three in-person court conferences (119 hours, including travel

---

[7]     The sheer number of hours billed here is particularly egregious when compared to G&S's recent fee application in the matter of *Murphy v. Northern Dutchess*, No. 11-cv-05661 (S.D.N.Y. 2014), where the attorneys billed over 1425 hours to litigate and settle a class action involving hundreds of EMT workers over three years. Murphy Getman Decl. ¶ 23.  Interestingly, in that case, G&S agreed to a 46% reduction in hours billed.

time), and drafting pleadings, the class certification brief, and discovery requests and responses using boilerplate language from the *Enea* litigation (117.9 hours). Exs. 8, 12, 13. In lieu of adjusting individual time entries, the Court may impose an across-the-board percentage cut to the number of hours claimed. *Clark v. N.Y.C. Health & Hosps.*, No. 10 Civ. 8046 (SAS), 2011 BL 338813, at *3 (S.D.N.Y. Aug. 24, 2011). Where, as here, counsel has billed excessive hours for straightforward work, Courts have reduced hours billed by as much as 40–75%. *See, e.g.,* 2009 BL: 353803 (50%); *Francois v. Mazer*, No. 09-cv-3275(KBF), 2012 BL 448171 (S.D.N.Y. Aug. 6, 2012) (40%); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, No. 08 Civ. 442 (TPG)(FM), 2013 BL 287106 (S.D.N.Y. July 2, 2013) (75%). Bloomberg respectfully requests that the Court reduce G&S's 1361.3 hours billed by **at least 35%** to account for excessive, redundant, and unnecessary time.

1. *G&S Billed 270 Hours Before Discovery Commenced (January 8, 2013–February 3, 2014)*

When Plaintiffs made their initial settlement demand on February 3, 2014, including $92,139 of attorneys fees supposedly incurred as of that date, very little had happened in the litigation. G&S says it amassed an astounding 270 hours by then, but no formal discovery had taken place. Ex. 4. The central tasks during that initial phase time merely involved G&S drafting the complaint (5.8 hours), amending it once to change the job title for which they sought relief and adding a claim for injunctive relief that they never pursued (4.1 hours), and working on a cut-and-paste motion for class certification, which they lost (64 hours). Exs. 5, 6, 8. Other examples of tasks during this phase of the case for which G&S billed excessively or should not have billed at all include:

- Litigating their position, which Judge Cote rejected, that the collective action notice be posted at Bloomberg's offices, even where Judge Cote denied Plaintiffs' request to do so and Plaintiffs had just litigated and lost the same exact issue before Judge Daniels in the *Enea* matter. Ex. 7 , 8.8 hours.

- Promoting their firm, including filming videos to post on the G&S website and You Tube advertising the case, working on their own website, and "research re: press release picked up by any media." Ex. 18 , 9.3 hours.

- Researching topics (by a senior associate) that G&S would have researched in the *Enea* matter or other wage-and-hour cases they have litigated, such as "availability of injunctive relief under the NYLL," "commonality and typicality requirements," "factors Courts look at in deciding . . . numerosity," and the "legislative purpose of Rule 23 class actions." Ex. 20, 28.6 hours.

- Internal conferencing about topics such as "plan for preparing collective, class action filing" and "setting next tasks for litigation team" among two attorneys and two paralegals. Ex. 19, 40 hours.

"Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (citation omitted).

Although the Court urged Plaintiffs to provide Bloomberg with more detail on the fees supposedly incurred in this early phase so the parties could resolve the case, G&S never did. Hykal ¶¶ 8, 10. Plaintiffs similarly ignored the Court's suggestion that counsel be mindful of fees and work to minimize expenses in this small-value case. Id. ¶ 8. Rather than heed this Court's advice, or consider the prior ruling from Judge Conti cutting half of their unreasonable and inefficient 700 hours for prosecuting a straightforward FLSA case, the G&S team launched a long, burdensome discovery process and motion practice. Ex.__.

     2.   *G&S Spent 979.2 Hours And Billed $318,424.50 On Settlement Negotiations, Discovery, And A Largely Unsuccessful Summary Judgment Motion (February 4, 2014–February 17, 2015).*

Plaintiffs' counsel over-litigated this three-plaintiff case, drumming up almost 1000 hours on just this phase of the litigation. Ex. 4. Their efforts to "run up hours and seek reimbursement for . . . every hour expended" should not be rewarded. *Chen*, 2012 BL 26468, *4. First, G&S made unreasonable discovery demands for documents and data they hardly used and brought losing, inconsequential discovery disputes to the court, causing the case to be disproportionately expensive for Bloomberg. Second, by its own account, 27% of overall

billings (367.5 hours) went to a largely unsuccessful summary judgment motion.  Br. 23.

Finally, despite the Supreme Court's mandate that "[c]ounsel for the prevailing party should

make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or

otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such

hours from his fee submission," *Hensley*, 461 U.S. at 434, G&S has not exercised "billing

judgment."  G&S has billed for vague entries, staffed multiple attorneys and paralegals on tasks

that could have been accomplished by one, billed for attorneys working on administrative tasks,

and having senior attorneys do work that more junior attorneys could have done, and billed

100% of travel time.

> a.   G&S Spent Excessive Hours Pursuing Scorched-Earth Discovery
>        Tactics With No Material Benefit To Its Clients.

Discovery lasted several months with multiple disputes going to Judge Cote,

mainly because G&S turned simple issues into protracted negotiations that greatly increased the

cost of litigation with little or no benefits to their clients.  Time and again, G&S refused to

negotiate and warned that if Bloomberg did not agree, Plaintiffs would go to the Court and

Bloomberg would be paying their fees.  Hykal ¶ 29.  Courts regularly reduce fees where counsel

acts unreasonably and overlitigates the case.  *See, e.g., Marchuk*, 2015 BL 111884, at *2

(refusing to compensate attorneys for fees that were "patently unreasonable, reflecting time

expenditures far greater than necessary to prosecute [the] case generally"); *Chen*, 2012 BL 26468

(reducing requested attorney's fee amount because it was unreasonable for plaintiff's counsel to

"run up the bill" and expect defendant's counsel to pay).

G&S spent nearly 80 hours on manufactured discovery disputes, including time

meeting and conferring with internally and with Willkie, drafting letters to the Court, and

preparing for and attending a conference.  Ex. 9.  Their efforts were for naught—the Court

denied almost every request they made, and granted Bloomberg's requests. The outcome of the disputes resolved by Judge Cote in Bloomberg's favor belies G&S's claims that the excessive hours billed are justified because "Bloomberg's conduct during discovery caused Plaintiffs' counsel to do a lot of preventable work" (Br. 23) and "most of the time . . . spent litigating this case was in response to tactics and positions taken by Bloomberg" Br. 30. Moreover, it is apparent that Bloomberg's supposed "limitless resources" motivated Plaintiffs' counsel to take the position in meet-and-confers that they do not have to reach an agreement because "Bloomberg will be paying its fees anyway." Br. 6; Hykal ¶ 29. That unreasonable strategy should not be rewarded.

Furthermore, Bloomberg already has borne the cost of Plaintiffs' unreasonable discovery demands. For instance, G&S demanded production of every single email to and from each of the Plaintiffs for the time they held the Service Desk Rep position, which amounted to over one million pages of emails. Hykal ¶¶ 23, 26. But, despite putting Bloomberg to the great expense of processing, reviewing, and preparing those documents for production, Plaintiffs appear to have spent fewer than 12 hours reviewing them. Ex. 10. Not only that, G&S did not use a single one of those emails in the summary judgment briefing and used only four emails during the depositions they took. Hykal ¶ 30. Plaintiffs also demanded several types of data, requiring Bloomberg to compile millions of rows of ticket data reflecting every request Plaintiffs worked on in their roles at Bloomberg. Hykal ¶ 27. G&S points to its analysis of "thousands of 'tickets'" as a reason why discovery was complex, but it appears to have spent just 2.9 hours reviewing such data. Ex. 11. The hours spent negotiating for documents and data that Plaintiffs never relied on were not "required to prosecute the case effectively," and the Court should not "endors[e] the scorched earth tactics" in which G&S engaged. *Arbor Hill*, 493 F.3d at 112.

These excessive hours spent overlitigating discovery should be cut entirely from G&S's fee

award, reducing the requested amount by $27,285. Ex. 9.[8]

<blockquote>

b.    G&S Spent Excessive Hours On Plaintiffs' Summary Judgment Motion And Lost On Two Of The Three Issues.

</blockquote>

By its own calculations, G&S spent approximately 27% of its time on Plaintiffs'

summary judgment motion, amounting to approximately 367 hours.  It is puzzling how G&S

could have spent so many hours on that motion, considering that counsel previously completed

much of the legal analysis at the time Plaintiffs submitted their April 16, 2014 mediation

statement, addressing the issues of hours worked and FWW.  Hykal ¶ 32.  In fact, the summary

judgment brief contains many of the same FWW arguments and cites 19 of the cases used in the

earlier mediation statement.  Id.

G&S also duplicated efforts leading up to the filings.  For example, G&S has

numerous time entries billing more than ten hours of 4-person meetings to "plan for" or

"discuss" summary judgment.  Ex. 4, *see e.g.*, 1939-1942.  Moreover, Plaintiffs now concede

that the FWW issue was a "very fact specific one" (Br. 27), confirming that it was imprudent to

move for summary judgment on that issue.  Billing 367 hours for a largely unsuccessful

summary judgment motion is not reasonable.  *See also*, *infra*, section II.C.

<blockquote>

c.    G&S Overbilled In Many Areas And Failed To Exercise Billing Judgment As Required By *Hensley*.

</blockquote>

G&S's overbilling was not confined to any one phase of this case – it is

ubiquitous.  Undoubtedly, "a greater economy of time and effort could have been achieved on a

three-employee wage-and-hour case."  *Cho*, 524 F. Supp. 2d at 209.  The expectation, given

G&S's claimed experience litigating wage-and-hour cases and counsel's "familiar[ity] with the

---

[8] In calculating the proposed amount of monetary cuts to Plaintiffs' requested fees, Bloomberg has applied Plaintiffs' requested hourly rates as opposed to those rates proposed by Bloomberg.

substantive legal issues presented in the case, is that the experience should lend itself to a certain amount of efficiency." *Young*, 2009 BL 353803, at * 6. The time entries highlighted below are illustrative of counsel's complete abdication of "billing judgment" as mandated by *Hensley*. They also reveal a high level of disorganization that is indicative of duplication and inefficiency throughout the case. The following examples illustrate G&S's inefficient case management:

        *Vague entries.* Many of G&S's time entries lack sufficient detail regarding the tasks performed and the reasonableness of such work. For example, two attorneys, including partner Dan Getman, and two paralegals billed .8 hours on March 13, 2013 for "setting next tasks for litigation team." Ex. 4, rows 56-59. The same four individuals billed 1.2 hours on March 27, 2013 to "plan for preparing collective, class action filing." Ex. 4, rows 86-89. Mr. Getman also bills for 4 hours on June 20, 2013 for "draft reply brief," 4.9 hours on September 9, 2014 for "draft sj reply brief," 3.7 hours on September 18, 2014 for "editing section," and 3.5 hours on May 6, 2015 for "draft fee brief." Ex. 4, rows 350, 2362, 2501, 2930. These four entries amount to more than $10,000 (Id.) yet they lack the specificity required for this Court to determine whether Mr. Getman's time devoted to these tasks was reasonable. A reduction in fees is appropriate for vague time entries that make it "impossible to determine whether the number of recorded hours expended in pursuit of [the] litigation was reasonable." *Barfield*, 537 F.3d at 140 (citation omitted) (imposing 25% cut in hours in light of vague entries). *See also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149 ,172 (2d Cir. 1998) (20% cut).[9]

        *Duplication of work.* G&S regularly had two or more attorneys doing work that could have—and should have—been accomplished by one. For example, they bill for two attorneys to attend three depositions amounting to 70.9 hours and $29,721 with Mr. Getman (the

---

[9]     Exhibits 4 through 21 to the Hykal Declaration represent Bloomberg's best efforts to assess the time entries submitted by G&S in light of the limited and, in many instances, vague information provided by G&S.

most expensive lawyer on the team) attending two of them. Ex. 12. They also billed 63.3 hours for two attorneys to attend the three in-person court conferences in this matter (including 21.8 hours amounting to $10,625 for two attorneys to attend the February 17, 2015 settlement conference), and participate in the twelve telephonic settlement conferences (even after the Court suggested that only one attorney attend in order to avoid unnecessary fees). Ex. 13.

Courts routinely cut fees in simple wage-and-hour cases like this one for such duplication of work. *See Yan v. 520 Asian Rest. Corp.*, No. 13-CV-2417 (KNF), 2015 BL 62305, at *11 (S.D.N.Y. Mar. 9, 2015) ("[T]he time and labor required and the lack of any novelty or difficulty respecting the questions presented in this action counsel against the duplication of work performed by one partner, . . . and one senior attorney . . . ."); *Wong v. Hunda Glass Corp.*, No. 09 Civ. 4402 (RLE) 2010 BL 202572, at *4 (S.D.N.Y. Sept. 1, 2010) (excluding all hours billed by second attorney as "redundant and excessive" for an "uncomplicated" FLSA matter); *Cho*, 524 F. Supp. 2d at 209-10 (reducing hours billed in light of "significant overlap of efforts by multiple counsel," including "multiple attorneys attend[ing] court conferences and the one-day trial, where one would have been more than adequate").

*Internal conferencing.* During this phase of the litigation, G&S spent 193.7 hours, amounting to $70,435.50, "debriefing," "discussing," and "reviewing" among several attorneys and paralegal staff, sometimes with as many as five people.[10] Ex. 19. While internal discussions "are a necessary part of any representation," they "are harder to verify and therefore more likely to be excessive." *Brown*, 2013 BL 253002, at *6 (citation omitted) (applying a 20% across-the-board reduction to G&S's total hours billed in a [two-plaintiff] wage-and-hour case). In many instances, these communications concerned non-strategic issues that did not require the

---

[10] During the first phase, G&S spent 40.1 hours on internal conferencing, amounting to $14,182, and during the final phase they spent 21.4 hours, amounting to $7,246.50. Ex. 19.

involvement of multiple attorneys, *e.g.*, a three-person meeting to "decide on final steps for preparation and filing of fee petition" and "discussion of oversize exhibits for filing." Ex. 4, rows 2996-98, 2305-06.

       *Attorneys working on administrative tasks.* Plaintiffs attempt to bill Bloomberg for attorney time spent on administrative tasks, such as time spent by senior associate Lesley Tse to complete tasks such as "convert[] answer to word document, combined complaint and answer," "review citations in summary judgment reply," and "review[] procedure for getting authorization to bring electronic devices into courtroom," and time spent by partner Dan Getman to "correct website errors" and "email W9 to clients." Ex. 4, rows 133, 2515, 2671, 1005, 2887. Courts cut all hours billed where attorneys spent time executing purely clerical tasks. *Kahlil*, 657 F. Supp. 2d at 477.

       *Senior attorneys doing work of junior attorneys.* Despite the claim that "tasks [were] delegated to the lowest-billing professional who could perform the task well" (Br. 22), G&S billed at least 44 hours of Ms. Tse's time spent on tasks such as legal research and searching for and reviewing documents in preparation for depositions, all of which could have been done by a more junior attorney. Ex. 21. G&S also billed for hours of research by senior partner Mr. Getman that would have easily been completed by a junior attorney, such as 2.2 hours to "legal research on good faith immunity waiving atty/client privilege," 1.2 hours of "legal research on conflict of laws," and 1 hour of "research on sdny fees decisions by J. Freeman." Ex. 4, rows 1516, 336, 2699. "[T]he billing rates such experienced attorneys reasonably command should result in efficiency" such as assigning only the most complex of work to the most senior attorneys. *Young*, 2009 BL 353803, at *7.

*Wasted time on carelessness.*  Wasted time on tasks that were required only because of G&S's own carelessness also support a reduction of total hours billed.  For example, G&S billed for tasks such as "search[ing] for password" to open Bloomberg's production (even though Bloomberg used the same password for every production in this matter) (Ex. 4, rows 1312-13; emailing Willkie seeking permission to use documents from the *Enea* matter that Bloomberg had already given them written permission to use; and writing letters and emails demanding production of documents and/or data that had already been provided.

*Travel time.*  G&S seeks compensation at 100% of its hourly rates for 52.5 hours of travel time, including travel from New Paltz to New York City, as well as local travel within New York City after arrival (often for two attorneys).  Ex. 17.  Some courts have refused to compensate counsel for any travel time.  *See, e.g.*, *Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 5724 (PGG), 2010 BL 27331, at *8 (S.D.N.Y. Feb. 9, 2010) (eliminating fees sought for travel time given that "clients are no longer willing to pay for travel time").  In the alternative, some courts in this district grant compensation for travel time at 50% of the hourly rate.  *See Kadden*, 2012 BL 343407, at *3.

3.   *G&S Spent An Additional 112.1 Hours And Billed $40,304 After Settlement (February 18, 2015–May 15, 2015)*

It is remarkable that G&S managed to bill another $40,354.50—nearly ████ of their clients' settlement recovery— *after* the parties reached a settlement in principle.  Ex. 4.  For example, G&S billed 30.1 hours finalizing and "wrangling over the terms" of the customary settlement agreement.  Ex. 15.  Bloomberg should not have to pay for the "excessive and wasteful fees, incurred for such little benefit" at the post-settlement stage.  *Serin v. N. Leasing Sys.*, 2011 BL 441220, at *9 (S.D.N.Y. Apr. 19, 2011) (excluding hours spent finalizing settlement agreement from attorneys' fee award).

Bloomberg drafted a customary settlement agreement, but—consistent with G&S's practice of turning simple issues into protracted negotiations—Plaintiffs initially rejected the releases and confidentiality provisions, and only after billing many more hours did G&S drop its unreasonable posturing and agree to Bloomberg's proposed provisions.  Hykal. 15.  G&S tries to justify the excessive time spent finalizing the settlement agreement by arguing that it was "complex" because G&S had to negotiate with Mr. Siegel's counsel in a second lawsuit he brought against Bloomberg in New Jersey for other claims Br. 12.  But these efforts had nothing to do with recovering anything for Mr. Siegel under the FLSA or Labor Law and are not compensable.  Moreover, the claims of complexity are not credible, as all that was required to ultimately resolve the issue was a carve-out from the general release of Mr. Seigel's claims relating to the other lawsuit.  Hykal ¶ 16.

During this post-mediation period, G&S wasted time on entirely unnecessary tasks, such as working on a pretrial order despite Bloomberg's warning that it would challenge such wasteful fees.  Ex. 14; Hykal ¶ 17.  Other examples of unreasonable billing during this phase include 21.4 hours on internal conferencing, Ex. 19, and several hours for two employees to mail the settlement checks to Plaintiffs.  Ex. 15.  G&S's time spent preparing this Motion was excessive, particularly in light of the Court's offer to use a streamlined approach that would avoid expensive motion practice.  G&S declined, instead billing 76.5 hours for motion papers created from recycled materials, using 32 of the same cases cited in G&S's last fee application in this district (and leaving in a heading in Section VII referencing "Class Counsel" that appears to be from another matter).[11]  Hykal ¶ 33.

_____

[11] G&S's cut-and-paste fee motion also refers to this case as a "contingency fee" that incentivized G&S to "balance litigating the case as efficiently as possible with litigating the case as effectively as possible."  (Br. at 30).  However, contrary to Plaintiffs' claim that Bloomberg refused to settle the case during that conference because Plaintiffs did not agree to the use of the FWW to calculate damages, it was apparent settlement did not happen at that time

G&S's excessive and unreasonable number of hours billed should be reduced by at least 35%. Applying the appropriate hourly rates, *supra* IA, to the remaining 65% of G&S's proposed hours yields a lodestar of $193,992. Ex. 3. From that lodestar amount, further reduction should be applied, as described below, for Plaintiffs' limited degree of success.

## II.   G&S's Fees Should Be Further Reduced Because Plaintiffs Obtained Only A Limited Degree of Success.

"The product of reasonable hours times a reasonable [hourly] rate does not end the inquiry." *Hensley*, 461 U.S. at 434. Other considerations may counsel in favor of a further reduction, "the most critical" of which "'is the degree of success obtained' by the plaintiff[s]." *Barfield*, 537 F.3d at 152 (citation omitted). Where, as here, there was only a single claim at issue, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

Plaintiffs' limited degree of success counsels in favor of a further reduction of 40% or more on the reasonable fee award as set forth in Section I. The failures were significant: (i) G&S failed to obtain class certification and represented only three of the "more than fifty" individuals it sought to represent as set out in the Complaint, (ii) recovery in this action represents ▇▇ of the Plaintiffs' estimated damages, and a mere fraction of the millions they sought for the putative class, and (iii) Plaintiffs' summary judgment was unsuccessful on the two most important issues in the case. In addition, G&S fought and lost several smaller disputes, including the many discovery disputes described above. Plaintiffs did not benefit from the

---

because (i) they considered Bloomberg's offer on damages a "zero offer" and stymied settlement because of fees, and (ii) they refused to discount their damages by more than 10%. Hykal ¶¶ 4, 7. Conveniently, G&S now describes this case as a "tremendous risk," in order to justify the high fees requested. Getman Decl. ¶ 61.

extensive time G&S spent on litigating all of these issues, not one of which impacted the ultimate settlement.

To account for G&S's limited degree of success, a 40% reduction on the adjusted "lodestar" of **$193,992** results in a total fee award to G&S of no more than **$116,395**.

A.     After Losing Class Certification, Plaintiffs Recovered Only a Fraction Of What Siegel Set Out To Obtain.

The "key factors in determining the degree of success achieved" are "the quantity and quality of relief obtained as compared to what the plaintiff sought to achieve as evidenced in her complaint." *Barfield*, 537 F.3d at 152. As an initial matter, a significant reduction in requested fees is appropriate here because Plaintiffs failed to obtain class certification, and as a result, the recovery was a fraction of what Mr. Siegel sought to achieve by bringing this putative class action.

The Court denied Plaintiff's motion to certify a Rule 23 class based on a lack of numerosity. ECF No. 26. And while the Court allowed the FLSA collective action to proceed conditionally, only two individuals joined the case. Not only should the time spent on seeking class and collective action status be excluded from the "lodestar," but a percentage reduction in fees is appropriate because "Plaintiffs did not achieve the broad class and collective action that was the 'primary aim' of the litigation." *White*, 2014 BL 311124, at *6.

The Court should reject G&S's argument that its failure on class certification does not warrant a reduction because the work on that motion "is also attributable" to the winning collective action motion. Given the "extremely low" standard for FLSA certification, G&S's claim of success on the collective action motion is "hollow at best." *Young*, 2009 BL 353803, at

- 28 -

*5. Moreover, only two people joined the collective action,[12] and thus "the outcome can hardly be considered an overwhelming success even though the Court ruled in [Plaintiffs'] favor on the motion." *Id.*

      Compared to the millions of dollars that G&S ostensibly sought to recover by filing this putative class action, Plaintiffs' three-person settlement for ███████ cannot be characterized as a success. *White*, 2014 BL 311124, at *6. After failing to get a class certified, G&S squandered an early opportunity in 2014 to settle the case. By setting another unrealistic goal – this time, obtaining no less than 90% of Plaintiffs' full damage estimates – G&S again fell far short of its aim in this litigation. Plaintiffs' limited degree of success in the overall relief obtained provides a basis for a significant fee reduction. *See Chen*, 2012 BL 26468, at *2-3 (refusing to award fees in the amount of thirty times the recovery by the plaintiff because plaintiff was awarded only 6% of the damages amount he originally requested).

    B.    <u>G&S's Strategy To Litigate Rather Than Settle After Failing To Obtain Class Certification Did Not Add Value To Plaintiffs' Case.</u>

      G&S's obstinate position that Plaintiffs would not negotiate for less than 90% of their estimated damages was a choice to litigate rather than engage in good faith settlement talks. The decision to forego negotiations in 2014 did not benefit Plaintiffs. Despite extensive efforts by Bloomberg in early 2014, as discussed in section I.B.1, Plaintiffs fought tooth and nail on every discovery dispute, and lost almost every one that was brought to the Court, which confirms the unreasonableness of the positions they took from the outset. In addition to reducing the hours billed for unreasonableness, the Court may also apply a further reduction for Plaintiffs'

---

[12]     Without citing a single piece of evidence, Plaintiffs assert that "many [putative class members] did not join out of fear of retaliation or of jeopardizing their future employment . . . ." Br. 27. This baseless accusation is belied by the fact that of the 33 putative class members, only 17 were employed by Bloomberg during the collective action notice period. Thus, half of the putative class who no longer worked at Bloomberg would have no reason not to join the lawsuit if the reason for not doing so was the "fear of retaliation or of jeopardizing their future employment" as Plaintiffs allege. But, only two did.

limited degree of success on these disputes. *See Barfield*, 537 F.3d at 151-153 (affirming 50% reduction in light of limited degree of success, in addition to further cuts for vague entries and hours that were "entirely disproportionate" to that necessary to litigate the action).

     C.     <u>Plaintiffs Did Not Benefit From Their Summary Judgment Motion.</u>

     G&S's fees should also be reduced because of Plaintiffs' largely unsuccessful summary judgment motion. There is "no reason why [Bloomberg], which has already borne the cost of litigating against [Plaintiffs'] motion in the first instance, should now be made to reimburse [Plaintiffs] for the fees [they] incurred in prosecuting that motion." *Gunawan v. Sake Sushi Restaurant*, 897 F. Supp. 2d 76, 95 (E.D.N.Y. 2012).

     In August 2014, after discovery closed, Plaintiffs moved for summary judgment on three issues: (i) whether they were exempt from receiving overtime pay, (ii) the number of overtime hours they worked, and (iii) what rate of pay applied to overtime hours (*i.e.*, whether they would be calculated using the FWW methodology or with a 1.5 multiplier). The Court granted the motion on the first issued and denied it on the other two. Plaintiffs fail to offer any meaningful explanation for their demand for full reimbursement of their summary judgment-related fees.

     G&S claims that Plaintiffs "effectively won the case" with their summary judgment win on the exemption issue, "the most important issue in the case." Br. 24. However, Plaintiffs overstate the significance of their lone victory on liability, which did nothing to advance settlement—Bloomberg's settlement offer in March 2014 assumed liability, and thus Bloomberg had already credited Plaintiffs with the only win that they were able to obtain thereafter. Hykal ¶ 7. Plaintiffs' summary judgment "win" did not accomplish anything that was not already on the table in Bloomberg's settlement offer.

To account for Plaintiffs' losses on two of the three issues on summary judgment, hours worked and FWW, G&S's 367 hours spent on the motion should be reduced by at least two-thirds, and Plaintiffs should be awarded no more than 9% of the 27% of total fees attributed to summary judgment. *See Custodio v. Am. Chain Link & Constr., Inc.*, No.06-cv-7148 (GBD)(HBP) 2011 BL 397124, at *11 (deducting all hours billed for unsuccessful class certification motion).

D.   G&S Did Not Obtain The "Extraordinary" Result It Claims.

G&S claims that the recovery obtained on behalf of Plaintiffs is an "extraordinary" result because it supposedly greatly exceeds amounts paid by Bloomberg in connection with the DOL investigation and DeOca settlement. That argument is both irrelevant and inaccurate.[13] Courts assess the Plaintiffs' degree of success by the "quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint." *Barfield*, 537 F.3d at 152; *Scott v. City of New York*, No. 02 Civ. 9530 (SAS), 2009 BL 291530 (S.D.N.Y. Aug. 25, 2009). Here, after a series of losses from start to finish, rather than recover millions for a putative class, G&S got just three plaintiffs ███████ of their estimated damages. The fact that the ultimate settlement reached in 2015 exceeded Bloomberg's opening offer a year earlier does not reflect a successful litigation strategy; it reflects that Bloomberg was willing to negotiate in good faith, but Plaintiffs needed major losses on summary judgment to recognize that victory on their claims was not certain. G&S, the only party that

---

[13] G&S misrepresents the recovery obtained in connection with the DOL and DeOca settlements, as well as other facts regarding the court-approved class settlement in DeOca. The DOL payments were made at the DOL"s direction to compensate individuals for backpay pursuant to the FLSA. Hykal ¶ 34. In this case, however, Plaintiffs received payment for claims pursuant to both the FLSA and NYLL. Additionally, Plaintiffs claim that their recovery in this action is ███ times higher than the average recovery in the DOL settlement, which they claim to be $776.33. Plaintiffs' figure is inaccurate, as the average recovery in connection with the DOL settlement was ███████ Hykal 35. Moreover, average recoveries are meaningless because the recovery under both the DOL and DeOca matters was specific to each individual and based on hours worked. And G&S's allegations of a "reverse auction" in the court-approved DeOca settlement are entirely without merit.

stands to gain from the extra year of litigation, ought not be rewarded for spending 1000 hours in

discovery and motion practice only to have the parties essentially ████████████ their

opening positions, a result that could have been reached much earlier – and less expensively –

had G&S conducted this litigation reasonably.

## CONCLUSION

For the reasons set forth above, Bloomberg respectfully requests that the Court

deny Plaintiffs' request for $441,574.50 in attorneys' fees and reduce the requested attorneys

fees to no more than $116,395.

Dated: June 10, 2015      WILLKIE FARR & GALLAGHER LLP
   New York, New York

By: _____

   Deirdre N. Hykal
   787 Seventh Avenue
   New York, New York 10019
   (212) 728-8000
   dhykal@willkie.com

*Attorneys for Defendant Bloomberg L.P.*