UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
                                                               :

LEE SIEGEL, on behalf of himself and PHILIP
HARRIS, JORGE OLIVEROS,                    :

                       Plaintiffs,        :

                                                           Case No. 13-CV-1351 (DCF)

                 -against-               :

BLOOMBERG L.P.,                              :

                       Defendant.       :

                                                           :

----------------------------------------------------------------- x

## DECLARATION OF DEIRDRE N. HYKAL

       I, Deirdre N. Hykal, declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

       1.     I am a member in good standing of the Bar of this Court and counsel to defendant Bloomberg L.P. ("Bloomberg" or the "Company") in the above-captioned action. I submit this declaration in support of Bloomberg's Opposition to Plaintiffs' Motion for Approval of Counsel's Fees and Costs for the benefit of Plaintiffs' counsel, Getman & Sweeney PLLC ("G&S").

**2014 Settlement Discussions**

       2.     Following Judge Cote's referral of this matter to this Court for settlement purposes, I participated in approximately six telephonic settlement conferences on behalf of Bloomberg in early 2014, including on January 2, 2014, January 28, 2014, February 4, 2014,

March 19, 2014, April 3, 2014 and April 4, 2014. The court held five additional telephonic conferences between April 18, 2014 and July 24, 2014, which were attended by my colleague.

3. During the January 28, 2014 telephonic settlement conference, the Court recommended that Plaintiffs make a demand and Bloomberg make a counteroffer prior to the parties' next settlement conference.

4. On February 3, 2014, Plaintiffs made their first settlement demand of ███████, which included (1) ███████, representing 90% of what Plaintiffs estimated as their full damages; (2) a $10,000 service award to Plaintiff Lee Siegel; (3) $92,139 in attorneys' fees and costs.

5. During the February 4, 2014 settlement conference, the Court encouraged the parties to work towards settlement. The Court also advised the parties to be mindful of attorneys' fees, and recommended that only one attorney from each side attend future court conferences to limit unnecessary litigation costs.

6. Bloomberg made a counteroffer on March 14, 2014 with a monetary offer to each of the Plaintiffs totaling ███████.

7. During the March 19, 2014 settlement conference, Plaintiffs rejected Bloomberg's March 14, 2014 counteroffer. Plaintiffs' counsel stated that it was a "zero offer" because it did not include attorneys' fees. Plaintiffs' counsel also explained that the biggest differences between the parties for settlement were the number of hours Plaintiffs allegedly worked and whether the fluctuating work week methodology ("FWW") applied to calculate overtime payments. Bloomberg explained that its proposal assumed liability and was based on damages calculated for each Plaintiff using a methodology consistent with how the United States

Department of Labor ("DOL") previously had instructed Bloomberg to calculate backpay awards for certain employees in reclassified positions.

8. Also at the March 19, 2014 settlement conference, the Court inquired as to Bloomberg's position regarding attorneys' fees. I stated Bloomberg's position that G&S would not be entitled to recover 100% of attorneys' fees because, among other reasons, Mr. Siegel lost his motion for Rule 23 class certification. The Court encouraged Plaintiffs' counsel to share with defense counsel information to support the $92,139 demand for attorneys' fees. The Court strongly encouraged the parties to attempt to bridge the gap, particularly in light of the low dollar amount at stake, and recommended that the parties discuss discovery rather than engage in it to attempt to settle before driving up fees.

9. On April 3, 2014, the parties participated in another telephonic settlement conference with the Court, during which they updated the Court on the parties' discussions. G&S had previewed Plaintiffs' testimony and Bloomberg had referred Plaintiffs to the data that would refute such claims. Bloomberg encouraged Plaintiffs to consider the evidence and make a revised demand, to which Bloomberg would respond with a new offer. Plaintiffs had not done so. During the conference, I informed the Court of Bloomberg's position that, although the parties were far apart, the Company believed that an in-person mediation with counsel and clients present would be worthwhile to attempt to settle the case. G&S objected and refused to participate in an in-person mediation. In response to the Court's inquiry, Bloomberg acknowledged that it was willing to consider attorneys' fees separate and apart from its then-existing counteroffer.

10. Despite several more telephonic conferences with the Court in 2014, Plaintiffs never revised their initial settlement demand or provided any information to Bloomberg regarding their demand for attorneys' fees until the in-person mediation on February 17, 2015.

**2015 Settlement Discussions**

11. After denying, in large part, Plaintiffs' summary judgment motion on January 16, 2015 (ECF No. 100), Judge Cote also ordered that the parties file a joint pretrial order by April 10, 2015, placed the case on the May 4, 2015 trial ready calendar, and ordered the parties to contact Judge Freeman's chambers to discuss settlement (ECF No. 101).

12. The parties participated in a telephonic conference with this Court on January 23, 2015. During that conference, G&S objected to an in-person mediation with Plaintiffs in attendance. Over G&S's objection, the Court ordered all parties to appear for an in-person mediation.

13. On February 17, 2015, the parties participated in an in-person mediation. At the conclusion, the Court made a proposal to both sides to settle for ▮▮▮▮ exclusive of attorneys' fees (the "Judge's Proposal"). The Judge's Proposal was ▮▮▮▮▮▮▮▮▮▮ between Plaintiffs' opening demand and Bloomberg's counteroffer from early 2014. In the event the parties accepted the Judge's Proposal, the Court also offered to consider G&S's fee application without formal briefing, to avoid "fees on fees."

14. On February 19, 2015, the parties agreed to the Judge's Proposal. On or around that date, G&S informed me that Plaintiffs intended to move for attorneys' fees and costs and required full briefing to do so.

15. Shortly thereafter, Bloomberg proposed a customary settlement agreement. Plaintiffs initially objected to the proposed agreement's confidentiality and general release

language. After a number of further exchanges between G&S and counsel for Bloomberg, the parties agreed to the terms of the settlement agreement on or around April 1, 2015, including confidentiality and general release covenants.

16. On April 8, 2015, Plaintiffs raised new issues with the settlement agreement from Mr. Siegel's counsel in a separate action that he had filed against Bloomberg in New Jersey state court ("NJ counsel"). Bloomberg rejected the proposal from NJ counsel the following morning and proposed alternate language to carve out Mr. Siegel's other claims from the settlement agreement.

17. On April 10, 2015, Judge Cote endorsed a letter previously filed by Plaintiffs' counsel on April 8, and informed Plaintiffs that the case would be dismissed for failure to prosecute if a pretrial order was not filed by April 17, 2015. On April 13, 2015, I had a call with Mr. Getman to discuss his proposal to refer the case from Judge Cote to this Court. When I declined the proposal, explaining, among other things, Bloomberg's view that Judge Cote would frown upon this proposal in response to her very clear April 10 order, Mr. Getman threatened that if Bloomberg would not agree, he would "spend all week" drafting a pretrial order for which Bloomberg would have to foot the bill. I informed Mr. Getman that Bloomberg would oppose any fees that his firm wasted on a pretrial order, rather than finalizing the settlement agreement.

18. The following day, I received a draft pretrial order from G&S.

19. On April 17, 2015, the parties submitted the stipulation and order dismissing Plaintiffs' claims with prejudice, except for attorneys' fees and costs.

**Complaint**

20. I have compared the complaint in this action (the "Siegel Complaint") to the complaint filed in the matter of *Enea v. Bloomberg L.P.*, No. 12-cv-4656 (S.D.N.Y.) (the "Enea

Complaint"). The Siegel Complaint mirrors the Enea Complaint filed by G&S, except for the plaintiffs' job titles and personally identifying information, and the number of hours Mr. Siegel claimed that he and the purported class of plaintiffs worked.

21. I have compared the Siegel Complaint to the first amended complaint filed in this action ("Siegel FAC"). They are exactly the same except the Siegel FAC changed the job title and added a request for injunctive relief.

### Class Certification and Collective Action Notice

22. I have compared the memorandum in support of Plaintiffs' motion for class certification (ECF No. 16, the "Siegel Class Certification Brief") with the memorandum in support of plaintiffs' motion for class certification in the Enea matter (*Enea* ECF No. 8, the "Enea Class Certification Brief"). The Siegel Class Certification Brief makes virtually the same arguments presented in the Enea Class Certification Brief.

### Discovery and Bloomberg's Production

23. On February 24, 2014, Plaintiffs served their First Request for Production of Documents, in which they demanded the production of "[a]ll e-mails to and from any Plaintiff" and "[a]ll emails concerning any Plaintiff" during the time they held the Service Desk Representative position. Bloomberg objected to these requests.

24. I have reviewed an analysis comparing Plaintiffs' First Request for Production of Documents served in this case, with the *Enea* Plaintiffs' First Request for Production of Documents and Second Request for Production of Documents (together, the "*Enea* RFPs"). The "Instructions" are exactly the same, the "Definitions" are exactly the same except for the definition of "ESI," and the 37 requests in this case are nearly identical to the *Enea* RFPs served by G&S.

25. I have reviewed an analysis comparing Plaintiffs' First Set of Interrogatories served in this case, with the *Enea* Plaintiffs' First Set of Interrogatories and Second Set of Interrogatories (together, the "*Enea* Interrogatories"). The "Instructions" are substantially the same, the "Definitions" are substantially the same, and the 20 interrogatories in this case are nearly identical to the *Enea* Interrogatories served by G&S.

26. Bloomberg produced approximately 580,000 documents and over one million pages in this action.

27. Bloomberg's production included eight categories of data: (1) PeopleSoft data; (2) badge data; (3) SDSK and ACD data; (4) terminal login data; (5) OUT data; (6) payroll data; (7) CCVG data; and (8) ticket data. In response to Plaintiffs' demand for ticket data, Bloomberg compiled millions of rows of ticket data reflecting every request Plaintiffs worked on in their roles at Bloomberg.

28. Plaintiffs resisted undertaking a review and production of ESI in response to Bloomberg's discovery requests, although they eventually did so.

29. During meet-and-confers, it was not uncommon for G&S to take the position that, if Bloomberg did not agree with Plaintiffs' demands, they would seek Court intervention and Bloomberg would be paying G&S's fees to do so.

30. Plaintiffs used a total of 16 documents produced by Bloomberg as deposition exhibits and/or as exhibits to their summary judgment briefing. Of these 16 documents, only four were emails.

31. On occasion, G&S requested information that had already been provided to them. For example, on May 11, 2015, G&S emailed Bloomberg's counsel, requesting to use documents produced in *Enea v. Bloomberg L.P.* in this action, even though Bloomberg had already

consented to the use of those documents in April 2014. Attached hereto as **Exhibit 1** is a true and correct copy of that email.

## Summary Judgment

32. I have reviewed Plaintiffs' memorandum of law in support of their motion for summary judgment (the "Summary Judgment Brief") and Plaintiffs' April 16, 2014 mediation statement (the "Mediation Statement"). The Summary Judgment Brief and the Mediation Statement contain substantially overlapping fluctuating workweek arguments. The Summary Judgment Brief cites 19 of the same cases that appeared in the Mediation Statement.

## Plaintiffs' Motion for Approval of Counsel's Fees and Costs

33. I have reviewed the memorandum in support of plaintiffs' motion for final approval of class counsel's fees and costs in the matter of *Murphy v. Northern Dutchess Paramedics, Inc.*, No. 11-CIV-5661(LMS), ECF No. 97 (S.D.N.Y. Aug. 3, 2014). In the instant Motion for Approval of Counsel's Fees and Costs (the "Motion"), G&S cites to 32 of the same cases that it cited in *Murphy*.

## Department of Labor Payments

34. In 2013, Bloomberg reached an agreement with the DOL to reclassify certain positions and pay certain sums to current and former employees in those positions as backpay overtime. A description of Bloomberg's agreement to make these payments is set forth in the Declaration of Thomas H. Golden, dated September 20, 2013, submitted in support of plaintiffs' motion for approval of a class settlement in *DeOca v. Bloomberg*, Case No. 13-cv-0076-SN, Docket No. 280-5 (S.D.N.Y. Feb. 19, 2014.).

35. Based on Company records, the average payment to current or former employees in connection with the DOL Agreement was approximately ▮▮▮▮▮

**Exhibits**

36.  Attached as **Exhibit 2** is a true and correct copy of the transcript of the June 4, 2014 conference before the Honorable Denise L. Cote.

37.  Attached as **Exhibit 3** is a true and correct copy of a chart summarizing Bloomberg's proposed reductions to G&S's billed attorneys' fees.

38.  Exhibits 4 through 21 were prepared by Willkie Farr & Gallagher LLP ("Willkie") using the time entries included in Exhibit 1 to the Declaration of Dan Getman submitted in connection with Plaintiffs' Motion for Approval of Counsel's Fees and Costs ("Getman Ex. 1"). Getman Ex. 1 included only the timekeeper's name, the date of the time entry, the time billed, and a description. In Exhibits 4 through 21, Willkie reproduced the entries from Getman Ex. 1 without alteration, even where G&S miscalculated entries. Willkie added columns reflecting the timekeeper's position, "G&S Billed Rate," and "Total." The "Total" column is a calculation of the time billed multiplied by the G&S Billed Rate. Where individual time entries include multiple task descriptions, the hours tallied in each chart reflect only the time attributed to tasks in bold.

39.  Exhibits 4 through 21 represent Bloomberg's best efforts to assess the time entries submitted by G&S in light of the limited and, in many instances, vague information provided by G&S.

40.  Attached as **Exhibit 4** is a true and correct copy of a chart reflecting the time entries included in Getman Ex. 1, organized in chronological order, including sub-sections for Phases 1, 2 and 3 as those periods are described in Bloomberg's opposition brief.

41. Attached as **Exhibit 5** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S for the preparation of the Complaint, totaling approximately 5.8 hours, amounting to fees of $1,834.50.

42. Attached as **Exhibit 6** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S for the preparation of the First Amended Complaint, totaling approximately 4.1 hours, amounting to fees of $1,277.50.

43. Attached as **Exhibit 7** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S in connection with its efforts litigating for the posting of the class notice at Bloomberg's offices, totaling approximately 8.8 hours, amounting to fees of $3,040.

44. Attached as **Exhibit 8** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S in connection with preparing pleadings, the class certification brief, and discovery requests and responses, totaling approximately 117.9 hours, amounting to fees of $40,554.50.

45. Attached as **Exhibit 9** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S in connection with meeting and conferring both internally and with Bloomberg's counsel, drafting letters to the Court, and preparing for and attending a court conference over discovery disputes where Plaintiffs did not prevail, totaling approximately 78 hours, amounting to fees of $27,285.

46. Attached as **Exhibit 10** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S in connection with reviewing documents produced by Bloomberg, totaling approximately 11.9 hours, amounting to fees of $2,295.

47. Attached as **Exhibit 11** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S in connection with reviewing ticket data produced by Bloomberg totaling approximately 2.9 hours, amounting to fees of $1,042.

48. Attached as **Exhibit 12** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S for the attendance of two attorneys at each of three depositions, including travel time for each attorney, totaling approximately 70.9 hours, amounting to fees of $28,187.50.

49. Attached as **Exhibit 13** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S for the attendance of two attorneys at each of the fifteen court conferences in this matter, including travel time for each attorney, totaling approximately 63.3 hours, amounting to fees of $29,721.

50. Attached as **Exhibit 14** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S in connection with the preparation of a joint pre-trial order following the parties' agreement regarding settlement of this action, totaling approximately 2.2 hours, amounting to fees of $1,005.

51. Attached as **Exhibit 15** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S in connection with negotiating and executing the settlement agreement in this action, totaling approximately 32.2 hours, amounting to fees of $13,521.

52. Attached as **Exhibit 16** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S in connection with the preparation of Plaintiffs' Motion for Approval of Counsel's Fees and Costs, totaling approximately 76.5 hours, amounting to fees of $25,882.50.

53. Attached as **Exhibit 17** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S solely for travel, totaling approximately 52.5 hours, amounting to fees of $21,457.50.

54. Attached as **Exhibit 18** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S for promoting the firm, including filming videos posted on G&S's website and on YouTube, totaling approximately 8.9 hours, amounting to fees of $3,057.50.

55. Attached as **Exhibit 19** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S for internal conferencing among attorneys and staff members, totaling approximately 255.2 hours, amounting to fees of $91,864.

56. Attached as **Exhibit 20** is a true and correct copy of a chart compiling time entries that reflect time billed by G&S for legal research performed on topics that would have been previously researched in connection with the *Enea v. Bloomberg L.P.* litigation and/or other wage-and-hour litigations handled by G&S, totaling approximately 28.6 hours, amounting to fees of $9,295.

57. Attached as **Exhibit 21** is a true and correct copy of a chart compiling time entries that reflect time billed by Lesley Tse for tasks that could have been completed by a more junior attorney at G&S, totaling approximately 44 hours, amounting to fees of $14,300.

Dated: June 10, 2015
       New York, New York

                                              _____
                                              Deirdre N. Hykal

14593176