UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LEE SIEGEL, PHILIP HARRIS, and JORGE
OLIVEROS, *individually and on behalf of others
similarly situated*,

                              Plaintiffs,

              -against-

BLOOMBERG L.P.,

                              Defendant.

13cv1351 (DF)

**MEMORANDUM
AND ORDER**

---

**DEBRA FREEMAN, United States Magistrate Judge:**

Currently before this Court on consent, pursuant to 28 U.S.C. 636(c), is the application of

plaintiffs Lee Siegel ("Siegel"), Philip Harris ("Harris"), and Jorge Oliveros ("Oliveros")

(collectively, "Plaintiffs"), for $411,273.55 in attorneys' fees and $15,953.63 in costs, incurred

in connection with the litigation of this action for overtime pay under the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 206 *et seq.*, and the New York Labor Law ("NYLL"), Art. 19 § 650

*et seq.*  Defendant Bloomberg, L.P. ("Bloomberg" or "Defendant"), opposes Plaintiffs'

application for attorneys' fees, contending that no more than $116,395.00 in fees should be

awarded.  For the reasons set forth below, Defendant is hereby directed to pay Plaintiffs the sum

of $346,341.80, representing $330,388.17 in attorneys' fees and $15,953.63 in litigation costs.

## BACKGROUND

### A.   Pleadings and Factual Background

On February 28, 2013, Siegel, represented by Getman & Sweeney, PLLC ("G&S"), filed

this action under the FLSA and NYLL, seeking unpaid overtime wages.  (Complaint, dated

Feb. 27, 2013 (Dkt. 1).)  Siegel purported to bring the case as a collective action under the

FLSA, and as a Rule 23 class action under the NYLL, on behalf of a class of more than

50 "PC Help Desk Workers" employed by Defendant in the United States.  (*Id.* ¶¶ 11-17.)  On

April 15, 2013, Siegel filed an Amended Complaint that changed the job title of the alleged class

members from "PC Help Desk Worker" to "Service Desk Representative" ("SDR"), and added a

request for injunctive relief.  (First Amended Complaint, dated Apr. 10, 2013 (Dkt. 8).)  On

February 14, 2014, with leave of Court, Plaintiffs filed a Second Amended Complaint, naming

Harris and Oliveros as additional plaintiffs.  (Second Amended Complaint, dated Feb. 14, 2014

("SAC") (Dkt. 43-2).)  In its Answer to the Second Amended Complaint (which remained the

operative pleading for the duration of the action), Defendant asserted a number of defenses; in

particular, Defendant claimed, *inter alia*, that it had acted in good faith, that it had not willfully

violated the relevant statutes, and that SDRs were exempt from the FLSA and NYLL under

certain provisions of those statutes – specifically, provisions allowing for so-called

administrative and computer exemptions.  (Answer of Defendant Bloomberg L.P. to Second

Amended Complaint, dated Feb. 28, 2014 (Dkt. 45).)

This action was the second of four overtime-pay lawsuits filed by G&S on behalf of

Defendant's employees.  *See Enea v. Bloomberg*, No. 12cv4656 (S.D.N.Y.) (filed June 14,

2012); *Jackson v. Bloomberg*, No. 13cv2001 (S.D.N.Y.) (filed March 26, 2013); *Michael v.*

*Bloomberg*, No. 14cv2657 (S.D.N.Y.) (filed Apr. 14, 2014).  At around the same time, another

firm filed a case on behalf of a single Bloomberg employee who claimed that he had been denied

overtime pay.  *See DeOca v. Bloomberg*, 13cv0076 (S.D.N.Y. filed Jan. 3, 2013).  Moreover,

before these actions were filed, the United States Department of Labor ("DOL") began an

investigation and audit of Defendant's practices regarding its apparent failure to pay its

employees overtime wages.  (*See* Memorandum of Law in Support of Plaintiffs' Motion for

Approval of Counsel's Fees and Costs, dated May 15, 2015 ("Pl. Mem.") (Dkt. 131), at 1.)  That

DOL investigation was resolved in April 2013, during the pendency of this litigation, when Defendant reclassified approximately 30 different positions, including SDRs, as overtime eligible.  (*Id.,* at 2.)  At that time, Defendant began paying SDRs overtime premiums and recording the hours that SDRs worked at home.  (*Id.*)  Plaintiffs argue that the recovery that they obtained in this action greatly exceeded that which they would have received under the methodology used to calculate SDRs' overtime pay in both *DeOca* and the DOL investigation. (Pl. Mem., at 1-5, 9-10.)

> **B.** **Collective Action and Class Certification Motion**

On May 20, 2013, Siegel moved for conditional certification of this action as an FLSA collective action, and for class certification of his NYLL claims pursuant to Rule 23 of the Federal Rules of Civil Procedure.  (Dkts. 15-18.)  At the time of his motion, Siegel was apparently unaware of the exact number of SDRs that would be eligible to join the class, but the Second Amended Complaint alleged that more than 50 workers would be so eligible, and, in connection with the certification motion, Siegel expressed the belief that the class would likely exceed 40 members.  (SAC ¶ 15; Pl. Mem., at 10; *see also* Brief in Support of Motion to Certify a Class and Approve Class and Collective Action Notice, filed May 20, 2013 (Dkt. 16).)  In opposing Siegel's motion for class certification, however, Defendant submitted an affirmation stating that only 33 employees had held the title of SDR since that position was created in March 2010.  (*See* Opinion and Order, dated Aug. 16, 2013 ("Class Cert. Opinion") (Dkt. 26).)

By Order dated August 16, 2013, the Honorable Denise Cote, U.S.D.J., denied Siegel's request for class certification under Rule 23, on the grounds that, based on Defendant's submitted affirmation, there were too few Bloomberg SDRs to satisfy the requirement of numerosity.  (*Id.,* at 4-6.)  At the same time, Judge Cote allowed the case to proceed as a

collective action under the FLSA and authorized Siegel to distribute collective action notice to potential plaintiffs.  (*Id.,* at 6-8.)

       **C.**    <u>**Initial Settlement Negotiations and Discovery Motions**</u>

On December 3, 2013, after the close of the FLSA opt-in period, Judge Cote referred the case to this Court for purposes of settlement.  (Dkt. 36 (Order Referring Case to Magistrate Judge).)  The parties engaged in negotiations and this Court attempted to assist the parties in settlement, but was unable to do so, at that time.  (*See* Bloomberg L.P.'s Memorandum of Law in Opposition to Plaintiffs' Motion for Approval of Counsel's Fees and Costs, dated June 10, 2015 ("Pl. Mem.") (Dkt. 134), at 4-5.)  Following these failed settlement negotiations, the parties engaged in extensive discovery.

On two occasions, the parties raised discovery disputes before Judge Cote when they were unable to reach a compromise.  First, on June 2, 2014, Defendant filed a letter motion requesting a pre-motion conference to discuss its anticipated motion to compel Plaintiffs to appear for their noticed depositions and to produce certain documents.  (Dkt. 51.)  On the same day, Plaintiffs filed a letter motion of their own, requesting an informal conference to resolve certain disputes regarding the production of information relating to Defendant's good faith and willfulness defenses and the performance of certain searches of electronically stored information ("ESI").  (Dkt. 52.)  At a June 4, 2014 conference before Judge Cote to discuss these issues, Defendant offered to withdraw its good faith and willfulness defenses.  (*See* Transcript of Conference, conducted June 4, 2014 ("6/4/14 Tr.") (Dkt. 56), at 2-5.)  While Defendant contends that Plaintiffs' discovery motion was entirely unnecessary because the offer to withdraw those defenses was already on the table (Def. Mem., at 7), Plaintiffs argue that Defendant had attached

conditions to that withdrawal that it did not drop until the June 4 conference[1] (Reply Memorandum of Law in Support of Plaintiffs' Motion for Approval of Counsel's Fees and Costs, dated July 6, 2015 ("Pl. Reply") (Dkt. 136), at 6; 6/4/14 Tr., at 5).  During the same conference, Judge Cote made several rulings that narrowed the disputes that then existed between the parties.  Specifically, Judge Cote denied Plaintiffs' requests regarding ESI search terms, searches of certain shared drives, and production of emails from Plaintiffs' co-workers (*id.*, at 20-21), and she ordered Defendant to produce certain information within two weeks (*id.*, at 15-16).  Judge Cote also stated that, while plaintiffs' depositions normally occur first, she was not wedded to that sequence given the limited time remaining in the parties' discovery schedule, and that the parties should work together on setting a deposition schedule.  (*Id.*, at 19-20.) Having so narrowed the parties disputes, Judge Cote directed counsel to meet and confer regarding any outstanding issues, and acknowledged that both sides were "probably . . . unhappy" with some of her rulings.  (*Id.*, at 20.)

Second, on June 17, 2014, Plaintiffs' filed a letter motion requesting a conference to resolve a discovery dispute regarding the deadline by which all documents and ESI were required to be produced.  (Dkt. 59.)  Specifically, Plaintiffs requested that Defendant be ordered to produce all outstanding discovery by June 27, 2014, in light of Defendant's proposal to provide certain ESI only after the date for which Plaintiffs had noticed the depositions of Defendant's witnesses.  (*Id.*)  In response, Defendant stated that it was diligently reviewing two categories of emails – "Manager Emails" and "HR Emails" – and would produce the Manager

---

[1] These conditions included G&S's agreement not to use or reference the withdrawal of these defenses in any of the other actions it had brought on behalf of Defendant's employees or to rely on it in connection with Defendant's exemption defense (Dkt. 54 (Response to Plaintiff's Letter Motion Regarding Discovery Disputes)), and to forego discovery of the records of certain custodians (6/4/14 Tr. at 5).

Emails by June 27, but that it would not be able to produce the HR Emails before July 3, at the earliest.  (Dkt. 60.)  By Order dated June 17, 2014, Judge Cote noted that Defendant had agreed to produce the Manager Emails by June 27, and directed the parties to confer regarding a schedule for depositions and production of the HR Emails, allowing Defendant to produce this ESI on a rolling basis, as it had requested.  (Dkt. 61.)

>    **D.**     **Summary Judgment Motion and Settlement**

On August 8, 2014, Plaintiffs filed a motion for partial summary judgment (Notice of Motion for Summary Judgment, dated Aug. 8, 2014 (Dkt. 69)) on three issues, arguing that: (1) Plaintiffs were covered by the FLSA and not subject to the administrative or computer exemptions; (2) Plaintiffs' damages could not be calculated using the fluctuating work-week ("FWW") method; and (3) Plaintiffs' account of their hours worked at home should be accepted as conclusive (*see* Pl. Mem., at 11; *see generally* Brief in Support of Motion for Summary Judgment, filed Sept. 10, 2014 ("Pl. SJ Mem.") (Dkt. 90)).  By Opinion and Order dated January 16, 2015, Judge Cote granted Plaintiff's motion with respect to the exemptions issue, thus conclusively establishing Defendant's liability, but denied Plaintiff's motion with respect to the two issues regarding the calculation of Plaintiffs' hours and damages.  (*See generally* Opinion and Order, dated Jan. 16, 2015 ("SJ Opinion") (Dkt. 100).)

On the same day that she ruled on Plaintiffs' summary judgment motion, Judge Cote directed the parties to schedule a settlement conference with this Court.  (Dkt. 101.)  Following a February 17, 2015 settlement conference, the parties reached a settlement in principle, based on each side's acceptance of this Court's judicial recommendation with respect to the settlement amount, exclusive of attorneys' fees and costs.  (Def. Mem., at 8.)  After the mediation, Plaintiffs objected to certain provisions included in Defendant's proposed written settlement agreement,

and G&S billed an additional 30 hours for work performed in negotiating and finalizing that agreement.  (*Id.*)  The parties were not able to agree on fees and costs, and consented to place a fee application before this Court for final resolution.

  **E.**  **Parties' Submissions on Plaintiffs' Fee Application**

  On May 15, 2015, Plaintiffs filed a motion for approval of their counsel's fees and costs.  (Notice of Motion, dated May 15, 2015 (Dkt. 115).)  By Order dated July 16, 2015, this Court granted the parties permission to redact certain information from any publicly filed documents relating to Plaintiffs' fee application.  (Dkt. 130.)  On July 28, 2015, all parties proceeded to file their redacted motion and opposition papers on Plaintiffs' fee application, with unredacted versions provided to this Court's Chambers.

  Plaintiffs filed a memorandum of law in support of their motion for attorneys' fees and costs.  (Pl. Mem.)  Along with that memorandum of law, Plaintiffs also filed two attorney declarations:  (1) a Declaration from Artemio Guerra, Esq., dated May 15, 2015 ("Guerra Decl.") (Dkt. 132)), attaching as exhibits an excerpt of the transcript and associated documents from Defendant's 30(b)(6) deposition (*id.*, Ex. A), as well as documents relating to the DOL investigation of Defendant (*id.*, Ex. B); and (2) a Declaration from Dan Getman, Esq., dated May 15, 2015 ("Getman Decl.") (Dkt. 133),[2] attaching as exhibits copies of G&S's contemporaneously maintained billing records (*id.*, Ex. 1), screenshots of the G&S webpage listing the qualifications of the firm's attorneys (*id.*, Ex. 2), and copies of G&S's contemporaneously maintained records of its litigation costs, together with receipts, invoices, and other documentation of those costs (*id.*, Ex. 3).

---

[2] By letter dated August 12, 2015, Getman advised the Court of an inadvertent error in his Declaration and submitted a revised copy.  (Dkt. 137.)

For its part, Defendant filed a reply memorandum of law (Bloomberg L.P.'s Memorandum of Law in Opposition to Plaintiffs' Motion for Approval of Counsel's Fees and Costs, dated June 10, 2015 ("Def. Mem.") (Dkt. 134)), and a Declaration from Deirdre N. Hykal, Esq., dated June 10, 2015 ("Hykal Decl.") (Dkt. 135), attaching a number of exhibits, including an email in which G&S requested information that had already been provided by Defendant (*id.*, Ex. 1), the transcript of the June 4, 2014 conference before Judge Cote (*id.*, Ex. 2), and a chart summarizing Defendant's proposed reductions to G&S's requested attorneys' fees (*id.*, Ex. 3). The remainder of the exhibits attached to the Hykal Declaration are copies of the billing records provided by G&S, organized by Defendant based on the stage of the case or category of tasks.[3]

Finally, Plaintiffs filed a reply memorandum of law (Pl. Reply), attaching a copy of G&S's contemporaneously maintained billing records, which detail the hours spent by Plaintiff in reviewing and responding to Defendant's opposition to Plaintiffs' fee application.

---

[3] *See id.*, Ex. 4 (chronological listing of billing records, including subsections for stage of the case), Ex. 5 (time entries relating to the drafting of the Complaint), Ex. 6 (entries relating to the drafting of the First Amended Complaint), Ex. 7 (entries relating to litigating the posting of class notice at Defendant's offices), Ex. 8 (entries relating to the preparation of pleadings, the class certification brief, and discovery requests and responses), Ex. 9 (entries relating to discovery disputes), Ex. 10 (entries relating to the review of documents produced by Defendant), Ex. 11 (entries relating to the review of ticket data produced by Defendant), Ex. 12 (entries showing multiple attorneys attending depositions), Ex. 13 (entries showing multiple attorneys attending court conferences), Ex. 14 (entries relating to the preparation of a joint pretrial order after a settlement in principle had been reached), Ex. 15 (entries relating to the negotiation and execution of the settlement agreement), Ex. 16 (entries relating to the preparation of the motion for attorneys' fees), Ex. 17 (entries showing billing for travel time), Ex. 18 (entries relating to filming and posting videos regarding the case), Ex. 19 (entries relating to meeting and conferring internally), Ex. 20 (entries relating to conducting legal research on topics common to other cases), Ex. 21 (entries relating to senior attorneys' performance of tasks that could have been completed by more junior attorneys).

## DISCUSSION

## I.     APPLICABLE LEGAL STANDARDS

Under the FLSA and NYLL, "a prevailing plaintiff is entitled to reasonable attorneys'

fees and costs." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 506 (S.D.N.Y. 2012);

*see also* 29 U.S.C.A. § 216 ("The court in [an FLSA action for unpaid minimum wages or

overtime compensation] shall, in addition to any judgment awarded to the plaintiff or plaintiffs,

allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.");

N.Y. Lab. Law § 663(1) ("If any employee is paid by his or her employer less than the wage to

which he or she is entitled . . . he or she shall recover in a civil action the amount of any such

underpayments, together with costs [and] all reasonable attorney's fees.")

The Court has discretion to determine the amount of attorneys' fees that would be

appropriate to satisfy a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). As a general

matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the

lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by

the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar

calculation creates "presumptively reasonable fee" (internal quotation marks omitted; citing

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183

(2d Cir. 2008) and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)). There is generally a

strong presumption that the lodestar represents the appropriate award, although courts have the

discretion to enhance or reduce the lodestar in rare and exceptional circumstances. *See id.* at 166

(quoting *Perdue*, 559 U.S. at 554). The party seeking fees bears the burden of demonstrating

that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and the

party's fee application must be supported by contemporaneous time records that "specify, for

each attorney, the date, the hours expended, and the nature of the work done," *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11; *see also Rosado v. City of New York*, No. 11cv4285 (SAS), 2012 WL 955510, at *4 (S.D.N.Y. Mar. 15, 2012) ("The relevant community to which the court should look is the district in which the case is brought."). Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the Court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought, *Miele v. New York State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987).  In *Arbor Hill*, the Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be willing to pay."  522 F.3d at 190.  In assessing whether an hourly rate is reasonable, the Court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Id.*  When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate.  *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the Court should reduce the stated hours accordingly.  *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (the time component should not reflect excessive hours). In determining whether an excessive amount of time was expended on a matter, the Court may

consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, *see Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), as well as the degree of counsel's success, *see Hensley*, 461 U.S. at 436-37 (holding that there is "no precise rule or formula" for reducing a fee award and that courts have discretion to either eliminate specific hours or reduce the lodestar to account for limited success).

## II.   REASONABLENESS OF PLAINTIFFS' REQUESTED FEES

### A.   Hourly Rates

G&S is a plaintiffs' side wage-and-hour firm that principally handles class and collective actions.  (Pl. Mem., at 17.)  In this fee application, G&S requests fees for the work of two partners (Dan Getman, Esq., at $625 per hour; and Michael Sweeney, Esq., at $505 per hour), three associates (Matt Dunn, Esq., at $360 per hour; Lesley Tse, Esq., at $325 per hour; and Artemio Guerra, Esq., at $275 per hour), a technology specialist (Michael Russo, at $220 per hour), and six paralegals (each at $150 per hour).  (*Id.,* at 17.)

#### 1.   Reasonableness of Attorneys' Rates

Getman, the founding partner of G&S, graduated from law school in 1984 and has over 30 years of experience in class and individual litigation, with approximately 27 years dedicated to employment and wage-and-hour practice.  (*Id.,* at 17-18; Getman Decl., Ex. C, ¶¶ 8-12, 20-23.)  Sweeney, G&S's other named partner, received his law degree in 1996, and has litigated wage-and-hour cases since about 2004, before which time he practiced in the areas of commercial litigation, international arbitration, and international human rights.  (Getman Decl., Ex. C, ¶¶ 25-35.)  Dunn, who graduated from law school in 2003, joined G&S in 2007, after working with two public-defender organizations and maintaining his own practice.  (Getman

Decl., Ex. C, ¶¶ 45-52.)  Tse graduated from law school in 2006, and she practiced in the

housing units of two legal services organizations before joining G&S in 2011.  (Pl. Mem., at 18;

Getman Decl., Ex. C, ¶¶ 36-40.)  Guerra has practiced wage-and-hour litigation since graduating

from law school in 2010.  (Pl. Mem., at 18; Getman Decl., Ex. C, ¶¶ 41-44.)

Courts in this District have generally found that fees ranging from $200 to $450 are

appropriate for experienced litigators in employment and wage-and-hour cases.  *See Rosendo v.*

*Everbrighten Inc.*, No. 13cv7256 (JGK) (FM), 2015 WL 1600057, at *8 (S.D.N.Y. Apr. 7, 2015)

("[A]ttorneys in FLSA cases typically command . . . rates of between $250 and $450 per hour,

depending on their level of experience."), *report and recommendation adopted*, No. 13cv7256

JGK, 2015 WL 4557147 (S.D.N.Y. July 28, 2015); *Easterly v. Tri-Star Transp. Corp.*,

No. 11cv6365 (VB), 2015 WL 337565, at *10 (S.D.N.Y. Nov. 19, 2014) ("Courts in this District

have determined that between $250 and $450 is an appropriate fee for experienced civil rights

and employment litigators."), *report and recommendation adopted*, 2015 WL 337565 (S.D.N.Y.

Jan. 23, 2015).  Associates with at least eight years of experience (such as Dunn) generally

command rates of between $285 and $350 per hour, *see Rios v. Louya Corp.*, No. 14cv6800

(GHW), 2015 WL 5918194, at *3 (S.D.N.Y. Oct. 8, 2015) ("Courts in this district have awarded

rates between $285 and $300 per hour for attorneys with at least eight years of experience.");

*Liang Huo v. Go Sushi Go 9th Ave.*, No. 13cv6573 (KBF), 2014 WL 1413532, at *7-8 (S.D.N.Y.

Apr. 10, 2014) (awarding fee of $350 per hour for attorney who had been practicing law for

"almost 10 years"), while associates with at least four years of experience (such as Tse[4] and

---

[4] While, at the time of Plaintiffs' fee application, Tse only had about four years of
experience litigating wage-and-hour cases, she had a few years of prior litigation experience
before joining G&S.  (*See* Pl. Mem., at 18.)  Given that prior experience, Plaintiffs are entitled to
compensation for Tse's services at a rate slightly above the rate generally awarded to an
associate with four years of experience in wage-and-hour litigation.

Guerra) are typically awarded fees of about $200 to $275 per hour, *see Rios*, 2015 WL 5918194, at *4 (reducing fee of attorney with six years' experience to $225 per hour); *Kim v. Kum Gang, Inc.*, No. 12cv6344 (MHD), 2015 WL 3536593, at *2 (S.D.N.Y. June 5, 2015) (finding that $275 hourly rate for attorney with four to six years of experience was "entirely reasonable"); *Agudelo v. E & D LLC*, No. 12cv960 (HB), 2013 WL 1401887, at *2 (S.D.N.Y. Apr. 4, 2013) (awarding fees at rate of $200 per hour for associate with three years' experience in action for unpaid wages).

In some wage cases involving highly experienced counsel, though, courts have approved fees above $450 per hour.  *See, e.g., Scott v. City of New York*, 642 F.3d 56, 59 (2d Cir. 2011) (holding that rate of $550 per hour in FLSA case was reasonable); *Lora v. J.V. Car Wash, Ltd.*, No. 11cv9010 (LLS) (AJP), 2015 WL 7302755, at *4-6 (S.D.N.Y. Nov. 18, 2015) (adopting report and recommendation and finding $500 per hour to be reasonable rate in FLSA case for attorney with 28 years' experience); *Guallpa v. N.Y. Pro Signs Inc.*, No. 11cv3133 (LGS) (FM), 2014 WL 2200393, at *9-10 (S.D.N.Y. May 27, 2014) (approving rate of $600 per hour, in wage-and-hour case, for attorney who graduated law school in 1995), *report and recommendation adopted sub nom., Guallpa v. NY Pro Signs Inc.*, No. 11cv3133 (LGS), 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014); *Torres v. Gristede's Operating Corp.*, No. 04cv3316 (PAC), 2012 WL 3878144, at *4 (S.D.N.Y. Aug. 6, 2012), *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (findings that hourly rates of $550 and $500 were reasonable for partners in FLSA case); *but see Rosendo*, 2015 WL 1600057, at *8 (reducing hourly rate to $400 for attorney admitted to practice 32 years before decision).

Based on the prevailing rates for attorneys in wage-and-hour cases in this District, this Court finds that the hourly rates requested by Plaintiffs for Getman, Dunn, and Tse are slightly

higher than the "prevailing [rates] in the community for similar services by lawyers of reasonably comparable . . . experience," *Blum*, 465 U.S. at 895 n.11, while the rates requested for Sweeney and Guerra are reasonable in light of their experience.  The Court will therefore award Plaintiffs attorneys' fees at the following rates:  Getman, $550 per hour; Sweeney, $505 per hour; Dunn, $350 per hour; Tse, $295 per hour; Guerra, $275 per hour.[5]

### 2.    Reasonableness of Non-Attorney and Clerical Rates

The services of non-attorneys, such as paralegals and other legal support staff, are includable in an award of attorneys' fees, and their fees are also determined by reference to the prevailing hourly rate in the relevant community.  *See Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 415-16 (2d Cir. 1989)).  "In recent FLSA actions [in this District], hourly rates between $100 and $125 for paralegal work have been found to be reasonable."  *Lizondro-Garcia v. Kefi LLC*, No. 12cv1906 (HBP), 2015 WL 4006896, at *8 (S.D.N.Y. July 1, 2015); *see also Guo v. Tommy's Sushi, Inc.*, No. 14cv3964 (PAE), 2016 WL 452319, at *5 (S.D.N.Y. Feb. 5, 2016) (finding that paralegal rate of $100 per hour was reasonable in light of prevailing rates); *Mills v. Capital One, N.A.*, No. 14cv1937 (HBP), 2015 WL 5730008, at *12 (S.D.N.Y. Sept. 30, 2015) (approving paralegal

---

[5] These rates are slightly higher those awarded for certain of these G&S attorneys, almost four years ago, in *Smith v. Nagai*, No. 10cv8237 (PAE) (JCF), 2012 WL 2421740, at *6 (S.D.N.Y. May 15, 2012), *report and recommendation adopted sub nom. Smith v. Saki Rest. Corp.*, 2012 WL 2428929 (S.D.N.Y. June 27, 2012) (finding that rates of $550 per hour for Getman, $440 per hour for Sweeney, and $310 per hour for Dunn were reasonable), and about seven years ago, in *Young v. Cooper Cameron Corp.*, No. 04cv5968 (SC) (GWG) (S.D.N.Y. Mar. 18, 2009) (awarding hourly rates of $500 for Getman and $375 for Sweeney).  While Plaintiffs cite a number of other cases for the proposition that courts have approved their current rates (Pl. Mem., at 13-14), all of these cases are either from outside this District or involve analysis of G&S's hourly rates only as a "lodestar cross-check" against a percentage award of a class settlement, and are thus unpersuasive authority in the context of this case.

rate of $125 per hour); *Gonzalez v. Scalinatella Ristorante*, 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015) (awarding paralegals hourly rates of $100 to $105).  Courts have recognized that the services of staff performing specialized functions, such as technology specialists, are compensable at a higher rate than that typically commanded by paralegals.  *See Torres*, 2012 WL 3878144, at *4 (finding that reasonable rate for technical support staff was $150, as compared to $125 for paralegals).  In 2012, one court in this District awarded G&S fees at the rates of $135 per hour for paralegals, and $195 per hour for Russo, G&S's technology specialist.  *See Smith*, 2012 WL 2421740, at *7.

In light of the prevailing rates in this District, this Court finds that Plaintiffs' requested rate for the work of G&S's paralegals should be reduced from $150 per hour to $125 per hour, but that Russo's hourly rate of $220 is reasonable in light of his substantial experience and specialized knowledge.  (*See* Pl. Mem., at 19 (setting forth Russo's qualifications and experience and noting that Russo's work allows G&S to perform technically demanding data processing "that all but the largest firms send out for expensive expert analysis, or simply forego").)

### 3.     Reasonableness of Billing Rates for Travel and Clerical Work

In their fee application, Plaintiffs seek fees at counsel's full billing rates for 52.5 hours of travel time (17.4 by Getman, 19.6 by Tse, 15.1 by Guerra, and 0.4 by Ayres), and at an hourly rate of $85 for 32.6 hours of clerical work, such as printing documents from the Court's Electronic Case Filing ("ECF") system and filing documents in the law firm's internal files. (*See* Pl. Mem., at 17; Getman Decl., Ex. 1.)  For the following reasons, this Court finds that Plaintiffs' requested attorneys' fees for these categories of work should be reduced.

"Although it is within a district court's discretion to compensate travel time at the full hourly rate, courts in the Second Circuit often reduce attorneys' fees for travel time by 50

percent." *See, e.g., Mister Sprout, Inc. v. Williams Farms Produce Sales, Inc.*, No. 10cv6036 (RMB) (JCF), 2012 WL 3031471, at *7 (S.D.N.Y. July 25, 2012). Indeed, a 50 percent discount for travel time is the customary practice in this District. *See Brig v. Port Auth. Trans Hudson*, No. 12cv5371 (RPP), 2014 WL 1318345, at *4 (S.D.N.Y. Mar. 28, 2014); *Davis v. City of New York*, No. 10cv699 (SAS), 2011 WL 4946243, at *6 (S.D.N.Y. Oct. 18, 2011); *LV v. N.Y. City. Dep't of Educ.*, 700 F. Supp. 2d 510, 524 (S.D.N.Y. 2010).

With respect to tasks that are "purely clerical," such as downloading, scanning, or copying documents and organizing files, such work is generally not compensable, whether performed by an attorney or a paralegal. *See Lizondro-Garcia*, 2015 WL 4006896, at *9; *Khalil v. Old Homestead Rest.*, 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) (citing *Bridges v. Eastman Kodak Co.*, No. 91cv7985, 1996 WL 47304, at *7 (S.D.N.Y. Feb. 6, 1996)); *see also Kottwitz v. Colvin*, 114 F. Supp. 3d 145, 151 (S.D.N.Y. 2015) ("'[P]urely clerical or secretarial tasks should not be billed' under fee shifting statutes 'regardless of who performs them.'" (quoting *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)).

For these reasons, the Court finds that Plaintiffs' should receive attorneys' fees for travel time at 50 percent of their hourly rates, and that they should receive no fees for purely clerical work. At the adjusted rates set out above, 100 percent of counsel's travel time would equal $19,554.50. As reflected in the chart below, this Court will therefore reduce counsel's fees by one-half of that amount ($9,777.25), and will also award no fees for any purely clerical tasks for which compensation is sought.

### B.   **Hours Reasonably Expended in this Litigation**

The attorney billing records submitted by Plaintiffs show that counsel recorded 1,361.3 hours of work performed through the date of the fee application, as well as an additional

72 hours spent preparing a reply to Defendant's opposition.  (Pl. Mem., at 17; Getman Decl.,

Ex. 1; Pl. Reply, at 15, Ex. D.)  Principally for the reasons discussed below, Defendant argues

that these hours were grossly excessive.

### 1. Hours That Defendant Contends Are Excessive in Light of Plaintiffs' Limited Degree of Success

As noted above, in considering the reasonableness of the hours incurred in litigation,

courts may consider the degree of success obtained in comparison to the time expended.  *See*

*Hensley*, 461 U.S. at 436-37.  Indeed, it has been held that "'the most critical factor" in a district

court's determination of what constitutes reasonable attorneys' fees in a given case 'is the degree

of success obtained' by the plaintiff."  *Barfield v. New York City Health & Hosps. Corp.*, 537

F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).  In

evaluating the degree of success obtained in an action, a district court is not limited to an

assessment of whether the plaintiff prevailed on individual claims.  *Barfield*, 537 F.3d at 152.

Instead, the "key factors" in this inquiry are the "'quantity and quality of relief obtained,' as

compared to what the plaintiff sought to achieve as evidenced in her complaint."  *Id.* (quoting

*Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997)).

Here, the parties present arguments regarding the degree of success achieved by

Plaintiffs' counsel both in the ultimate settlement of this action (discussed further below, at

Section II(D)), and in the resolution of particular motions.  As to the latter point, Defendants

argue that (1) Plaintiffs' counsel brought unnecessary discovery motions that were denied by the

Court and failed to advance their clients' positions; (2) Plaintiffs lost on two out of the three

issues that they raised in their motion for summary judgment, including key points relating to the

calculation of their damages; and (3) although Plaintiffs sought to certify both a collective action

under the FLSA and a class action under Rule 23, they were unsuccessful on their motion for

class action certification, greatly reducing the scope of the action and the quantity of available relief.  Defendants contend that Plaintiffs' limited success on these motions warrants a reduction in the number of hours spent preparing their motion papers.

### a.   Discovery Disputes

With respect to discovery motions, Defendant argues that G&S engaged in "scorched-earth discovery tactics with no material benefit to its clients."  (Def. Mem., at 19-21.) Defendant's attempt to characterize Plaintiffs' requests for Court intervention in certain discovery disputes as "manufactured" or "entirely unnecessary" (*id*., at 6-7), however, or to portray itself as wholly blameless for the parties' inability to resolve these disputes, is belied by the letters setting forth the parties' positions, as well as by Judge Cote's rulings on these issues.

While Plaintiffs may have lost more issues than they won during the course of these disputes, Defendant's contention that "[t]heir efforts were for naught" (*id*., at 19) is a mischaracterization of what occurred.  During the litigation of these disputes, Judge Cote narrowed the scope of the issues in contention and encouraged the parties to find reasonable compromises between their positions.  In fact, Judge Cote stated at the June 4, 2014 hearing that both sides were "probably . . . unhappy with some of the things [she had] said."  (6/4/14 Tr., at 20.)  That statement hardly reflects that Plaintiffs wasted the Court's time with manufactured and meritless arguments.  Moreover, although this Court does not know exactly what was said between the parties with respect to Defendant's offer to withdraw its good faith and willfulness defenses, it appears that Defendant did not agree to an unconditional withdrawal of those defenses until after Plaintiffs sought court intervention.  (*Id.,* at 4-5.)

Overall, this Court finds that, while good-faith conference should have eliminated the need to bring certain discovery disputes to the Court's attention, both sides must shoulder

responsibility for their failures in this regard.  This Court further finds that Plaintiffs' discovery motions were neither wholly unjustified, nor so lacking in success that a reduction in fees based on those motions is warranted.  *See Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 539 (S.D.N.Y. 2008) ("[T]he parties each filed motions concerning a host of discovery and evidentiary disputes, and the fact that the plaintiff was unsuccessful on some of them does not disqualify her counsel from compensation for the work done." (internal citation omitted)).

**b.**      **Summary Judgment Motion**

As noted above (*see* Background, *supra*, at Section D), Plaintiffs moved for partial summary judgment on three issues:  (1) that Plaintiffs were covered by the FLSA and not subject to the exemptions identified by Defendant; (2) that Plaintiffs' damages could not be calculated using the FWW method; and (3) that Plaintiffs' account of their hours worked at home should be accepted as conclusive.  (*See* Pl. Mem., at 11; *see generally* Pl. SJ Mem.)  Judge Cote granted Plaintiff's motion with respect to the exemptions issue, thus establishing that Defendant was liable under the FLSA, but denied Plaintiff's motion with respect to the issues regarding the calculation of Plaintiffs' hours and damages.  (*See generally* SJ Opinion.)  Plaintiffs now contend that the liability issue was "the most important issue of the case" (Pl. Mem., at 24), and that the evidence presented on its two unsuccessful arguments "was so strong . . . that the settlement result flowed directly from these submissions" (*id.,* at 11).  In contrast, seeking to reduce Plaintiffs' fees, Defendant argues that, because Defendant's March 2014 settlement offer had already "assumed liability," Plaintiffs did not benefit at all from their summary judgment motion. (Def. Mem., at 30.)  Defendant further asserts that the hours that Plaintiffs expended on the motion for summary judgment should be reduced by two-thirds to account for Plaintiffs' lack of success on two out of three issues.

This Court agrees with Plaintiffs that, given their success on the issue of liability, which may fairly be described as the most important issue addressed by the motion, Judge Cote's denial of summary judgment on the other two issues does not justify a reduction in G&S's attorneys' fees.  In this regard, this Court notes that not every loss suffered over the course of a lengthy litigation is cause for a reduction in attorneys' fees, particularly where the relevant application was reasonable when made.  *See Rozell*, 576 F. Supp. 2d at 543 ("[A] court should not disallow fees for every motion that a prevailing party did not win.  Reasonable paying clients may reject bills for time spent on entirely fruitless strategies while at the same time paying their lawyers for advancing plausible though ultimately unsuccessful arguments.").  In fact, "preventing . . . prevailing parties from recovering fees for unsuccessful efforts during the course of an otherwise successful litigation may discourage attorneys from zealously representing their clients and raising novel but reasonable arguments on their behalf."  *Marisol A. ex rel. Forbes*, 111 F. Supp. 2d at 393.

At bottom, Plaintiffs' strategy to pursue arguments on summary judgment that, if successful, would have resulted in their obtaining all or nearly all of their requested damages, without need for a trial or further settlement negotiations, does not require a reduction in G&S's fees, despite the fact that these arguments did not ultimately prevail.  *See Rozell*, 576 F. Supp. 2d at 539 (declining to reduce fees for unsuccessful summary judgment motion because motion was "hardly unreasonable" when made).

### c.    Class Certification Motion

Although a "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit," *Hensely*, 461 U.S. at 435, courts do generally find that the denial of a class or collective action certification motion justifies a reduction in fees,

given the impact that such certification may have on the quantity and quality of the available relief.  *See Barfield*, 537 F.3d at 152.

In arguing that Plaintiffs' unsuccessful motion for class certification should result in a reduction in G&S's claimed attorneys' fees, Defendant relies principally on *Barfield*, a case in which the Second Circuit affirmed a 50-percent reduction in the lodestar calculation because the named plaintiff had failed to make even the "modest factual showing" necessary to support certification as a collective action under the FLSA.  537 F.3d at 136.  The Second Circuit reasoned that, in such circumstances, leaving the lodestar intact would:  (1) decrease the incentive for plaintiffs' lawyers to litigate collective-action certification vigorously, and (2) encourage plaintiffs' lawyers to file collective-action-based claims even when there was little basis to do so.  *Id*. at 152.  Following *Barfield*, district courts within this Circuit have generally reduced plaintiffs' requested fees for successful class certification or collective-action motions, sometimes making this reduction as an adjustment to the lodestar, and other times simply reducing the number of hours expended by counsel in preparing such motions.  *See, e.g*., *Gonzalez*, 112 F. Supp. 3d at 13 (accounting for unsuccessful class certification motion by identifying line-items attributable to the motion and reducing hours accordingly); *White v. W. Beef Prop., Inc.*, No. 07cv2345 (RJD) (JMA) (E.D.N.Y. Sept. 30, 2014) (reducing lodestar by 33 percent in light of unsuccessful Rule 23 certification motion and dismissal of most opt-in plaintiffs after decertification of collective action).  Further, courts have typically reduced the hours spent by counsel on unsuccessful motions to certify a class under Rule 23, even where the plaintiffs successfully moved for certification as a collective action.  *See, e.g, Gonzalez*, 112 F. Supp. 3d at 13.

In this case, *Barfield*'s reasoning – in particular, its rationale that allowing a full fee recovery in the face of an unsuccessful collective-action motion would incentivize plaintiffs' attorneys to file such motions when there is little basis to do so – is largely inapplicable.  It is true that Plaintiffs' failure to obtain class certification under Rule 23 limited the action to Siegel and the two additional plaintiffs (Harris and Oliveros) who affirmatively opted into the FLSA collective, significantly reducing Plaintiffs' possible recovery, as compared to what might have been recovered by a certified class of 33 members.  *See Velasquez v. Digital Page, Inc.*, No. 11cv3892 (LDW), 2015 WL 5023378, at *3 (E.D.N.Y. Aug. 24, 2015).  Plaintiffs, however, chose to seek Rule 23 and collective action certification in a single motion, and much of the work performed in connection with their unsuccessful efforts to certify a class can also be attributed to their successful efforts to obtain collective-action certification.  Further, unlike in *Barfield*, where the plaintiff presented only "limited anecdotal hearsay" insufficient to meet even the "minimal requirement[s]" for collective-action certification, *Barfield v. N.Y. City Health and Hosp. Corp.*, No. 05cv6319 (JSR), 2006 WL 2356152, at *2 (S.D.N.Y. Aug. 11, 2006), Plaintiffs' motion for class certification here (for a potential class of 33 plaintiffs) had a reasonable chance of success when it was made.  *See MacNamara v. City of New York*, 275 F.R.D. 125, 137 (S.D.N.Y. 2011) ("Courts will generally find that the numerosity requirement is satisfied when a class comprises 40 or more members, and not satisfied when the class comprises 21 or fewer.  In deciding numerosity, particularly in the 'gray area' between these parameters, courts must consider factors other than class size." (internal quotation marks and citations omitted)).

Overall, while the line of cases that follow *Barfield* suggest that Plaintiffs' requested attorneys' fees should be reduced to reflect counsel's limited degree of success on their class-

certification motion, a reduction to the extent Defendant suggests is not warranted.  Rather than substantially reduce all of Plaintiffs' claimed attorneys' fees as Defendant contends would be appropriate, this Court finds it reasonable to reduce the hours spent by counsel on the combined certification motion by 50 percent, thereby acknowledging Plaintiffs' failure to obtain class certification, while still permitting Plaintiffs to recover attorneys' fees for time attributable to their successful efforts to certify a collective action.  *See Gonzalez*, 112 F. Supp. 3d at 13 (eliminating hours spent on unsuccessful class certification motion from calculation of the lodestar); *Custodio v. Am. Chain Link & Const., Inc.*, No. 06cv7148 (GBD) (HBP), 2014 WL 116157, at *12-13 (S.D.N.Y. May 17, 2011), *report and recommendation adopted by* 2014 WL 116147, at *2 (Jan. 13, 2014) (same).

Plaintiffs spent 64 hours on their motion for collective and Rule 23 certification (17.7 hours by Getman, 40.8 hours by Tse, 0.2 hours by Sweeney, 0.2 hours by Dunn, 0.2 hours by Russo, and 4.9 hours by paralegals), and at the adjusted rates set out above, 100 percent of the time expended on this motion would equal $22,599.50.  As reflected in the chart below, this Court will therefore reduce counsel's fees by one-half of that amount ($11,299.75).

## 2.    <u>Hours That Defendant Otherwise Contends Are Excessive</u>

In order to account for "any claimed inefficiency or billing error that might be found upon review," Plaintiffs have voluntarily reduced their overall fees by 10 percent for the period though the date of their fee application (*see* Pl. Mem., at 25), and by 50 percent for responding to Defendant's opposition (Pl. Reply, at 15).  Defendant, however, argues that the Court should reduce G&S's total stated hours by at least 35 percent to account for expenditures of time that were excessive, unnecessary, or duplicative.  (Def. Mem., at 16-27.)

According to Defendant, "G&S's overbilling was not confined to any one phase of this case," but was "ubiquitous."  (*Id.*, at 21; *see also id*., at 1 (arguing that G&S approached this case with "wastefulness and cynicism" and purposefully "overlitigated this case from start to finish").)  In this regard, Defendant argues, *inter alia*, that G&S overstaffed the case with too many attorneys (*id*., at 16), and that, despite the straightforward nature of the case, G&S typically engaged in practices – such recording vague time entries, duplicating work of other attorneys, conducting excessive internal conferencing, billing for attorney work on administrative tasks or tasks that could have been done by a more junior attorney, and wasting time on carelessness – that contributed to overbilling and inefficient case management (*id*., at 21-25).  Defendant also contends that, at every stage of the litigation, Plaintiffs' counsel simply billed more than was reasonable for the tasks they were performing.  (*See id.,* at 17-21, 25-27.)  In reply, Plaintiffs contend that they "litigated this case zealously but appropriately" (Pl. Reply, at 1), and that several aspects of the case, including Defendant's "highly technical work environment and IT infrastructure" and the "fierce opposition" of Defendant's own "highly-competent counsel," contributed to the time required to prosecute this case (*id*., at 3).

To determine whether attorney time is excessive, a court begins by considering the nature of the tasks described in counsel's contemporaneous time records.  *See Gonzalez*, 112 F. Supp. 3d at 29; *Guallpa*, 2014 WL 2200393, at *10-11.  Then, relying on its own experience and familiarity with the case, as well as the evidentiary submissions and arguments of the parties, the court must decide how much of the time recorded for those tasks was "reasonably expended." *Gonzalez*, 112 F. Supp. 3d at 29.  "In calculating reasonable hours, the essential consideration is whether a reasonable attorney would have expended similar hours in pursuit of the case."  *Id*. (citing *Miroglio S.P.A. v. Conway Stores, Inc*., 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009)); *see*

*also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ("The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.").

For the reasons set forth below, this Court agrees that an overall percentage reduction of Plaintiffs' counsel's time would be appropriate here, but not as great a reduction as Defendant seeks. Rather, in addition to deducting the hours attributable to Plaintiffs' unsuccessful class certification motion, this Court will reduce Plaintiffs' stated hours, across the board, by 15 percent.

### a.   Excess Hours Due to Overstaffing

As an initial matter, this Court rejects Defendant's argument that, as a general proposition, G&S overstaffed this matter. A review of Plaintiffs' billing records shows that, while Plaintiffs request fees for the work of two partners, three associates, one technology specialist, and six paralegals, the vast majority of the work on this case was performed by a smaller litigation team consisting of one partner (Getman), two associates (Tse and Guerra), one technology specialist (Russo), and one paralegal (Mow). (*See* Pl. Mem., at 17; Pl. Reply, at 4 n.4.) Out of the 1,361.3 hours expended by G&S on this case, more than 95 percent (all except for 8.5 partner hours, 2.7 associate hours, and 45.5 paralegal hours) were billed by a member of that five-person team. (Pl. Mem., at 17; Pl. Reply, at 4 n.4.)

On the other hand, Defendant identifies a small number of entries that do suggest that G&S overstaffed particular proceedings by billing for the time of two or more attorneys when tasks could have been accomplished by one. (Hykal Decl, Ex. 13.) This Court agrees that some of these time entries reflect duplicative billing, as where, for instance, G&S billed 63.3 hours for two attorneys to attend three in-person conferences and 12 telephonic conferences with the

Court.  *See Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 210 (E.D.N.Y. 2007) (reducing

fees because "multiple attorneys attend[ed] court conferences and the one-day trial, where one

would have been more than adequate").

> **b.      Excess Hours Due to Duplicative,
> Unnecessary, or Overbilled Work**

With respect to Defendant's various arguments regarding Plaintiffs' counsel's supposed

overbilling on various tasks, this Court has looked first to the overall number of hours that

Plaintiffs' counsel spent working on key phases of the litigation.  Largely, this Court is

persuaded by the record that, despite the small number of plaintiffs and the relatively

straightforward nature of their claims, several elements of the case – including the complexity of

the necessary damages calculations, the number and nature of Defendant's affirmative defenses,

the SDRs' "highly technical work environment," and Defendant's "fierce opposition" to

Plaintiffs' claims and motions – required G&S to expend a significant amount of time and

resources in order to represent their clients' interests adequately.  (*See* Pl. Mem., at 28-31;

Pl. Reply, at 3-4.)  Even taking these complexities into account, however, the number of hours

that G&S expended in the early stages of the case (270 hours before the commencement of

discovery) (*see* Def. Mem., at 17-19; Hykal Decl., Ex. 4) appears excessive on its face.

Further, Defendant points out that Plaintiffs' counsel recorded 367.5 hours in connection

with the preparation of Plaintiffs' summary judgment motion (*see id.*), a number of hours that, at

least at first blush, also appears high.  Plaintiffs argue that this motion was "very complex . . . , as

is evidenced by the 19-page Rule 56.1 statement and the 30 exhibits in support of the motion."

(Pl. Mem., at 24.)  This Court acknowledges the size and complexity of the motion, and also

notes that at least one court in this District has found that the expenditure of more than 300 hours

on a summary judgment motion was "not [an] unreasonable amount[] of time to work on [the]

briefs," even in a fairly straightforward wage-and-hour case, *Chen v. TYT E. Corp*., No.

10cv5288 (PAC) (DF), 2013 WL 1903735, at *6 (S.D.N.Y. May 8, 2013) (holding that

222.4 hours on summary judgment brief and 125.2 hours on reply brief in support of summary

judgment were not excessive). Nonetheless, this Court concludes that a modest reduction is

warranted for excessive time spent by counsel, not only in the pre-discovery phase of the case,

but also on the summary judgment motion. *See, e.g., Pig Newton, Inc. v. Boards of Directors of

The Motion Picture Indus. Pension Plan*, No. 13cv7312 (KPF), 2016 WL 796840, at *8

(S.D.N.Y. Feb. 24, 2016) (finding that 237.9 hours spent on summary judgment motion was

excessive); *Brady v. Wal-Mart Stores, Inc.,* 455 F. Supp. 2d 157, 212 (E.D.N.Y. 2006) (imposing

10 percent reduction because 200 hours spent on successful effort to oppose summary judgment

was unreasonable).

 Defendant also identifies particular billing entries, throughout G&S's time records, that

further suggest that counsel engaged in work that was duplicative or otherwise unnecessary.

(*See* Def. Mem., at 21-25.) For instance, Defendant argues that some of the 255.2 hours that

G&S spent on internal conferencing were unnecessary, particularly those devoted to "non-

strategic issues that did not require the involvement of multiple attorneys." (*Id*., at 23-24.)

Defendant also contends that the Complaint in this action is substantially similar to the pleading

that G&S filed in the *Enea* case, referenced above, and that the motion for class and collective

action certification filed in this action includes similar arguments to those raised in *Enea*. (Hykal

Decl. ¶¶ 20-22.) Defendant also points to a few, scattered time entries that suggest that G&S

spent time (albeit fairly small bits of time) on tasks that were only required due to its own

carelessness, such as emailing Defendant's counsel to ask for permission to use documents from

27

*Enea* when such permission had already been granted, or writing letters or emails to demand production of documents they had already been provided.  (Def. Mem., at 31.)

In addition, Defendants point to billing entries that indicate that high-level G&S attorneys billed at their regular rates for certain tasks that could have been performed by more junior attorneys (such as 5.4 hours of legal research conducted by Getman and 44 hours of various types of work performed by Tse) (Def. Mem., at 24), and further identify attorney time entries for certain work that could have been performed by paralegals (such as converting a document to a different file format or reviewing the procedure for requesting authorization to bring electronic devices into the courthouse) (*id.*).

This Court agrees that Plaintiffs could have achieved a greater degree of efficiency, particularly with respect to the drafting of documents that were substantially similar to those produced in *Enea*, and that some of G&S's work could have been billed at a lower rate.  There is also no question that courts routinely apply percentage reductions to requested attorneys' fees based on the performance of inefficient, duplicative, or unnecessary work.  *See, e.g.*, *Simmonds v. N.Y. City Dep't of Corr.*, No. 06cv5298 (NRB), 2008 WL 4303474, at *6 (S.D.N.Y. Sept. 16, 2008) ("[T]he district court must account for duplicative or repetitive work to ensure that the shifted fees represent only work that was necessary to the litigation and a cost efficient use of . . . counsel." (internal quotation marks and citation omitted)).  Taken as a whole, however, while G&S's billing records reveal that some redundant or unnecessary work was performed in this case, they do not support Defendant's assertion that G&S engaged in a calculated strategy to drum up excessive attorneys' fees during every stage of the case.  In the totality of the circumstances presented, this Court finds that, in addition to the reduction discussed above for the class certification motion, a blanket reduction of 15 percent to the 1,361.3 hours expended up

to the point of the fee application, rather than the 35 percent reduction requested by Defendant, would be sufficient to account for any inefficiencies in billing or unreasonably expended hours. *See, e.g., Kalloo v. Unlimited Mechnical Co. of NY*, 977 F. Supp. 2d 209, 213 (E.D.N.Y. 2013) (reducing fees by five percent to compensate for modest number of vague or duplicative entries).

While the 72 hours that G&S expended in reviewing and replying to Defendant's opposition to the fee application is also arguably excessive, *see Lussenhop v. Clinton Cnty.*, 558 F. Supp. 2d 247, 270 (N.D.N.Y. 2008) (finding that 52 hours spent on fee application was excessive and reducing time to 30 hours), this Court is satisfied that Plaintiffs' request that it be compensated for only 50 percent of those hours will result in a reasonable fee award with respect to that portion of the application.

### C.    Lodestar Calculation

Using the reasonable rates described above (including reduced rates for travel time), and eliminating the time spent on clerical work, eliminating half of counsel's time on the class-certification motion, and reducing G&S's remaining billed hours by 15 percent results in the following lodestar calculation for the period from the commencement of the action through the date of Plaintiffs' fee application:

| Name | Hours | Rate/Hour | Total |
|---|---|---|---|
| Dan Getman (P) | 232.730 | $550 | $128,001.50 |
| Michael Sweeney (P) | 7.225 | $505 | $3,648.63 |
| Matt Dunn (A) | 2.295 | $350 | $803.25 |
| Lesley Tse (A) | 353.855 | $295 | $104,387.23 |
| Artemio Guerra (A) | 130.815 | $275 | $35,974.13 |
| Mike Russo (IT) | 167.195 | $220 | $36,782.90 |

| Anibal Garcia (PL) | 12.155 | $125 | $1,519.38 |
| Janice Pickering (PL) | 7.735 | $125 | $966.88 |
| Carolyn Mow (PL) | 196.605 | $125 | $24,575.63 |
| Monica Ayres (PL) | 9.945 | $125 | $1,243.13 |
| Kathy Weiss (PL) | 0.085 | $125 | $10.63 |
| James Sherwood (PL) | 8.755 | $125 | $1,094.38 |
| Clerical | 27.710 | $0 | $0.00 |
| **SUBTOTAL** | **1,157.105** | | **$339,007.67** |
| **TOTAL** *(less $9,777.25, representing 50% of travel time, and $11,299.25, representing 50% of time spent on class certification motion)* | | | **$317,931.17** |

Using the same reasonable rates and reducing the stated hours by 50 percent (*see*

Pl. Reply, Ex. D), results in the following lodestar calculation for the attorneys' fees incurred

during Plaintiffs' analysis of and reply to Defendant's opposition to their motion:

| Name | Hours | Rate/Hour | Total |
| --- | --- | --- | --- |
| Dan Getman (P) | 13.20 | $550 | $7,260.00 |
| Michael Sweeney (P) | 0.30 | $505 | $151.50 |
| Matt Dunn (A) | 0.00 | $350 | $0.00 |
| Lesley Tse (A) | 5.10 | $295 | $1,504.50 |
| Artemio Guerra (A) | 9.15 | $275 | $2,516.25 |
| Mike Russo (IT) | 1.05 | $220 | $231.00 |
| Anibal Garcia (PL) | 1.70 | $125 | $212.50 |
| Janice Pickering (PL) | 0.00 | $125 | $0.00 |

| | | | |
|---|---|---|---|
| Carolyn Mow (PL) | 4.55 | $125 | $568.75 |
| Monica Ayres (PL) | 0.00 | $125 | $0.00 |
| Kathy Weiss (PL) | 0.00 | $125 | $0.00 |
| James Sherwood (PL) | 0.10 | $125 | $12.50 |
| Clerical | 1.15 | $0 | $0.00 |
| **TOTAL** | **36.3** | | **$12,457.00** |

Thus, the lodestar calculation for Plaintiffs' attorneys' fees, for the entirety of this litigation (*i.e.*, $317,931.17 plus $12,457.00), amounts to **$330,388.17.**

### D.    Potential Adjustment of Lodestar

While Plaintiffs do not seek an enhancement of the lodestar, they state in their fee application that the settlement reached in this action represents an "extraordinary result," particularly when compared to the settlement offers made by Defendant earlier in this litigation and in the related DOL and *DeOca* matters.[6]  (Pl. Mem., at 8-10.)  By contrast, Defendant suggests that the lodestar should be reduced by an additional 40 percent or more because Plaintiffs' counsel ultimately recovered only a fraction of the damages they initially sought to obtain on behalf of Plaintiffs and the putative class.[7]  (Def. Mem., at 27; *see also id*., at 29

---

[6] Plaintiffs provide no authority to support the proposition that a plaintiff's degree of success can be measured by reference to the recoveries obtained by other litigants in similar cases.

[7] While some courts impose a downward adjustment to the lodestar to account for an unsuccessful class-certification motion, this Court has instead, as discussed above, opted to reduce the hours that Plaintiffs' counsel worked on that motion.  *Compare Barfield*, 537 F.3d at 152-53 (affirming adjustment of lodestar), *with Gonzalez*, 112 F. Supp. 3d at 13 (reducing hours worked on motion); *see also Hensley*, 461 U.S. at 436-37 ("There is no precise rule or formula for making [fee reduction] determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.  The court necessarily has discretion in making this equitable judgment.").

31

(arguing that, "[c]ompared to the millions of dollars that G&S ostensibly sought to recover" based on Plaintiff's class allegations, the amount of the settlement in this action represented a limited degree of success).)  Defendant further contends that Plaintiffs' strategy to litigate rather than settle the case in its early stages did not add any value to Plaintiffs' eventual recovery.  (*Id*.)

    As an initial matter, this Court notes that the fact that Plaintiffs prevailed by obtaining a favorable settlement, rather than through litigation, "does not weaken [their] claim to fees." *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009) (quoting *Maher v. Gagne*, 448 U.S. 122, 129 (1980)); *see also Custodio*, 2014 WL 116147, at *2 ("The FLSA and New York Labor Law also permit awarding of reasonable attorneys' fees and costs in cases of settlements.").  Moreover, "the Second Circuit has emphasized that '[a] district court should not rely on informal negotiations and hindsight to determine whether litigation was warranted and, accordingly, whether attorney's fees should be awarded.'"  *Gonzalez*, 112 F. Supp. 3d at 19 (quoting *Ortiz v. Regan*, 980 F.2d 138, 140 (2d Cir. 1992)).  Thus, "[a]bsent a showing of bad faith, 'a party's declining settlement offers should [not] operate to reduce an otherwise appropriate fee award.'"  *Id*. at 20 (quoting *Ortiz*, 980 F.2d at 141); *see also N.A.A.C.P. v. Town of East Haven*, 259 F.3d 113, 118-21 (2d Cir. 2001) (holding that district court abused its discretion in reducing attorneys' fees for limited degree of success based on its view that counsel could have obtained similar recovery via settlement).

    Finally, this Court notes that the amount of the settlement in this action reflects the parties' acceptance of a judicial recommendation.  In making that recommendation, this Court expressed its view that the settlement represented a fair and reasonable compromise of the value

---

Accordingly, in considering whether the lodestar should now be adjusted, this Court will focus only on whether the settlement itself reflects an exceptional degree of success or lack thereof.

of Plaintiffs' claims, and the amount of that recovery therefore provides no basis for a reduction of the fee award on the basis that Plaintiffs obtained only a limited degree of success on the claims they asserted.

### E.   Costs

As set out above, a prevailing plaintiff in an FLSA or NYLL case is entitled to recover reasonable costs, as well as attorneys' fees.  (*See* Discussion, *supra*, at Section I; *see also Ni v. Bat-Yam Food Servs. Inc.*, No. 113cv07274 (ALC) (JCF), 2016 WL 369681, at *8 (S.D.N.Y. Jan. 27, 2016); *Lora*, 2015 WL 4496847, at *14.)  In their fee application, Plaintiffs seek reimbursement of $15,953.63 in litigation costs.  (Pl. Mem., at 32; Getman Decl. ¶¶ 59-60.)  To support this figure, Plaintiffs submit G&S's billing records for the out-of-pocket expenses they incurred in litigating this action (including filing fees and costs for travel, postage, service of process, research, and stenography and transcription), as well as invoices and receipts.  (Getman Decl., Ex. 3.)  Defendant's opposition materials do not address Plaintiffs' request for the reimbursement of costs.

This Court finds that Plaintiffs' requested costs are reasonable and well-documented, and that Plaintiffs are therefore entitled to recover $15,953.63 in litigation costs.

## **CONCLUSION**

For all of the foregoing reasons, Defendant is directed to pay Plaintiffs $346,341.80,

representing $330,388.17 in attorneys' fees and $15,953.63 in litigation costs.

Dated:  New York, New York
       March 22, 2016

               SO ORDERED

               DEBRA FREEMAN
               United States Magistrate Judge

Copies to:

All counsel (via ECF)